**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KATHLEEN VALENTINI, VALERIO VALENTINI, and VALERIO VALENTINI on behalf of his minor son M.V., | Civil Action No. 20-9526 |
| Plaintiffs, | |
| -against- | |
| GROUP HEALTH INCORPORATED, EMBLEM HEALTH, INC., CARECORE NATIONAL LLC d/b/a EVICORE, and JOHN DOES 1 AND 2, | **NOTICE OF REMOVAL** |
| Defendants. | |

**TO THE JUDGES FOR THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK:**

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant CareCore National LLC d/b/a eviCore ("eviCore") hereby removes the above-entitled action from the Supreme Court of the State of New York, County of New York, Index No. 805306/2020, to the United States District Court for the Southern District of New York.  For the reasons stated below, removal of this action is proper because Plaintiffs Kathleen Valentini, Valerio Valentini, and Valerio Valentini on behalf of his minor son M.V. (collectively "Plaintiffs") are citizens of different states than each Defendant, Defendants Group Health Incorporated ("GHI") and Emblem Health, Inc. ("Emblem") have not been properly served, and the amount in controversy exceeds $75,000.  This Court has diversity jurisdiction, therefore, under 28 U.S.C. § 1332, and removal is proper under 28 U.S.C. § 1441(a) and (b).

In support of this Notice of Removal, eviCore respectfully states the following:

1.      A Complaint bearing the caption above was filed by Plaintiffs on October 6, 2020, in the Supreme Court of the State of New York, County of New York, Index No.

805306/2020.  A true and correct copy of the Complaint is attached hereto as <u>Exhibit A</u> and is incorporated herein by reference.

2.      The Complaint also names GHI and Emblem as defendants (collectively with eviCore the "Defendants").

3.      The Summons and Complaint were served on eviCore on October 14, 2020. Therefore, removal of this action is timely pursuant to 28 U.S.C. § 1446(b) as this Notice was filed within thirty (30) days after service of the Complaint on eviCore.

4.      In addition to eviCore, all Defendants have consented to removal of this action, although the consent of GHI and Emblem is not required under 28 U.S.C. § 1446(b)(2)(A) because, as described in more detail below, neither GHI and Emblem has been properly served.

5.      As of this date, neither eviCore nor any other party has filed a responsive pleading and no other proceedings have taken place in this action.

**<u>Removal is Proper Under 28 U.S.C. 1441(b) Based on Diversity of Citizenship</u>**

6.      Section 1332 of title 28 of the United States Code provides that this Court shall have original jurisdiction over controversies between citizens of different States in which the amount in controversy is in excess of $75,000, exclusive of interest and costs, and that a corporation shall be deemed a citizen of that State in which it is incorporated and that State in which it has its principal place of business.

6.      Plaintiffs allege in the Complaint that they reside at 4019 Deep River Way, Waxhaw, North Carolina, and that they are, therefore, citizens of North Carolina.  <u>See</u> Ex. A, Compl. ¶ 16.

7.      eviCore is a limited liability company that was formed in New York and is headquartered in the State of South Carolina, although neither of these facts is relevant to the determination of eviCore's citizenship for diversity purposes.   <u>See</u> Ex. A, Compl. ¶ 19.

eviCore's only member is MedSolutions Holdings, Inc., a corporation incorporated in the State of Delaware with its principal place of business in the State of South Carolina. eviCore is thus a citizen of South Carolina and Delaware. *Handelsman v. Bedford Villages Assocs. Ltd. P'ship*, 692 F.3d 42, 49 (2d Cir. 2012) (a limited liability company "takes the citizenship of each of its members"); *Maxim Grp. LLC v. Life Ptnrs. Holdings, Inc.*, 09 Civ. 1172 (CM), 2010 U.S. Dist. LEXIS 405, at *1-2 (S.D.N.Y. Jan. 5, 2010) ("For the purposes of diversity jurisdiction, a limited liability company's ("LLC") citizenship is determined not by the LLC's place of incorporation or principal place of business, but by the citizenship of each member of the LLC."); *Mackason v. Diamond Fin. LLC*, 347 F. Supp. 2d 53, 55 (S.D.N.Y. 2004) ("For diversity purposes, the citizenship of a limited liability company ("LLC") depends on the citizenship of its members.").

8.     The Complaint alleges that the amount in controversy is more than $2,000,000. See Ex. A, Compl. ¶¶ 122, 127.

9.     Because there is complete diversity in that Plaintiffs are citizens of different States than all Defendants and the amount in controversy exceeds $75,000, this action is properly removed to this Court pursuant to 28 U.S.C. § 1441(a) and (b).

10.     This action is removable to this Court notwithstanding the fact that the Complaint alleges that GHI and Emblem are both New York corporations with principal places of business in New York and are, therefore, citizens of the State of New York.

11.     Section 1441(b)(2) provides that "A civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." By its terms, this section does not apply when "forum-state" defendants are named but not properly served and/or joined as parties. An action is, therefore, removable notwithstanding the fact that one or more forum-state defendants have been named in the Complaint, provided that those

defendants have not been properly served at the time the notice of removal is filed. *See Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019) ("By its text, then, Section 1441(b)(2) is inapplicable until a home-state defendant has been served in accordance with state law; until then, a state court lawsuit is removable under Section 1441(a) so long as a federal district court can assume jurisdiction over the action.").

12.     Here, neither GHI nor Emblem has been properly served.  As an initial matter, since September, there have been no managing agents or other employees present at GHI and Emblem's corporate headquarters in New York who are authorized to accept service due to restrictions from the Covid-19 pandemic.  Neither GHI nor Emblem has received any documents from the New York Department of State to indicate that process has been served on the New York Secretary of State as GHI and Emblem's statutory agent for service of process.  Neither GHI nor Emblem has received a copy of the summons and complaint by mail with a request that the recipient acknowledge service.  Therefore, service of process on GHI or Emblem has not been achieved under any applicable provision of the New York CPLR or other New York law.

13.     Because neither GHI nor Emblem has been properly served, 28 U.S.C. 1441(b)(2) is inapplicable and does not present a bar to removal.

14.     This Notice of Removal is being filed in the United States District Court for the Southern District of New York, the District Court of the United States for the District within which the state court action is pending, as required by 28 U.S.C. §§ 1441(a) and 1446(a).

15.     Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be given to Plaintiffs, and a copy of the Notice of Removal will be filed with the Clerk of the Supreme Court of the State of New York, County of New York, in the form attached hereto as Exhibit B.

18.      This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of

Civil Procedure, as required by 28 U.S.C. § 1446(a).

**WHEREFORE**, Defendant respectfully requests that this action be duly removed to this

Court, and that it proceed herein.

Dated: New York, New York
          November 12, 2020

**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Telephone: 973-596-4500
Facsimile: 973-596-0545
ewohlforth@gibbonslaw.com
*Attorneys for Defendant CareCore*
*National LLC d/b/a eviCore*


By: s/ E. Evans Wohlforth, Jr.
        E. Evans Wohlforth, Jr.

EXHIBIT A

*10/14/2020*
*12:45*
*(LLF)*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

—————————————————————X

KATHLEEN VALENTINI, VALERIO VALENTINI,
and VALERIO VALENTINI on behalf of his minor son
M.V.,

*Plaintiffs,*

-against-

GROUP HEALTH INCORPORATED, EMBLEM
HEALTH, INC., CARECORE NATIONAL LLC d/b/a
EVICORE, and JOHN DOES 1 AND 2,

*Defendants.*

—————————————————————X

To the above named defendants:

**Index No:_____/2020**

**Plaintiff designates New York County as the venue for trial**

**SUMMONS**
**Venue is based on defendants' principal place of business, Plaintiffs' address is 4019 Deep River Way Waxhax, NC 28173**

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiffs' Attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York): and in case your failure to appear or answer, judgement will be taken for the relief demanded herein.

A COPY OF THIS SUMMONS WAS FILED WITH THE CLERK OF THE COURT, NEW YORK COUNTY ON _____ IN COMPLIANCE WITH CPLR §§305(a) AND 306(a).

Dated:   October 6, 2020
         New York, NY

POLLOCK COHEN LLP

—————————————————————

Steve Cohen, Esq.
60 Broad St., 24th Fl.
New York, New York 10004
Tel.: (212) 337-5361
Email: SCohen@PollockCohen.com

*Counsel for Plaintiffs*

Case 1:20-cv-09526-JPC   Document 1   Filed 11/12/20   Page 8 of 35

Dated:   October 6, 2020                **MERSON LAW PLLC**
         New York, NY

/s/

Jordan Merson, Esq.
950 Third Avenue, 18th Floor
New York, New York 10022
Tel.: (212) 603-9100

*Counsel for Plaintiffs*

Case 1:20-cv-09526-JPC Document 1 Filed 11/12/20 Page 9 of 35

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

KATHLEEN VALENTINI, VALERIO VALENTINI,
and VALERIO VALENTINI on behalf of his minor son
M.V.,

                            Plaintiffs,

            - against -

GROUP HEALTH INCORPORATED, EMBLEM
HEALTH, INC., CARECORE NATIONAL LLC d/b/a
EVICORE, and JOHN DOES 1 AND 2,

                           Defendants.

---

Index No.: [Not assigned]

**VERIFIED COMPLAINT
and DEMAND FOR JURY
TRIAL**

Plaintiffs above named, complaining of the defendants, by their attorneys, Pollock Cohen

LLP and Merson Law PLLC, respectfully allege:

### INTRODUCTION

1.     On February 4, 2019 – following a medical examination, x-ray, and compliance

with an appropriate treatment plan of physical therapy and painkillers prescribed by her doctor for

pain in her hip – Kathleen Valentini was examined by Dr. Barry Oliver, an orthopedic surgeon.

2.     Dr. Oliver had an x-ray done, and after reading it, ordered an MRI to diagnose the

cause of Kathleen's symptoms. The pain in her hip was now radiating down her thigh and knee,

and she was unable to walk without limping.

3.     Defendant Group Health Incorporated ("GHI") – a wholly owned subsidiary of

Emblem Health, Inc. ("Emblem Health") – was Kathleen's medical insurance company. GHI

employed defendant CareCore National LLC d/b/a eviCore ("eviCore") to perform a "utilization

review" of the MRI that Dr. Oliver recommended. Defendants GHI, Emblem Health, eviCore

and eviCore employees John Does 1 and 2 are referred to herein as the "GHI defendants."

Case 1:20-cv-09526-JPC Document 1 Filed 11/12/20 Page 10 of 35

4.      On February 16, 2019, the GHI defendants overruled Dr. Oliver's recommendation and denied Kathleen this basic, medically appropriate diagnostic test. Shockingly, the GHI defendants informed Kathleen that eviCore had determined that the MRI was "not medically necessary."

5.      Ignoring Kathleen's medical history and the applicable standard of care, the GHI defendants stated that an MRI would be medically necessary only if Kathleen failed to improve after a six-week course of treatment such as "ice", "steroids", "cross training", " rest" or "doctor prescribed treatment". The GHI/eviCore denial included the statement, "We have told your doctor about this." In fact, the GHI defendants had never spoken with Dr. Oliver about Kathleen's treatment.

6.      Defendants' statements were particularly outrageous because Kathleen had actually just completed a full course of physical therapy *that GHI had approved and paid for*. Thus, an MRI was appropriate under the very standards that defendants purported to apply, because Kathleen's hip pain had already failed to improve after weeks of physical therapy.

7.      Upon information and belief, the insurance company and its utilization review lapdog had not bothered to review their own records or follow their own procedures before rendering this illogical, dangerous, and ultimately life-threatening opinion.

8.      Dr. Oliver immediately appealed the GHI Defendants' denial of the MRI. Some 40 days later, the GHI Defendants reversed their denial only after speaking to Doctor Oliver on the phone.

9.      On March 14, 2019, Kathleen was finally able to get the MRI that Dr. Oliver had originally recommended on February 4, 2019 – an inexcusable (and all-too-typical) delay by the insurance company. The MRI revealed a sarcoma in her right hip.

Case 1:20-cv-09526-JPC   Document 1   Filed 11/12/20   Page 11 of 35

10.     Kathleen was admitted shortly thereafter to Memorial Sloan Kettering Hospital in New York, where she was told that the cancer could have been treated with chemotherapy alone if it had been properly diagnosed a month earlier.

11.     Unfortunately, because of the GHI Defendants' negligence, the diagnosis of the disease was seriously delayed, which resulted in the disease not being promptly treated.  The Memorial Sloan Kettering doctors informed Kathleen that chemotherapy alone was no longer a treatment option, and amputated her leg, hip, and pelvis.

12.     Specifically, her treating physician said to Kathleen and her husband Val, in substance: had you come to us a month sooner, we could have used chemotherapy. Now we can't; we have to amputate before we treat with chemo.

13.     Cancer nodules were also found in Kathleen's right lung.  The negligent, irresponsible delay by the GHI Defendants to provide a basic, essential diagnostic test was also the proximate cause of these injuries and the resulting harm to Kathleen's long-term prognosis.

14.     Kathleen is 49 years old.  These events were devastating to her, her husband and their 15-year-old son M.V.  The amputations caused Kathleen extraordinary pain and suffering, and dramatically reduced her ability to conduct activities of daily living and provide for the care and education of her son, whom she had been home-schooling.

15.     The GHI defendants' failure to provide the appropriate standard of medical care, their failure to abide by their own published standards for essential diagnostic tests, and their systemic denial and delay were the actual and proximate cause of the delay in Kathleen's diagnosis and treatment, and the serious harms suffered by plaintiffs.

## PARTIES

16.     Plaintiffs Kathleen and Valerio Valentini are residents of Waxhaw, North Carolina. Valerio Valentini is a retired New York City police officer and Kathleen Valentini's health insurance is the Emblem Health / GHI CBP offered to all New York City employees and retirees.

17.     Defendant Group Health Incorporated is a not-for-profit corporation organized and existing under the laws of New York, and headquartered at 55 Water Street, New York NY 10041. GHI is wholly-owned subsidiary of Emblem Health.

18.     Defendant Emblem Health, Inc. is a not-for-profit corporation with headquarters at 55 Water Street, New York NY 10041.

19.     Defendant eviCore is a limited liability company headquartered at 400 Buckwalter Place Blvd, Bluffton, South Carolina 29910.

20.     Upon information and belief, defendants John Does 1 and 2 are eviCore employees and physicians duly licensed to practice medicine, who determined that an MRI was not medically necessary to help diagnose the source of Kathleen's hip pain. Upon information and belief, it was these two eviCore employees who failed to properly review Kathleen's medical record and who determined as of February 4, 2019, that she should instead pursue a six-week course of physical therapy – after she had just completed a doctor-prescribed course of physical therapy. Upon information and belief, it was these two eviCore employees who prescribed treatment such as "ice, steroids, working out and/or and rest," and whose negligence caused Kathleen not to receive essential, timely, chemotherapy.

21.     At all relevant times, eviCore and John Does 1 and 2 were employees, agents, and/or servants of GHI and/or Emblem Health and were acting within the scope of that employment/agency/servant relationship when they failed to follow the applicable standard of

medical care during their medical care of and advice to Kathleen on or about February 16, 2019

and overruled the MRI ordered by Kathleen's doctor.

## JURISDICTION AND VENUE

22.    Venue is proper because defendants GHI and Emblem Health reside here, and a

substantial part of the events and omissions giving rise to plaintiffs' claim occurred here.

23.    The Court has personal jurisdiction over defendants for the following reasons.

Defendants GHI and Emblem Health are headquartered in New York, and the other defendants

continuously communicate with defendant GHI in New York and receive payment for reviewing

the medical records of and providing medical advice to patients who are members of the GHI-

CBP plan, all of whom are New York City employees, retirees or family members.  Defendant

eviCore made its recommendation about Kathleen's need for an MRI pursuant to an agreement

with GHI, and was paid for that service by GHI.   Defendants sell and market their services and

solicit business in New York state, derive substantial revenue from the sale of services in New York

state, and regularly transact business in New York State.  All defendants have systemic and

continuous contacts with this jurisdiction.  In addition, a substantial part of the events giving rise to

the claims occurred in New York state, and defendants have committed a tort in whole or in part

in this state.

## FACTUAL BACKGROUND

24.    On November 11, 2018, Kathleen visited her primary care physician Dr. Steven

Bauer because of pain in her right hip.  Dr. Bauer recommended a conservative course of physical

therapy and Naproxin (a pain killer sold over the counter as Aleve).

25.    Kathleen diligently followed these instructions and completed several weeks of physical therapy.  However, she continued to experience pain in her right hip and radiating down her right leg.  Her limp was also getting worse.

### The GHI Defendants Ignore Kathleen's Medical Records, Overrule Her Doctor's Recommendations and Provide Negligent and Inaccurate Medical Advice

26.    Because her condition had not improved with physical therapy and pain killers, Kathleen returned to Dr. Bauer on January 28, 2019.

27.    On or around January 28, 2019, Dr. Bauer referred Kathleen to an orthopedic surgeon.

28.    Following Dr. Bauer's instructions to see a specialist, Kathleen immediately followed up, and on February 4, 2019, Kathleen was examined by Dr. Barry Oliver, an orthopedic surgeon.  Following the examination, Dr. Oliver ordered an MRI.

29.    Because of Defendant GHI's requirements, Dr. Oliver had to seek pre-authorization from GHI in order for the MRI to be performed. Dr. Oliver's office contacted GHI immediately after Kathleen's visit.

30.    Upon learning of Dr. Oliver's recommendation and request for pre-authorization, the GHI defendants ostensibly conducted a "utilization review" to determine whether  the MRI ordered by Kathleen's doctor was medically necessary.

31.    GHI contracts with eviCore to review doctor-requested MRIs and other diagnostic tests. As detailed below, eviCore describes its role as "mak[ing] sure the patient gets the right procedure," "advis[ing] and counsel[ing] and guid[ing]" patients to "make an appropriate choice" and "assur[ing] that the patient gets the best care."

32.    In a letter, dated February 16, 2019, the GHI defendants informed Kathleen and Dr. Oliver that, based on eviCore's review of clinical and medical information, they had concluded

that the MRI for Kathleen was not medically necessary, and were therefore denying the request for pre-authorization.

33.     The letter also advised on the circumstances in which an MRI would have been deemed medically necessary and approved, in light Kathleen's symptoms.  Specifically, the GHI defendants stated that an MRI was not medically necessary, in their view, because Kathleen had not yet demonstrated a failure to improve following a 6-week trial of treatment, which might include rest, drugs for pain, or a workout program (*i.e.*, physical therapy).

34.     But Kathleen had, in fact, just completed a full course of physical therapy and pain medication—without any notable improvement to her condition. Indeed, this is the very reason why Kathleen had been referred to Dr. Oliver who then ordered the MRI.

35.      Moreover, the GHI defendants must have known that Kathleen had already attempted to improve her condition through physical therapy because they are the ones who paid for her previous course of physical therapy.

36.     Upon information and belief, the determination that an MRI was not medically necessary was made by John Does 1 and 2, acting within the scope of their employment for the GHI defendants.

37.     Upon information and belief, John Does 1 and 2 did not have appropriate medical expertise to render opinions concerning Kathleen's medical treatment.

38.     Upon information and belief, John Does 1 and 2 did not adequately review Kathleen's medical record before rendering a medical decision concerning Kathleen's medical treatment.

39.     Upon information and belief, John Does 1 and 2 did not consult with any of Kathleen's physicians before rendering a medical decision concerning Kathleen's medical treatment.

Case 1:20-cv-09526-JPC    Document 1    Filed 11/12/20    Page 16 of 35

40.     John Does 1 and 2 did not conduct a medical examination of Kathleen before rendering a medical decision concerning Kathleen's medical treatment.

41.     The GHI defendants' denial of the pre-authorization request for an MRI and its recommended course of treatment did not meet the applicable standard of care and was wrong based on the very criteria that defendants purported to apply.

42.     Moreover, by failing to adequately review Kathleen's medical history and records, the GHI defendants' also ran afoul of applicable laws and regulations governing the "utilization review" process.

43.     As a direct and proximate result of the GHI defendants' negligence and incorrect medical advice, the GHI defendants delayed Kathleen's diagnosis and medical treatment. As a result, the cancer that was in her hip grew and spread, and its treatment was delayed such that the preferred course of care – chemotherapy – could not be timely performed. As a direct result of this delay, Kathleen's leg, hip and pelvis had to be amputated.

### The GHI Defendants' Misconduct Is Part of a Broader Scheme

44.     Upon information and belief, the GHI defendants' callous and wrongful treatment of Kathleen is part of a deliberate pattern and practice of rendering negligent medical advice and causing patients not to receive medically necessary and timely treatment.

45.     The Certificate of Insurance for the Comprehensive Benefits Plan (CBP) for City of New York Employees and Retirees states clearly that diagnostic procedures are covered by the plan. The Certificate of Insurance delineates how much the plan would pay if the member used in-network or out-of-network providers.

46.     The Certificate of Insurance also delineates the process that GHI would follow in conducting a "Utilization Review" for pre-authorization of diagnostic procedures such as Kathleen's MRI. Those procedures are detailed in Section 3: Utilization Review & Appeals.

Section B (page 51) states:

> "If we have all the information necessary to make a determination regarding a
> Preauthorization review, we will make a determination and provide notice to
> you (or your designee) and your Provider, by telephone and in writing, within
> three (3) business days of receipt of the request. If we need additional
> information, we will request it within three (3) business days..."

47.    Defendants had the necessary information about Kathleen's condition; that fact that
her doctor had prescribed five weeks of physical therapy, appropriate pain killers; and that
Kathleen had dutifully complied with and completed the doctor-prescribed regimen of physical
therapy and pain killers.  Defendants' had pre-authorized Kathleen's physical therapy.

48.    Defendants did not claim not to have the necessary information about Kathleen's
or the doctor's prescription and did not utilize the three-day inquiry period to seek that
information before denying authorization for Kathleen's MRI.

49.    Defendants simply ignored their own published procedures and the medical
standard of care.

50.    The eviCore website includes numerous statements concerning eviCore's alleged
commitment to "mak[ing] sure the patient gets the right procedure."[1]

51.    For example, in a video on eviCore's homepage, patients are told that:

   a.   "The patient comes first.  We want to make sure the patient gets the right
        procedure."  (eviCore CEO).

   b.   EviCore "want[s] to share [] info with the patient ... so they can make an
        informed choice....  Based on evidence-based medicine. ... not just what they
        are told to do, they have been advised and counseled and guided to make an
        appropriate choice."

---

[1] https://www.evicore.com (video of eviCore CEO and other eviCore parties)

    c. EviCore is there "really to assure that the patient gets the best care," noting that with eviCore "you have a chance to change the outcome and the path for people receiving these services."

52.    In other areas of eviCore's website (describing utilization management for radiology and musculoskeletal), eviCore claims that:

    d. EviCore delivers "improved patient outcomes by ensuring health plan members receive the appropriate test or treatment necessary for their individual case presentation or condition. ... eviCore's approach is not to deny care that is needed but rather to redirect providers and patients to more appropriate testing and treatment options.[2]

    e. "The eviCore Musculoskeletal solution addresses the full spectrum of potential care and treatment, from holistic and conservative approaches to more advanced and invasive procedures. We then apply up-to-date evidence-based guidelines and advanced technologies to ensure that the right evidence-based care is delivered."[3]

    f. "The strong evidence supporting our criteria allows us to make appropriate decisions on patients' behalf."

53.    These statements appear designed to mislead patients such as Kathleen into believing that defendants employ qualified medical professionals who undertake appropriate medical reviews and who will ensure their patients receive appropriate medical treatment.

54.    In fact, the GHI defendants appear to be engaged in a systemic effort to delay or block necessary medical treatments and services and defeat their contractual obligations.

55.    Unfortunately, Kathleen's experience is not an outlier. EviCore's disregard for patient welfare is so egregious that the Minnesota Hospital Association recently wrote to the Minnesota Attorney General and Commissioners of Health and Commerce on behalf of 141

---

[2] https://www.evicore.com/solutions/health-plan/utilization-management/radiology

[3] https://www.evicore.com/solutions/health-plan/utilization-management/musculoskeletal

Case 1:20-cv-09526-JPC   Document 1   Filed 11/12/20   Page 19 of 35

hospitals and health system members to request "immediate action" to address eviCore's misconduct.[4]

56.     The letter details additional instances in which eviCore has stymied or attempted to override medically necessary treatment.  In one case, "a patient was admitted and hospitalized for six days.  After medical review, [the insurer] approved the admission because the patient planned to end his life by hanging.  Seventeen days after being discharged, the patient returned to the hospital and was admitted again because he planned to end his life by 'using a knife to cut an artery.'  This case was also reviewed by a medical director and payment was denied because [it was] determined that inpatient care was unnecessary."

57.     In another case with striking similarities to Kathleen's experience, eviCore advised Carolyn Daigle that an MRI recommended by her treating physician was not medically necessary. Tragically, by the time an MRI was performed, a tumor that could have been easily diagnosed earlier and removed, had caused permanent damage to Ms. Daigle's spine.  Ms. Daigle is now paraplegic.

58.     Upon information and belief, the GHI defendants are engaged in a deliberate and calculated effort to reduce  costs and expenses to Emblem Health by denying necessary medical treatment by making baseless statements that treatments are not medically necessary.  This is precisely what occurred in Kathleen's case.

59.     As detailed above, there is a wealth of evidence concerning eviCore's habitual and blatant disregard for patients, and the harms being caused by eviCore's misconduct.  The GHI

---

[4] https://www.mnhospitals.org/Portals/0/Documents/policy-
advocacy/Comment%20letters/MHA_BCBS_letter_to_state_officials.pdf

defendants are well aware that eviCore's alleged efforts "to ensure that the right evidence-based care is delivered" are in fact designed to achieve the opposite result.

60.     As a direct and proximate cause of the GHI defendants' scheme, medically necessary treatments are delayed or denied, and patients suffer the dangerous and even life-threatening consequences.

### Kathleen Suffers Damages As A Result Of
### Defendants' Negligence and Other Misconduct

61.     In April 2019, Kathleen returned to Memorial Sloan Kettering Hospital in New York, where she had been treated for cervical cancer nearly fifteen years before.

62.     Kathleen was told that had she presented earlier, the sarcoma in her right hip would have been treatable with chemotherapy.

63.     Had the MRI that Dr. Oliver ordered on February 4, 2019 been conducted in a timely manner – instead of being improperly denied and delayed by the GHI defendants and their inappropriate medical advice – there is no question that the cancer would have been detected sooner and would have been treated sooner.

64.     The defendants' actions in denying and delaying critical medical tests were the proximate cause of the delay in Kathleen's treatment, and the proximate cause of the Memorial Sloan Kettering doctors being unable to use chemotherapy to treat her, and instead having to amputate her leg, her hip, and her pelvis.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Negligence – GHI defendants)

65.     Plaintiffs repeat and re-allege the preceding paragraphs as if fully set forth herein.

66.     Defendants owed Kathleen Valentini a duty to act reasonably and use due care with respect to her medical care and treatment.

Case 1:20-cv-09526-JPC Document 1 Filed 11/12/20 Page 21 of 35

67. Defendants breached that duty by overruling the judgment of Kathleen's treating physicians, wrongfully advising Kathleen that an MRI was not medically necessary in February 2019, recommending an alternate course of treatment that was not reasonable or supported by medical evidence, and delaying her diagnosis and treatment.

68. Kathleen Valentini suffered damages by way of physical and emotional injuries as a result of defendants' actions.

69. Defendants' actions were wanton, willful, and malicious, and thus Kathleen is also entitled to an award of punitive damages in an amount to be determined at trial.

70. The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

71. This action falls within exceptions to Article of the C.P.L.R.

### AS AND FOR A SECOND CAUSE OF ACTION
#### (Medical Malpractice – GHI defendants)

72. Plaintiffs repeat and re-allege the preceding paragraphs as if fully set forth herein.

73. Plaintiff Kathleen Valentini was under the medical care of eviCore.

74. At all times herein mentioned, defendant eviCore was an agent, servant and/or employee of defendants GHI/Emblem Health.

75. At all times herein mentioned, defendant eviCore was a group in the practice of medicine.

76. At all times herein mentioned, the GHI defendants were agents, servants and/or employees of each other, regarding the diagnosis, care, and treatment of plaintiff Kathleen Valentini.

77. Upon information and belief, at all times herein mentioned, defendants John Does 1 and 2 were physicians duly licensed to practice medicine.

78.     At all times herein mentioned, defendants John Does 1 and 2 were agents, servants and/or employees of defendants eviCore and GHI/Emblem Health, regarding the diagnosis, care, and treatment of plaintiff Kathleen Valentini.

79.     On or about February 4, 2019, Dr. Barry Oliver ordered an MRI of Kathleen's right hip.

80.     On or around February 16, 2019, the GHI defendants, their associates, servants and/or employees provided medical advice and recommended treatment to plaintiff Kathleen Valentini, advising her that an MRI was not medically necessary and instead she should pursue an alternative course of treatment, thus delaying her diagnosis and treatment.

81.     As a result of the failure by the GHI defendants, their associates, servants and/or employees to properly diagnose, care for, and treat Kathleen, including but not limited to the failure to recommend and perform an MRI, plaintiff Kathleen Valentini sustained severe injuries and complications.

82.     Said occurrence was due to the carelessness, negligence, and failure to provide good and appropriate medical care of the GHI defendants, their agents, servants and/or employees in failing to treat the plaintiff in the accepted and proper manner and all without any fault or lack of care on the plaintiff herein.

83.     By reason of the foregoing, plaintiff Kathleen Valentini sustained severe and serious personal injuries, including but not limited to a the growth and spread of a sarcoma in and around her right hip, resulting in the amputation of her right leg, hip and pelvis, and was caused to suffer severe physical pain and mental anguish as a result thereof, and upon information and belief these injuries are of a permanent and lasting nature; that said plaintiff is relegated to ongoing therapy and other medications and therapies, and was incapacitated from attending her regular activities; and there was caused to be expended sums of money for medical and hospital care on her behalf.

84.     The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

85.     This action falls within exceptions to Article 16 of the C.P.L.R.

86.     Defendants' actions were wanton, willful, and malicious, and thus plaintiff is also entitled to an award of punitive damages in an amount to be determined at trial.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Prima Facie Tort – GHI defendants)

87.     Plaintiffs repeat and re-allege the preceding paragraphs as if fully set forth herein.

88.     Defendants have intentionally inflicted harm on Kathleen Valentini by, among other things, overruling the medical recommendations of Dr. Oliver and advising her that no MRI was needed in February of 2019.

89.     There has been measurable loss to Kathleen Valentini.

90.     There is no justification for defendants' actions.

91.     As a direct and proximate result of the foregoing, Kathleen Valentini was injured and has suffered damages in an amount to be determined at trial.

92.     Defendants' actions were wanton, willful, and malicious, and thus plaintiff is also entitled to an award of punitive damages in an amount to be determined at trial.

93.     The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

94.     This action falls within exceptions to Article 16 of the C.P.L.R.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach of Contract - GHI/Emblem Health)

95.     Plaintiffs repeat and re-allege the preceding paragraphs as if fully set forth herein.

Case 1:20-cv-09526-JPC   Document 1   Filed 11/12/20   Page 24 of 35

96.     GHI and Emblem are parties to a valid and enforceable contract with the City of New York to provide health insurance through the GHI-CBP to members. Plaintiffs are third-party beneficiaries of that contract.

97.     Defendants breached the contract by denying claims for medically necessary treatment for Kathleen.

98.     Plaintiffs performed all of their obligations under the contract.

99.     As a result of the breach by defendants, plaintiffs have been damaged in an amount to be determined at trial, but not less than the out-of-pocket costs of Kathleen's medical treatment plus interest.

100.    By reason of the foregoing, Plaintiff is entitled to punitive damages for all injuries, including pain and suffering from defendants in such sums as a jury would find fair, just and adequate

101.    By reason for the foregoing, Plaintiff is entitled to compensatory damages for all injuries, including pain and suffering from defendants in such sums as a jury would find fair, just and adequate.

102.    The amount of damages exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

103.    This action falls within exceptions to Article 16 of the C.P.L.R.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (Bad Faith/Punitive Damages - GHI/Emblem Health and eviCore)

104.    Plaintiffs repeat and re-allege the preceding paragraphs as if fully set forth herein.

105.    Defendants' tortious conduct was of an egregious nature.

106.    Defendants egregious and tortious conduct was directed at plaintiffs.

Case 1:20-cv-09526-JPC   Document 1   Filed 11/12/20   Page 25 of 35

107.    Defendants egregious and tortious conduct toward plaintiffs was part of a pattern directed at the public generally.

108.    Plaintiffs are entitled to damages as a result of defendants' tortious conduct.

109.    The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

110.    This action falls within exceptions to Article 16 of the C.P.L.R.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing – GHI/Emblem Health)

111.    Plaintiffs repeat and re-allege the preceding paragraphs as if fully set forth herein.

112.    Plaintiff Kathleen Valentini was a member – and third party beneficiary – of the GHI health insurance plan offered to New York City retirees.

113.    At all times herein mentioned, defendants had an obligation under the contract between GHI and New York City on behalf of the City's employees, retirees, and their family members to provide medically necessary diagnostic tests.

114.    By denying the MRI recommended by Dr. Oliver – and basing that denial on erroneous and specious grounds – the defendants intentionally withheld benefits that Kathleen was entitled to.

115.    This denial by the defendants was deliberate.

116.    By reason of the foregoing, plaintiff Kathleen Valentini was denied the benefits of a contract to which she was entitled, and suffered damages.

117.    The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

118.    This action falls within exceptions to Article 16 of the C.P.L.R.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (All defendants – Loss of Services)

119.      Plaintiffs repeat and re-allege the preceding paragraphs as if fully set forth herein.

120.      Prior to the commencement of the within action plaintiffs Kathleen Valentini and Valerio Valentini were lawfully wedded as husband and wife.

121.      By reason of the foregoing occurrence and resultant injuries and complications to plaintiff Kathleen Valentini, plaintiff Valerio Valentini has been deprived of the services, society and companionship of his wife Kathleen Valentini, and was caused to expend sums of money for medical and hospital care on her behalf.

122.      As a direct and proximate result of defendants' conduct, plaintiff Valerio Valentini has been damaged in an amount to be determined at trial, but not less than $1,000,000 plus interest.

123.      The amount of damages sought exceeds the jurisdiction of lower courts which would otherwise have jurisdiction.

124.      This action falls within exceptions to Article 16 of the C.P.L.R.

**AS AND FOR THE EIGHTH CAUSE OF ACTION**
**(All defendants – Loss of Guidance to a Minor Child)**

125.      Plaintiffs repeat and re-allege the preceding paragraphs as if fully set forth herein.

126.      By reason of the foregoing occurrence and resultant injuries and complications to plaintiff Kathleen Valentini, plaintiff M.V. has been deprived of the affection, services, society, care, comfort, closeness, companionship, protection, nurture and guidance of his mother Kathleen Valentini.

127.      As a direct and proximate result of defendants' conduct, plaintiff M.V. has been damaged in an amount to be determined at trial, but not less than $1,000,000 plus interest.

128.    The amount of damages sought exceeds the jurisdiction of lower courts which would otherwise have jurisdiction.

129.    This action falls within exceptions to Article 16 of the C.P.L.R.

## AS AND FOR THE NINTH CAUSE OF ACTION
### (GHI defendants – Fraud)

130.    Plaintiffs repeat and re-allege the preceding paragraphs as if fully set forth herein.

131.    Defendants made material misstatements to plaintiff Kathleen Valentini when they stated they would cover diagnostic services such as MRIs and conduct utilization Reviews in a prescribed manner.

132.    Defendants knew these representation and statements were false in that they did not even try to comply with the promises or procedures set forth in their Certificate of Insurance.

133.    Defendants willfully intended to induce the Plaintiff's reliance on Defendants' statements by promising insurance coverage for basic, essential diagnostic tests, and requiring Plaintiff (and other similarly situated) members to seek pre-authorization for the procedures.

134.    The Plaintiff relied on the statements made by Defendants that they would cover medically necessary diagnostic tests, and that Defendants would comply with their own published procedures and proper standards of medical care. The Plaintiff's reliance on Defendants' statements was justifiable in that few services in life or more critical or time-sensitive than health insurance,

135.    Defendants made further material misstatements when they denied Kathleen's MRI because she needed to have completed a course of physical therapy before approval of the MRI. Defendants knew or should have known that their statement to Kathleen and her doctor

that she needed to complete a course of physical therapy prior to authorization of the MRI was false: the Defendants had already approved Kathleens's physical therapy.

136.  Defendants' false statements were a willful, purposeful attempt to induce Kathleen's reliance upon them, and then to deny her essential benefits to which she was entitled.

137.  Defendants' material misstatements and omissions were made with knowledge of their falsity and/or recklessly without knowledge of or a genuine belief in their accuracy.

138.  Defendants made these material misstatements and/or omissions to convince plaintiff Kathleen Valentini to rely upon them.

139.  Plaintiff Kathleen Valentini reasonably and justifiably relied on defendants' material representations and/or omissions.

140.  The defendants were acting in concert and each of the defendants knowingly participated in fraud against Kathleen Valentini, including  stating they were providing services for physical therapy as pretext for attempting to save their carrier money to the detriment of Kathleen Valentini.

141.  The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

142.  This action falls within exceptions to Article 16 of the C.P.L.R.

## AS AND FOR THE TENTH CAUSE OF ACTION
### (All defendants – Conspiracy to Commit Fraud)

1.  Plaintiffs repeat and re-allege the preceding paragraphs as if fully set forth herein.

143.  The GHI Defendants and eviCore Defendants engaged in a civil conspiracy to fraudulently deny the Plaintiff the benefits to which she was entitled, and which caused her significant harm.

144.  The Defendants jointly sent the letter to Kathleen and her doctor denying the MRI, and saying she first had to have the physical therapy.

145.   The Defendants acted in concert as part of a common scheme to deny Plaintiffs (and others similarly situated) medically-necessary diagnostic tests as a way to save the GHI Defendants money they would otherwise have to expend.

146.   The defendants were acting in concert and each of the defendants knowingly participated in a scheme to defraud plaintiff Kathleen Valentini and others who are similarly situated, including by fraudulently advising them that doctor-recommended treatments were not medically necessary, and the routine denial of necessary diagnostic tests.

147.   The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

148.   This action falls within exceptions to Article 16 of the C.P.L.R.


## DEMAND FOR JURY TRIAL

Pursuant New York CPLR §4102, Plaintiffs demand a trial by jury and will file a note of issue.

**WHEREFORE,** plaintiff demands judgment against defendants in such sum as a jury would find fair, adequate and just.

Dated:     October 6, 2020
           New York, NY

POLLOCK COHEN LLP

Steve Cohen, Esq.
60 Broad St., 24th Fl.
New York, New York 10004
Tel.: (212) 337-5361
Email: SCohen@PollockCohen.com
*Counsel for Plaintiffs*

Case 1:20-cv-09526-JPC   Document 1   Filed 11/12/20   Page 30 of 35

Dated:    October 6, 2020          **MERSON LAW PLLC**
          New York, NY

                                   /s/  ___Jordan Merson___

                                   Jordan Merson, Esq.
                                   950 Third Avenue, 18th Floor
                                   New York, New York 10022
                                   Tel.: (212) 603-9100
                                   *Counsel for Plaintiffs*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
————————————————————X
KATHLEEN VALENTINI, VALERIO VALENTINI,
and VALERIO VALENTINI on behalf of his minor son
M.V.,

Index No.: _____/2020

*Plaintiffs,*

**CERTIFICATE
OF MERIT**

-against -

GROUP HEALTH INCORPORATED, EMBLEM
HEALTH, INC., CARECORE NATIONAL LLC d/b/a
EVICORE, and JOHN DOES 1 AND 2,

*Defendants.*
————————————————————X

Jordan K. Merson, being duly sworn, deposes and states the following to be true under the penalties

of perjury of the State of New York.

I have reviewed the facts of this case and have consulted with at least one physician who is

licensed to practice medicine in the State of New York, or any other State, and who I reasonably

believe is knowledgeable in the relevant issues involved in this matter.

I have concluded on the basis of the review and the consultation that there is a reasonable

basis for the commencement of this action.

Dated: New York, New York
            October 6, 2020

MERSON LAW, PLLC

By: _____
            Jordan K. Merson

Case 1:20-cv-09526-JPC  Document 1-1  Filed 11/12/20  Page 32 of 35

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
————————————————X
KATHLEEN VALENTINI, VALERIO VALENTINI,
and VALERIO VALENTINI on behalf of his minor son
M.V.,                                                Index No.: _____/2020

                    *Plaintiffs,*

        -against –                                   **ATTORNEY
                                                     VERIFICATION**

GROUP HEALTH INCORPORATED, EMBLEM
HEALTH, INC., CARECORE NATIONAL LLC d/b/a
EVICORE, and JOHN DOES 1 AND 2,

                    *Defendants.*
————————————————X

        Jordan K. Merson, an attorney duly admitted to practice in the Courts of New York State,

and a member of the firm MERSON LAW, PLLC., attorneys for the plaintiff in the within action,

hereby affirms under penalty of perjury:

        That he has read the within complaint and knows the contents thereof, and that the same

is true to his own knowledge, except as to the matters therein stated to be alleged upon information

and belief, and that as to those matters he believes it to be true;

        That the sources of his information and knowledge are investigations and records in the

file; and

        That the reason this verification is made by affirmant and not by the plaintiff is that the

plaintiff is not within the County where the attorney has his office.

Dated: New York, New York
        October 6, 2020

                                        MERSON LAW, PLLC

                              By: _____
                                        Jordan K. Merson

# EXHIBIT B

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

| | |
|---|---|
| KATHLEEN VALENTINI, VALERIO VALENTINI, and VALERIO VALENTINI on behalf of his minor son M.V., | Index No. 805306/2020 |
| Plaintiffs, | **NOTICE OF FILING NOTICE OF REMOVAL** |
| -against- | |
| GROUP HEALTH INCORPORATED, EMBLEM HEALTH, INC., CARECORE NATIONAL LLC d/b/a EVICORE, and JOHN DOES 1 AND 2, | |
| Defendants. | |

TO:   Clerk of the Supreme Court of the State of New York
      County of New York
      60 Centre Street, Room 161
      New York, New York 10007

-and-

Steve Cohen, Esq.              Jordan Merson, Esq.
POLLOCK COHEN LLP              MERSON LAW PLLC
60 Broad St., 24th Fl.         950 Third Avenue, 18th Floor
New York, New York 10004       New York, New York 10022
*Attorney for Plaintiffs*       *Attorney for Plaintiffs*

**PLEASE TAKE NOTICE** that Defendant CareCore National LLC d/b/a eviCore ("eviCore") in the above-captioned action has this day filed a Notice of Removal, a copy of which is attached hereto as <u>Exhibit 1</u>, in the Office of the Clerk of the United States District Court for the Southern District of New York. You are also advised that eviCore, upon filing of said Notice of Removal, filed a copy of the Notice with the Clerk of the Supreme Court of the State of New York, County of New York, which has effected this removal in accordance with 28 U.S.C. § 1446(d).

Dated: New York, New York
       November 12, 2020

                                        **GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500
*Attorneys for Defendant CareCore*
*National LLC d/b/a eviCore*


By: s/ E. Evans Wohlforth, Jr.
            E. Evans Wohlforth Jr.