# POLLOCK | COHEN LLP
60 BROAD STREET, 24TH FLOOR
NEW YORK, NEW YORK 10004
(212) 337-5361

November 24, 2020

**VIA ECF & EMAIL**
Hon. John P. Cronan, U.S.D.J.
United States Courthouse
550 Pearl Street
New York, NY 10007
*via email:* CronanNYSDChambers@nysd.uscourts.gov

    Re: *Valentini v. Group Health Inc., et al.*, No. 20 Civ. 09526

Dear Judge Cronan:

  We represent plaintiffs in the above-referenced matter and write in response to defendant eviCore's November 19, 2020 letter requesting a pre-motion conference on its anticipated partial motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).

  Plaintiffs commenced this action to redress defendants' irresponsible overruling of a medical decision by Kathleen Valentini's treating physician, in the guise of performing a utilization review for pre-authorization of treatment. Kathleen's doctor ordered a basic diagnostic test – an MRI. Defendant eviCore, on behalf of GHI, mandated an alternate course of treatment as a prerequisite to the MRI: a six-week course of physical therapy. Compl. ¶¶ 5, 33. But Kathleen had already completed a full course of PT – paid for by defendant GHI. *Id.* ¶ 6.

  Kathleen's doctor immediately appealed the defendants' negligent determination, and the defendants took 40 days to reverse their initial ruling. *Id.* ¶ 8. That delay caused the still-undiagnosed sarcoma in her hip to worsen. *Id.* ¶ 11. Consequently, when Kathleen presented at Memorial Sloan Kettering, doctors told her the delay would prevent them from treating the cancer with chemotherapy alone, and that they would first have to amputate her Kathleen's leg, hip and pelvis. *Id.* ¶¶ 44, 63-64.[1]

  **The Negligence/Medical Malpractice Causes of Action.** This is not merely a breach of contract case. Rather, the case is rooted in tort liability because the defendants negligently engaged in the practice of medicine outside of the contract. As the Second Circuit explained in *Cicio v. Does*, 321 F.3d 83 (2d Cir. 2003):

> "Although prospective utilization review involves no traditional face-to-face clinical encounter, it is still quasi-medical in nature.… [A]s other courts have noted, "a system of prospective decision-making influences the beneficiary's choice among treatment options to a far greater degree than does the theoretical risk of disallowance of a claim facing a beneficiary in a retrospective system.…. These medical decisions have possibly dispositive consequences for the course of treatment that a patient ultimately follows."

---

[1] We must sadly report that Kathleen recently died. We will amend the complaint accordingly.

Hon. John P. Cronan, U.S.D.J.
November 24, 2020
Page 2 of 4

*Id.* at 98-99, *rev'd on other grounds sub nom. Vytra Healthcare v. Cicio*, 542 U.S. 933 (2004).[2]

Further, by eviCore's own admission, its services are not limited to making "coverage determinations only," as the pre-motion letter now asserts. Def. Ltr. at 2. The eviCore website makes clear that its goal is to influence patient decision-making and outcomes. The Complaint details the extensive (and false) claims on eviCore's website concerning how eviCore "makes sure the patient gets the right procedure" and "redirects providers and patients to more appropriate testing and treatment options." Compl. ¶¶ 51-52 (quoting eviCore website). As alleged in the Complaint, eviCore and GHI not only overruled Kathleen's doctor's prescription, they told her what other options she should pursue, and altered the course of her treatment.

Under the circumstances, plaintiffs' tort claims are well-grounded in New York law. As the New York Court of Appeals explained in *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308 (1995):

> A tort obligation is a duty imposed by law to avoid causing injury to others. It is apart from and independent of promises made and therefore apart from the manifested intention of the parties to a contract. Thus, defendant may be liable in tort when it has breached a duty of reasonable care distinct from its contractual obligations, or when it has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations.

*Id.* at 316 (citing *Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540 (1992) (internal quotations and citations omitted)). Here, plaintiff alleges that eviCore improperly usurped the role of her physician, provided negligent medical advice concerning proper treatment, and conspired with GHI to deny and delay an essential, basic diagnostic procedure. This tortious conduct was separate from any contractual obligations between Kathleen and her insurer to pay for the MRI.

The *Cont'l Ins.* decision also observed that: "[t]he very nature of a contractual obligation, and the public interest in seeing it performed with reasonable care, may give rise to a duty of reasonable care in performance of the contract obligations, and the breach of that independent duty will give rise to a tort claim. *Cont'l Ins. Co.*, 87 N.Y.2d at 316. Certainly, there are few more important public interests than when companies render life-altering medical opinions about essential diagnostic tests.[3]

Thus, while the Court in *Cont'l Ins.* found no duty by the insurance company to refrain from a "vindictive" refusal to renew a commercial crime policy after a large fraud scheme was uncovered, the situation here is fundamentally different. As the Court noted, "governing the conduct of insurers and protecting the fiscal interests of insureds is simply not in the same league

---

[2] This decision was ultimately vacated on the unrelated ground that the insurance plan at issue in *Cicio* was governed by ERISA, so the state law claims at issue were pre-empted by federal law. The plan at issue here is not governed by ERISA, and there are no federal pre-emption issues.

[3] *See also* 2019 AMA Prior Authorization (PA) Physician Survey documenting the high level of negative patient outcomes related to prior authorization processes. Available at https://www.ama-assn.org/system/files/2020-06/prior-authorization-survey-2019.pdf.

as the protection of the personal safety of citizen." *Cont'l Ins. Co.*, 87 N.Y.2d at 317; *see also Sommer*, 79 N.Y.2d at 554 (explaining "the public policy of this State ... that a party may not insulate itself from damages caused by grossly negligent conduct") (citing *Kalisch–Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377 (1983)); *accord In re Part 60 Put-Back Litig.*, 169 A.D.3d 217, 223 (1st Dep't 2019).

Defendant's reliance on the Third Circuit's unpublished decision in *Slekcy v. UnitedHealth Group, Inc.*, 620 Fed. App'x 136 (3d Cir. 2015) is misplaced. Unlike Kathleen's experience – where eviCore contacted her directly – the *Slecky* decision placed great weight on the fact that patient there "had absolutely no interaction of any kind with [the reviewing doctor, and] no awareness that [she] even existed." *Id*. at 144. The Court also noted that it did "not opine whether entities and physicians could be liable as aiders and abettors in a scheme designed to deny insurance claims in bad faith," *id*. at 143 n.6, as plaintiffs allege here.

The New York cases cited by the defendants actually support the plaintiffs' position. *See, e.g.*, *Petrosky v. Brasner*, 279 A.D.2d 75, 78 (1st Dep't 2001) (concluding that "liability might have been imposed upon defendants if they had affirmatively misled the prospective insured or foreseeably induced him to forgo otherwise necessary treatment," but not where he was "specifically advised that the tests were administered in the routine course of the [life insurance] application process and not for purposes of treatment"); *McNulty v. City of New York*, 100 N.Y.2d 227, 232 (2003) (noting that courts decide whether a duty exists taking into account "common concepts of morality, logic and consideration of the social consequences of imposing the duty," but finding no duty to a "prohibitive number of possible plaintiffs" who were friends with patient).

**The Fraud and Conspiracy Causes of Action**. Plaintiffs have also satisfied the requirements of Fed. R. Civ. P. 9(b) and stated claims for fraud and conspiracy to commit fraud. Rule 9(b) may be "applied less stringently when the specific factual information is peculiarly within the defendant's knowledge or control." *United States v. Lab. Corp. of Am. Holdings*, 2015 WL 7292774, at *4 (S.D.N.Y. Nov. 17, 2015). Nonetheless, plaintiffs have alleged the key details of defendants' fraudulent scheme – that defendants are engaged in a systemic effort to defeat their contractual obligations to patients by delaying and blocking necessary medical treatments and services that GHI is obligated to cover; that this is accomplished through the use of unqualified doctors performing "utilization reviews" that reach pre-ascertained results without consideration of the patients' file or the appropriate course of treatment; and that this misconduct is designed to and does cause massive amounts of harm to its victims, including Kathleen. *See* Compl. ¶¶ [55-59] (detailing similar misconduct by eviCore with respect to other patients); see also *U.S. ex rel. v. Evicore* (S.D.N.Y. Case No. 19-2501) (alleging that eviCore also routinely engages in the practice of auto-approving certain medical procedures when doing so advances its own pecuniary interests.)

In sum, eviCore's pre-motion letter improperly relies on factual assertions that are inconsistent with the allegations in the Complaint, and implicitly acknowledges that no New York precedent bars plaintiffs' claims, as alleged – begging the question as to why a motion to dismiss is even appropriate. Plaintiffs respectfully request the Court schedule an initial case management conference so that this matter can move forward towards achieving justice for Ms. Valentini and her family.

Hon. John P. Cronan, U.S.D.J.
November 24, 2020
Page 4 of 4

        Respectfully submitted,

        /s/ *Steve Cohen*

        Steve Cohen, Esq.
        Pollock Cohen LLP

        /s/ *Jordan Merson*

        Jordan Merson, Esq.
        Merson Law