**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KATHLEEN VALENTINI, VALERIO VALENTINI, and VALERIO VALENTINI on behalf of his minor son M.V., | Civil Action No. 20-9526 (JPC) |
| Plaintiff. | ORAL ARGUMENT REQUESTED |
| -against- | Document Electronically Filed |
| GROUP HEALTH INCORPORATED, EMBLEM HEALTH, INC., CARECORE NATIONAL LLC d/b/a EVICORE, and JOHN DOES 1 AND 2, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT CARECORE NATIONAL LLC d/b/a EVICORE'S**
**MOTION TO DISMISS THE COMPLAINT**

E. Evans Wohlforth, Jr.
Charlotte M. Howells
Gibbons P.C.
One Gateway Center
Newark, NJ 07102
Tel: (973) 596-4500
Fax: (973) 596-4545

Benjamin A. Post*
Joshua T. Calo**
Post & Post LLC
200 Berwyn Park, Suite 102
920 Cassatt Rd.
Berwyn, PA 19312
Telephone: (610) 240-9180
Fax: (610) 240-9185
*admitted pro hac vice
** admission for pro hac vice pending

*Attorneys for Defendant Group Health*
*Incorporated*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ..................................................................................................... 2

LEGAL STANDARD................................................................................................................. 7

ARGUMENT .............................................................................................................................. 8

   I.   PLAINTIFFS' NEGLIGENCE CLAIM SHOULD BE DISMISSED (COUNT 1)........... 8

      A.   eviCore Did Not Owe Plaintiff a Legal Duty of Care. ................................... 9

      B.   Plaintiffs Fail to Plausibly Allege the Breach of Any Purported Duty of Care, or Causation. ....................................................................................................... 15

   II.   PLAINTIFFS' MALPRACTICE CLAIM SHOULD BE DISMISSED (COUNT 2)...... 17

      A.   Plaintiffs Fail to Plausibly Allege a Physician-Patient Relationship. ........................... 17

      B.   eviCore's Utilization Review Did Not Constitute the Practice of Medicine. ............... 18

   III.   PLAINTIFFS' CLAIM FOR PRIMA FACIE TORT SHOULD BE DISMISSED (COUNT 3). ................................................................................................................. 20

   IV.   PLAINTIFFS' FRAUD CLAIMS SHOULD BE DISMISSED (COUNTS 9 & 10). ...... 21

      A.   Plaintiffs Fail to State a Claim for Common Law Fraud. .............................................. 22

      B.   Conspiracy to Commit Fraud Is Not a Viable Cause of Action................................... 24

   V.   PLAINTIFFS' CLAIM FOR "BAD FAITH" AND PUNITIVE DAMAGES SHOULD BE DISMISSED (COUNT 5). ........................................................................................... 25

   VI.   PLAINTIFFS' REMAINING DERIVATIVE CLAIMS SHOULD BE DISMISSED (COUNTS 7 & 8)........................................................................................................... 25

CONCLUSION........................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Health, Inc. v. Davila,*
  542 U.S. 200 (2004)................................................................................20

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................................7, 16

*Batas v. Prudential Ins. Co. of Am.,*
  724 N.Y.S.2d 3 (App. Div. 2001).............................................................15

*Bear, Stearns Funding, Inc. v. Interface Grp.,*
  361 F. Supp. 2d 283 (S.D.N.Y. 2005).......................................................21

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)................................................................................7, 16, 21

*Brown v. Daikin Am. Inc.,*
  756 F.3d 219 (2d Cir. 2014)....................................................................7, 8

*Centi v. Fedigan,*
  413 F. Supp. 3d 171 (S.D.N.Y. 2019).......................................................8

*Cooper Indus., Inc. v. Agway, Inc.,*
  987 F. Supp. 92 (N.D.N.Y. 1997)............................................................9

*Curiano v. Suozzi,*
  63 N.Y.2d 113 (1984)............................................................................20

*Daniels v. Provident Life Ins. & Cas. Ins. Co.,*
  No. 00-CV-0668, 2001 WL 877329 (W.D.N.Y. July 25, 2001) .....................20, 21

*Davis v. S. Nassau Cmtys. Hosp.,*
  26 N.Y.3d 563 (2015) ............................................................................11, 15

*Dunham v. Vodidien, LP,*
  2020 WL 5995102 (S.D.N.Y. Oct. 9, 2020) ..............................................25

*Durso v. City of New York,*
  673 N.Y.S.2d 651 (App. Div. 1998)........................................................12

*Egerique v. Chowaiki,*
  No. 19 CIV. 3110, 2020 WL 1974228 (S.D.N.Y. Apr. 24, 2020)..................24, 25

*Employees' Ret. Sys. v. Morgan Stanley & Co.*,
   814 F. Supp. 2d 344 (S.D.N.Y. 2011)..............................................................22, 23

*Erie R. Co. v. Tomkins*,
   304 U.S. 64 (1938)..............................................................................................9

*Espinal v. Melville Snow Contractors*,
   98 N.Y.2d 136 (2002) ........................................................................................8

*Farash v. Cont'l Airlines, Inc.*,
   337 Fed. App'x 7 (2d Cir. 2009)......................................................................16

*Gedon v. Bryn-Lin Hosps., Inc.*,
   730 N.Y.S.2d 641 (App. Div. 2001)................................................................18

*Hamlet at Willow Cr. Dev. Co., LLC v. Northeast Land Dev. Corp.*,
   878 N.Y.S.2d 97 (App. Div. 2009)..................................................................25

*Harsco Corp. v. Segui*,
   91 F.3d 337 (2d Cir. 1996)..............................................................................22

*Head v. Emblem Health*,
   64 N.Y.S.3d 518................................................................................................23

*Heinert v. Bank of Am. N.A.*,
   2020 WL 6689287 (2d Cir. 2020).....................................................................8

*Holloway v. King*,
   161 Fed. App'x 122 (2d Cir. 2005).................................................................2, 3

*Inn Chu Trading Co. v. Sara Lee Corp.*,
   810 F. Supp. 501 (S.D.N.Y. 1992) ..................................................................22

*Jiminez v. United States*,
   No. 11 Civ. 4593, 2013 WL 1455267 (S.D.N.Y. Mar. 25, 2013) ...............17, 18

*Jones v. Beth Isr. Hosp.*,
   2018 WL 1779344 (S.D.N.Y. Apr. 12, 2018)..................................................17

*Karasek v. LaJoie*,
   92 N.Y.2d 171 (1998) ...............................................................................17, 19, 20

*Kingsley v. Price*,
   80 N.Y.S.3d 806 (App. Div. 2018)..............................................................12, 13

*Kiobel v. Royal Dutch Petroleum Co.*,
   621 F.3d 111 (2d Cir. 2010)............................................................................16

2868764.1 106782-103821

*Klein v. Empire Blue Cross & Blue Shield*,
    569 N.Y.S.2d 838 (App. Div. 1991) ................................................................14, 15

*Krumme v. Westpoint Stevens Inc.*,
    238 F.3d 133 (2d Cir. 2000) .................................................................................9

*Lauer v. City of New York*,
    95 N.Y.2d 95 (2000) ...........................................................................................15

*LoDico v. Caputi*,
    517 N.Y.S.2d 640 (App. Div. 1987) ..............................................................12, 18

*Maska U.S. Inc. v. Kansa Gen. Ins. Co.*,
    198 F.3d 74 (2d Cir. 1999).................................................................................10

*Matthews & Fields Lumber Co. v. New Eng. Ins. Co.*,
    113 F. Supp. 2d 574 (W.D.N.Y. 2000) ...............................................................9

*McNulty v. City of New York*,
    100 N.Y.2d 227 (2003) .................................................................................11, 13

*McSpedon v. Levine*,
    72 N.Y.S.3d 97 (App. Div. 2018) .......................................................................24

*Mejia v. Davis*,
    No. 1:16-cv-9706, 2018 WL 333829 (S.D.N.Y. Jan. 8, 2018) .......................17, 18

*Michalski v. Home Depot, Inc.*,
    225 F.3d 113 (2d Cir. 2000)...............................................................................10

*Mikaelian v. Liberty Mut. Ins.*,
    2016 WL 4702106 (E.D.N.Y. Sept. 6, 2016) ......................................................24

*Nealy v. U.S. Surgical Corp.*,
    587 F. Supp. 2d 579 (S.D.N.Y. 2008)................................................................26

*New York University v. Continental Insurance Company*,
    87 N.Y.2d 308 (1995) .............................................................................14, 15, 23

*Pappas v. Philip Morris, Inc.*,
    915 F.3d 889 (2d Cir. 2019)..................................................................................9

*Pastor v. Woodmere Fire Dist.*,
    No. 16-CV-892, 2016 WL 6603189 (E.D.N.Y. Nov. 7, 2016)...........................2, 3

*Petrosky v. Brasner*,
    718 N.Y.S.2d 340 (App. Div. 2001) ...............................................................13, 14

2868764.1 106782-103821

*Ross v. Gidwani*,
    850 N.Y.S.2d 567 (App. Div. 2008) .................................................................................24

*Runner v. N.Y. Stock Exch., Inc.*,
    568 F.3d 383 (2d Cir. 2009).........................................................................................9

*Rydstrom v. Home Depot U.S.A., Inc.*,
    No. 16-CV-2833, 2019 WL 117600 (E.D.N.Y. Jan. 7, 2019) ....................................8

*Schmidt v. Bishop*,
    779 F. Supp. 321 (S.D.N.Y. 1991) ...............................................................................9

*Scott v. Uljanov*,
    74 N.Y.2d 673 (1989) ...............................................................................................20

*Scozzaro v. Matarasso*,
    No. 800125/10, 2013 WL 7018187 (N.Y. Sup. Ct. Nov. 8, 2013) .........................19

*Skelcy v. UnitedHealth Grp., Inc.*,
    620 Fed. App'x 136 (3d Cir. 2015)............................................................... *passim*

*Skelcy v. Unitedhealth Grp., Inc.*,
    No. CIV. 12-01014, 2012 WL 6087492 (D.N.J. Dec. 6, 2012), aff'd, 620 F.
    App'x 136 (3d Cir. 2015)............................................................................................11

*Solomon v. City of New York*,
    66 N.Y.2d 1026 (1985) .................................................................................................8

*Stagl v. Delta Airlines*,
    52 F.3d 463 (2d Cir. 1995)..........................................................................................8

*State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*,
    589 F. Supp. 2d 221 (E.D.N.Y. 2008) .......................................................................22

*Sullivan v. Saint-Gobain Performance Plastics Corp.*,
    431 F. Supp. 3d 448 (D. Vt. 2019).............................................................................9

*Trans World Metals, Inc. v. Southwire Co.*,
    769 F.2d 902 (2d Cir. 1985)........................................................................................9

*Travelers Cas. & Sur. Co. v. Dormitory Auth.*,
    735 F. Supp. 2d 42 (S.D.N.Y. 2010)......................................................................9, 10

*Violandi v. New York*,
    584 N.Y.S.2d 842 (App. Div. 1992) ...........................................................12, 14, 18

*In re Yukos Oil Co. Dec. Litig.*,
    No. 04 Civ. 5243, 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006) ..............................8

v

*Zajac v. Wilson*,
     768 N.Y.S.2d 889 (App. Div. 2003) ...................................................................................12

*Zawahir v. Berkshire Life Ins. Co.*,
     804 N.Y.S.2d 405 (App. Div. 2005) ...................................................................................25

**Statutes**

N.Y. CLS Insurance Law § 4900(h) ..........................................................................................19

N.Y. CLS Insurance Law § 4903(b)(1) .......................................................................................6

N.Y. CLS Insurance Law § 4903(e) ...........................................................................................20

N.Y. Educ Law § 6521 ...............................................................................................................19

**Rules**

Fed. R. Civ. P. 9(b) ..........................................................................................................1, 21, 22

Fed. R. Civ. P. 12(b)(6).........................................................................................................1, 7

2868764.1 106782-103821

Defendant, CareCore National LLC d/b/a eviCore ("eviCore"), respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Complaint (ECF No. 1 at Ex. A (Compl.)) pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). For the reasons set forth below, eviCore respectfully requests that this Court dismiss the Complaint, in its entirety, with prejudice.

## PRELIMINARY STATEMENT

In this case, Plaintiff Kathleen Valentini ("Plaintiff") alleges that she was improperly denied pre-authorization for insurance coverage of ███. She appealed the denial, and it was reversed, all within weeks of the initial request. The purported delay, it is alleged, caused the ████████████████████████████████████████ Notably, however, ████████████████████████████████████ And neither the pre-authorization, nor the appeal, were requested on an expedited basis. Even after the pre-authorization was approved, ██████ was not completed until seven days later.

eviCore performs utilization review, including the pre-authorization in this case, under a contract with Plaintiff's health insurer, Co-Defendant Group Health Incorporated ("GHI"). Although this case arises from the payment of benefits under an insurance contract, Plaintiffs have asserted novel tort law claims against eviCore, including: negligence, medical malpractice, *prima facie* tort, fraud, and conspiracy to commit fraud, as well as derivative claims for punitive damages, loss of services, and loss of guidance to a minor child. Each claim fails as a matter of law.

At bottom, this case involves a matter of contract, governed by contract law, and limited to contractual damages, if any. New York law provides no support for Plaintiff's attempt to impose novel tort law duties of care, in the context of utilization review performed by a third-party at the request of a health insurer. In a recent holding, the Third Circuit Court of Appeals affirmed the

dismissal of a similar claim under New Jersey law based on reasoning that is equally applicable here. *See Skelcy v. UnitedHealth Grp., Inc.*, 620 Fed. App'x 136 (3d Cir. 2015).

As discussed herein, Plaintiffs' primary claims for negligence and medical malpractice fail on several grounds, including that (1) eviCore owed no cognizable duty of care to plaintiff; (2) eviCore's utilization review did not involve a physician-patient relationship, nor did it constitute the practice of medicine; and (3) the Complaint otherwise lacks sufficient factual allegations to establish the breach of any alleged duty, or causation. All other causes of action are both factually and legally deficient. Plaintiffs' fraud-based claims are vague and conclusory, and fail to establish the required elements with sufficient particularity. Likewise, Plaintiffs' claim for *prima facie* tort is unsupported by any plausible factual allegations. Finally, because all of Plaintiffs' substantive claims are deficient, the remaining derivative causes of action must also fail as a matter of law.

## FACTUAL BACKGROUND

At all relevant times, Plaintiff was covered under a health insurance policy issued by GHI. (Compl. ¶¶ 3, 16.) The terms of the policy delineate the scope of coverage for "medically necessary services." (Certification of E. Evans Wohlforth, Jr. in Support of Motions to Dismiss Submitted on Behalf of Defendants CareCore National LLC d/b/a eviCore and Group Health Incorporation ("Wohlforth Cert."), Ex. A at at 7.)[1] The policy also outlines the procedures for

---

[1] In support of its Motion, eviCore submits a true and correct copy of the GHI Comprehensive Benefits Plan (CBP), including the Certificate of Insurance that sets forth the terms of Plaintiff's insurance coverage. (Wohlforth Cert., Ex. A.) In ruling on a 12(b)(6) motion, federal courts may consider documents and statements outside the complaint when they are "incorporated in [the complaint] by reference," or "'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference." The Court may also consider "documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the materials and relied on it in framing the complaint." *See Pastor v. Woodmere Fire Dist.,* No. 16-CV-892, 2016 WL 6603189, at *3–4 (E.D.N.Y. Nov. 7, 2016); *see also Holloway v. King*, 161 Fed. App'x 122, 124 (2d Cir. 2005) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint."). Here, the GHI Certificate of Insurance is essential to the Complaint, as it sets forth the contractual obligations that Plaintiffs are seeking to enforce, including through a breach of contract claim. It is quoted, referenced, and extensively relied on in the Complaint (*e.g.*, Compl. ¶¶ 45-49.), and thus, is properly deemed to be integral and incorporated by reference. *Pastor*, 2016 WL 6603189, at *4 ("courts within this Circuit routinely consider copies of relevant policy documents in connection with insurance disputes.").

utilization review, which is the process of reviewing health care services to determine if they are medically necessary.  This includes pre-authorization reviews to determine if a requested service is covered before it is performed.  (*Id.* at 50-51.)  eviCore was contracted by GHI to perform utilization review, including the pre-authorization at issue here.  (Compl. ¶¶ 3, 20, 30.)

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████.  Based on the terms of Plaintiff's insurance policy, she was required to obtain pre-authorization for coverage of █████████.  (*Id.* ¶¶ 26-30.)  On February 11, 2019, eviCore received the request for pre-approval, and then sent a request for information to Plaintiff and ██████ which, in relevant part, stated:

> We need more information to determine if the request is a covered benefit and if it is medically necessary.  Please provide the following information:
>
> - Current signs and symptoms indicating the exam
> - Prior diagnostic studies with results
> - Prior management
> - Medications with dose and duration

(Wohlforth Cert., Ex. B.)[2]  Subsequently, on February 13, 2019, ██████ faxed clinical information to eviCore, consisting of the ██████████████████████████████.  (*Id.*, Ex. C.) ████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

---

[2]In support of its Motion, eviCore submits true and correct copies of written communications between eviCore, Plaintiff, and ██████, pertaining to the pre-authorization request, including the supporting documentation submitted by ██████.  (Wohlforth Cert., Ex. B, 2/11/19 Letters from eviCore to Plaintiff and ██████; Ex. C, 2/13/19 Fax from ██████ to eviCore; Ex. D, 2/16/19 Letters from eviCore to Plaintiff and ██████; Ex. E, 2/20/19 Fax from ██████ to eviCore; Ex. F, 3/7/20 Letters from eviCore to Plaintiff and ██████.)  These materials are integral to the Complaint, as they are extensively referenced, and include the primary factual basis for Plaintiffs' claims and theories.  (*E.g.*, Compl. ¶¶ 1-2, 4-6, 8, 20, 24-30, 32-34, 67, 79-80, 114, 135.)  *See Holloway*, 161 Fed. App'x at 124 (finding documents integral where complaint "was replete with references . . . and requested judicial interpretation of their terms"); *Pastor*, 2016 WL 6603189, at *5 (finding document integral when Complaint suggested it was the "legal document containing [the] obligations upon which the Plaintiff's claim . . . stands or falls").

3

[redacted] (*Id.*)

Three days later, on February 16, 2019, eviCore completed its clinical review and denied pre-authorization. On that date, it sent an "initial adverse determination" notice to Plaintiff and [redacted], which set forth the following explanation for its denial:

> This letter is your **Initial Adverse Determination.** This means we are denying your request for coverage of the requested service(s). We are denying coverage for the service or items you asked for because:
>
> Based on eviCore [redacted], we cannot approve this request. [redacted]

(Wohlforth Cert., Ex. D; Compl. ¶¶ 32-33.) It also provided information about the right to appeal.

On February 20, 2019, [redacted] submitted an appeal to eviCore with additional clinical information to support the pre-authorization request, including a letter which stated:

> [redacted]



(Wohlforth Cert., Ex. E.) ▮▮▮▮▮ also submitted additional medical records, with documentation of Plaintiff's prior course of treatment, and her response. (*Id.*) On March 7, 2019, eviCore completed its review, and authorized the ▮▮▮▮▮ It sent a notification to ▮▮ ▮▮▮ and Plaintiff stating that: "After careful evaluation of the clinical information presented to eviCore, a board-certified physician authorized the ▮▮▮▮▮▮ requested." (*Id.*, Ex. F.)

Significantly, the timing of eviCore's coverage determinations were consistent with the utilization review procedures set forth in the Certificate of Insurance.  First, regarding pre-authorization reviews, the policy provides the following:

> 1. **If we have all the information necessary** to make a determination regarding a Preauthorization review, we will make a determination and provide notice to you (or your designees) and your Provider, by telephone and in writing, **within three (3) business days of receipt of the request**.
>
> **If we need additional information, we will request it within three (3) business days**.  You or your Provider will then have forty-five (45) calendar days to submit the information.  **If we receive the requested information within forty-five (45) days, we will make a determination and provide notice to you (or your designee) and your Provider, by telephone, within seventy-two (72) hours of receipt of the request.** Written notice will be provided within three (3) business days of receipt of the request. . .

(Wohlforth Cert., Ex. B, COI at 51 (emphasis added); *see also* Compl. ¶ 46.)  In Plaintiff's case, eviCore submitted a request for additional information on February 11, 2019, the same day that it received ▮▮▮▮▮ pre-authorization request.  In response, ▮▮▮▮▮ faxed his office note to eviCore on February 13, 2019, and within three days of receipt, eviCore issued its initial adverse determination notice on February 16, 2019.  (*See* Wohlforth Cert., Exs. A, B & C.)

5

Second, regarding standard "Pre-Authorization Appeal[s]," the policy provides that: "If your appeal relates to a Preauthorization request, we will decide the appeal **within thirty (30) calendar days of receipt of the appeal request**."  (Wohlforth Cert., Ex. B, at 53 (emphasis added).)  Here, █████████ submitted an appeal with additional documentation on February 20, 2019.  Fifteen days later, on March 7, 2019, eviCore issued its decision to approve ████████.  (*See* Wohlforth Cert., Ex. E, Ex. F.)[3]

Plaintiff had █████████████████████████, seven days after it was approved by eviCore. ███████████████████████████ (Compl. ¶ 9.)  It is alleged that █████████ ████████████████████████████████████████████████████████████████ ████████ (*Id.* ¶¶ 10-11, 43.)  Plaintiffs base this claim on a vague allegation that ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ (*Id.* ¶ 12.) However, the Complaint does not allege any further context about the timing of Plaintiff's diagnosis or treatment, or the date of this supposed statement.

With this factual background, Plaintiffs brought suit against eviCore, GHI, and Emblem Health, Inc. (GHI's parent company),[4] seeking damages for physical and emotional injuries. Plaintiffs assert various state law tort claims against all defendants, including negligence (Count 1), medical malpractice (Count 2), *prima facie* tort (Count 3), fraud (count 9), conspiracy to commit fraud (Count 10), "bad faith/punitive damages" (Count 5), and derivative claims for loss of services (Count 8), and loss of guidance to a minor child (Count 9).  Plaintiffs also assert

---

[3]The timing of eviCore's determinations were also consistent with relevant provisions of the New York Insurance Law.  *See* N.Y. CLS Insurance Law § 4903(b)(1) (providing for benefit plans to respond to prior authorization requests "within three days of receipt of *all necessary information*"); *id.* § 4904(c) (providing for benefit plans to respond to appeals of adverse determinations "within *sixty days* of the receipt of necessary information to conduct the appeal").
[4]To date, Defendants have no knowledge of Emblem being served in this matter.

2868764.1 106782-103821

contract-based claims against GHI and Emblem, including breach of contract (Count 4) and breach of implied covenant of good faith and fair dealing (Count 6).

Underlying each cause of action, Plaintiffs' primary contention is that eviCore's initial denial of coverage was improper, in that it failed to exercise reasonable care and deviated from accepted standards in determining that ██████ was not "medically necessary."  In support of their fraud-based claims, Plaintiffs rely on conclusory allegations of a purported "scheme" to wrongfully deny medical benefits.  However, as set forth below, Plaintiffs' factual allegations are insufficient to support any viable claim against eviCore.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This "plausibility standard" requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Twombly*, 550 U.S. at 555.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679.

Although a plaintiff's factual allegations must generally be accepted as true, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 225 (2d Cir. 2014).  For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*; *see also Heinert v. Bank of Am. N.A.*, 2020 WL 6689287, at *1 (2d Cir. 2020) ("Allegations that are 'conclusory' are not entitled to be assumed true.").  Furthermore, the Court need not accept as true

"any allegations that are contradicted by documents deemed to be part of the complaint, or materials amenable to judicial notice." *In re Yukos Oil Co. Dec. Litig.*, No. 04 Civ. 5243, 2006 WL 3026024, at \*12 (S.D.N.Y. Oct. 25, 2006).

## ARGUMENT

## I.     PLAINTIFFS' NEGLIGENCE CLAIM SHOULD BE DISMISSED (COUNT 1).

To state a negligence claim under New York law, a plaintiff must show that: "(1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of that breach." *Stagl v. Delta Airlines*, 52 F.3d 463, 467 (2d Cir. 1995) (citing *Solomon v. City of New York*, 66 N.Y.2d 1026 (1985)).

"Because a finding of negligence must be based on the breach of a duty, a threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party." *Centi v. Fedigan*, 413 F. Supp. 3d 171, 176 (S.D.N.Y. 2019) (quoting *Espinal v. Melville Snow Contractors*, 98 N.Y.2d 136 (2002)). "Without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm." *Id.* (quoting *Espinal*, 98 N.Y.2d 136). "[T]he existence and scope of a duty is a question of law." *Rydstrom v. Home Depot U.S.A., Inc.*, No. 16-CV-2833, 2019 WL 117600, at \*3 (E.D.N.Y. Jan. 7, 2019) (quoting *Espinal*, 98 N.Y.2d 136).

Here, Plaintiffs' negligence claim fails for the fundamental reason that eviCore did not owe a legal duty of care to Plaintiff. The New York Court of Appeals has never recognized a duty between an insured seeking payment for medical services, and third-parties contracted to conduct utilization review at the request of a health insurer. And there is no basis, in this diversity action, to create such a novel common law duty of care under state law. In any event, Plaintiffs' negligence claim fails on its merits for lack of sufficient factual allegations to plausibly establish the breach of any purported duty of care, or causation.

8

### A.   eviCore Did Not Owe Plaintiff a Legal Duty of Care.

In exercising its diversity jurisdiction, this Court must ascertain and apply the substantive law of New York.  *See Pappas v. Philip Morris, Inc.*, 915 F.3d 889, 893 (2d Cir. 2019) (citing *Erie R. Co. v. Tomkins*, 304 U.S. 64, 78 (1938)).[5]  As the Second Circuit has emphasized, the "role [of] a federal court sitting in diversity is not to adopt innovative theories that may distort established state law." *Travelers Cas. & Sur. Co. v. Dormitory Auth.*, 735 F. Supp. 2d 42, 88 (S.D.N.Y. 2010) (quoting *Runner v. N.Y. Stock Exch., Inc.*, 568 F.3d 383, 386 (2d Cir. 2009)) (alteration in original). Rather, the Court "must respect and apply the law of New York as it exists now." *Schmidt v. Bishop*, 779 F. Supp. 321, 327 (S.D.N.Y. 1991).[6]

"Where a federal court encounters an issue that has not yet been decided by the relevant state's law, the court 'must carefully predict how the state's highest court would resolve the uncertainties that [the court has] identified.'" *Travelers Cas. & Sur. Co.*, 735 F. Supp. 2d at 88 (quoting *Runner*, 568 F.3d at 386) (alteration in original).  "In making this prediction, [the court] give[s] the fullest weight to pronouncements of the state's highest court while giving proper regard to relevant rulings of the state's lower court." *Id.* (quoting *Runner*, 568 F.3d at 368) (alteration in original).  Federal courts may also "consider cases from other jurisdictions on the same or analogous issues." *Id.* (citing *Maska U.S. Inc. v. Kansa Gen. Ins. Co.*, 198 F.3d 74, 78 (2d Cir. 1999)); *accord Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000).

---

[5]Plaintiffs' Response to eviCore's Pre-Motion Conference letter (EFC No. 11) assumes that their claims are governed by New York law, and eviCore does not object to this choice of law.  *See Krumme v. Westpoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such implied consent . . . is sufficient to establish choice of law.").

[6]*See also Trans World Metals, Inc. v. Southwire Co.*, 769 F.2d 902, 908 (2d Cir. 1985) ("As a federal court sitting in diversity, we will not extend the application of this state law."); *Cooper Indus., Inc. v. Agway, Inc.*, 987 F. Supp. 92, 104 (N.D.N.Y. 1997) ("this Court will not create or extend New York law to recognize such a novel duty; that is the bailiwick of New York's courts and legislature."); *Matthews & Fields Lumber Co. v. New Eng. Ins. Co.*, 113 F. Supp. 2d 574, 579 (W.D.N.Y. 2000) (duty of federal court sitting in diversity is to apply state law as it exists, not to set new precedents); *Sullivan v. Saint-Gobain Performance Plastics Corp.*, 431 F. Supp. 3d 448, 452 (D. Vt. 2019) ("The federal courts do not serve as engines for change of state common law.").

Here, Plaintiffs' tort claims against eviCore are novel.  No appellate court in New York has ever recognized—or even addressed—a tort law duty of care in the context of insurance utilization review.  However, New York courts have repeatedly held that contractual obligations under an insurance contract do *not* give rise to tort law duties of care.  Given the relevant authority available, there is no basis to find that eviCore owed Plaintiff a legal duty of care.

The Third Circuit addressed this precise issue, under New Jersey law, and held that no duty of care was owed by a third-party medical review company, or its physician-employee, when reviewing an insured's request for coverage of a prescribed treatment.  *See Skelcy v. UnitedHealth Grp., Inc.*, 620 Fed. App'x 136 (3d Cir. 2015).  When read in the context of relevant New York precedent, the Third Circuit's reasoning is highly persuasive to the issue at bar.

In *Skelcy*, a health insurer denied coverage for a treatment ordered by the insured's treating physician.  *Id.* at 138.  After the treating physician requested an "Expedited Utilization Review Appeal," the insurer transmitted the appeal to a third-party review company for a "peer review assessment" by a physician of the same specialty.  *Id.*  Based on the reviewing physician's determination that the treatment was "not [the] standard of care for this patient's disease," the insurer affirmed its denial of coverage.  *Id.* at 138-39.  Although the insurer later reversed its denial, the delay in treatment allegedly caused the insured's death.  *Id.* at 138-39, 143.  As here, the plaintiff asserted negligence and medical malpractice claims against the review company and the reviewing physician, alleging a failure to exercise "reasonable care" in conducting the peer review.

The Third Circuit, in predicting that the New Jersey Supreme Court would *not* impose a duty of care, relied on New Jersey precedent addressing the scope of a physician's duties of care to non-patients.  *See id.* at 141-43.  Although New Jersey courts had repeatedly held that physicians owe duties of reasonable care in connection with third-party medical examinations—including

10

pre-employment physicals, and examinations to substantiate disability claims—the Third Circuit found that insurance utilization review is markedly different. When merely reviewing an insured's medical records for purposes of insurance coverage determinations, the Court reasoned, a physician lacks the type of "personal interactions" and "relationship" with the insured that could justify a legal duty of care. *See id.* at 143-44.[7]

The Third Circuit's reasoning is even more persuasive when applied to New York law. Unlike New Jersey, New York courts have generally declined to impose tort law duties on physicians, beyond traditional physician-patient relationships. *See, e.g.*, *McNulty v. City of New York*, 100 N.Y.2d 227, 232 (2003) ("We have been reluctant to expand a doctor's duty of care to a patient to encompass nonpatients."); *cf. Davis v. S. Nassau Cmtys. Hosp.*, 26 N.Y.3d 563, 572 (2015) ("In evaluating duty questions we have historically proceeded carefully and with reluctance to expand an existing duty of care."). In the context of third-party medical evaluations, New York courts have consistently declined to recognize duties of care, even when the injured party has personal interactions with a physician.

This principle is illustrated in *Violandi v. New York*, 584 N.Y.S.2d 842 (App. Div. 1992), where the plaintiff—a police officer injured in the line of duty—submitted to a medical examination conducted at the requested of his employer, the New York Police Department. *Id.* at 843. The plaintiff alleged that the examining physician negligently recommended that he return to duty, which resulted in further injuries. *Id.* However, the First Department held that the

---

[7] Although the insurance company (rather than the third-party reviewer) made the final coverage determination in *Skelcy*, the insurer based its denial on the peer review outcome. *See id.* at 142. Accordingly, there is no relevant distinction from eviCore's determination that the requested ███ was not medically necessary and, therefore, not covered. Notably, the District Court, in *Skelcy*, held that physicians employed by the insurance company, who denied the initial request for pre-approval, also did not owe the insured a legal duty of care—a ruling that was not appealed to the Third Circuit. *See Skelcy v. Unitedhealth Grp., Inc.*, No. CIV. 12-01014, 2012 WL 6087492, at *8–9 (D.N.J. Dec. 6, 2012), aff'd, 620 F. App'x 136 (3d Cir. 2015).

2868764.1 106782-103821

physician owed no duty of care to the plaintiff, because the examination did not create an express or implied physician-patient relationship:

> [A] cause of action against a physician depends upon the existence of a doctor-patient relationship, where the doctor has breached his professional duty to the patient. . . . A physician-patient relationship does not exist where the examination is conducted solely for the purpose or convenience or on behalf of an employer; in order to establish that relationship there must be more than a mere examination, even where the examination results in a misdiagnosis reported to the employer.

*Id.* (internal citations omitted); *see also Zajac v. Wilson*, 768 N.Y.S.2d 889 (App. Div. 2003) (no cause of action for misdiagnosis and failure to authorize surgery based on IME conducted at request of insurer); *LoDico v. Caputi*, 517 N.Y.S.2d 640 (App. Div. 1987) (no duty owed when examining plaintiff solely to rate injury for insurance carrier); *Durso v. City of New York*, 673 N.Y.S.2d 651 (App. Div. 1998) (police department surgeon owed no duty when performing disability evaluations, despite conferring with plaintiff's treating physicians, ordering diagnostic test, and making recommendation about pain medication).

New York law is even clearer in circumstances where there is no personal interaction with a physician.  Most recently, *Kingsley v. Price*, 80 N.Y.S.3d 806 (App. Div. 2018) held that, in the context of employer-mandated screenings for occupation-induced diseases, neither the employer, nor the examining physicians, owed a duty to inform the decedent of a non-work-related mass identified on a chest x-ray.  The Appellate Division focused on the nature of the relationship, observing that physicians did not perform a physical examination, *id.* at 809; and the decedent understood that the evaluation was for employment-screening purposes only, *id.* at 806, 811. Under the circumstances, the Court found there was no basis to "expand a doctor's duty of care to encompass nonpatients."  *Id.* at 811 (citing *McNulty*, 100 N.Y.2d 227).

2868764.1 106782-103821

Significantly, New York courts have applied similar reasoning when addressing the duties owed by insurance providers.  In *Petrosky v. Brasner*, 718 N.Y.S.2d 340 (App. Div. 2001), the Court held that an insurance carrier owed no duty to disclose abnormal EKG findings identified during a pre-insurance evaluation.  Again, the Court emphasized that the decedent was not examined by a physician, and that there was

> no indication that [the decedent] relied on [the insurer] for anything other than approval for life insurance.  Nothing in the nature of [the decedent's] relationship with this defendant could give rise to a reasonable reliance on it for health information[.] . . . Further [the decedent] could not rely on [the third-party examiner] for health information since the examination was for the sole purpose of aiding [the insurer] in determining [his] insurability.

*Id.* at 343.

In the present case, Plaintiff has not alleged any type of relationship with, or reliance on, eviCore that could support a cognizable duty under New York law.  First, as in *Skelcy*, Plaintiff had no personal interactions with eviCore, or the eviCore physicians that conducted utilization review.  She was not examined by a physician, nor did she undergo tests or treatment requested by eviCore or GHI.  (Compl., ¶ 40.)  All that eviCore did was review medical records submitted by Plaintiff's doctor, and apply utilization review guidelines, to determine if the requested treatment was covered under her insurance policy with GHI.  And eviCore's involvement in doing so was solely because of its relationship with GHI, not with Plaintiff.  *See Skelcy*, 620 Fed. App'x at 144.

Second, no allegations suggest that Plaintiff relied on eviCore for medical advice or health information.  All pertinent communications to eviCore were made by Plaintiff's treating physician, including the pre-authorization request, the submission of supporting documentation, and the appeal of eviCore's initial denial of coverage.  (Compl. ¶¶ 8, 29; Wohlforth Cert., Exs. C & D.) Even crediting the claim that eviCore offered affirmative "medical advice" (Compl. ¶¶ 32-33, 43),

13

which it did not, Plaintiff did not make any treatment decisions in reliance thereof. *See Skelcy*, 620 Fed. App'x at 144; *cf. Petrosky*, 718 N.Y.S.2d at 343; *Violandi*, 584 N.Y.S.2d at 843-44.

At bottom, eviCore's connection with Plaintiff was limited to determining her entitlement to benefits under an insurance contract with GHI.  Thus, any legal duties owed to Plaintiff, if any, were contractual in nature—*i.e.*, the payment of covered medical expenses.  Putting aside the issue of contractual privity,[8] Plaintiff's insurance contract also provides no basis for a negligence cause of action against eviCore.

The New York Court of Appeals has made clear that contractual obligations, under an insurance contract, do not give rise to tort law duties of care.  In *New York University v. Continental Insurance Company*, 87 N.Y.2d 308 (1995), the Court explained that "[a] tort obligation is a duty imposed by law . . . '*apart from and independent of* promises made and therefore apart from the manifested intention of the parties' to a contract."  *Id.* at 767 (emphasis added) (quoting Prosser and Keeton, Torts § 92 (5th Ed.)).  Hence, an insurer's failure to properly investigate a claim, and its baseless denial of coverage, did not give rise to an independent tort, because such allegations "merely evidence[d] plaintiff's dissatisfaction with defendants' performance of the contract obligations."  *Id.* at 769-70.

Here, as in *New York University*, Plaintiff's negligence claim relates directly to the performance of GHI's contractual obligations, as the insurance contract prescribes the scope of coverage, and procedures for pre-authorization review.  (*See* Compl. ¶¶ 45-46; Wohlforth Cert.,

---

[8]There was, of course, no contractual privity between Plaintiff and eviCore.  eviCore examined, and ultimately granted, Plaintiff's request for pre-authorization pursuant to its contract with GHI.  Plaintiffs apparently recognize as much as they have not pled a breach of contract claim against eviCore.  Moreover, even if Plaintiffs could maintain a contract-based claim against eviCore, which they cannot, it would not permit recovery for the types of physical and emotional injuries that Plaintiffs allege.  *See, e.g.*, *New York Univ.*, 87 N.Y.2d at 315 ("damages arising from the breach of a contract will ordinarily be limited to the contract damages necessary to redress the private wrong."); *Klein v. Empire Blue Cross & Blue Shield*, 569 N.Y.S.2d 838, 841 (App. Div. 1991) ("in an action for breach of contract a plaintiff may not recover for mental or emotional distress.").

Ex. A, COI at 7, 50-56.)  Thus, because "[a] contract of insurance does not create a relationship for which a duty is owed to the plaintiff separate from the contractual obligation," eviCore owed no legal duty of care in carrying out the terms of the GHI insurance policy.  *Klein*, 569 N.Y.S.2d at 841; *see also Batas v. Prudential Ins. Co. of Am.*, 724 N.Y.S.2d 3, 7 (App. Div. 2001) (no fiduciary duty owed under insurance contract).

As demonstrated above, New York law does not recognize a tort law duty of care in the context of insurance utilization review.  To create such a duty, in this case, would substantially expand New York's tort law, creating entirely new categories of tort claims, defendants, and damages.  It would also significantly alter the existing lines that New York courts have drawn between contract law and tort law.  In this diversity case, there is no reliable data to predict that the New York Court of Appeals would adopt such a novel and expansive duty of care.  *See Davis*, 26 N.Y.3d at 580 (emphasizing that "courts should proceed cautiously and carefully in recognizing a duty of care"); *Lauer v. City of New York*, 95 N.Y.2d 95, 100 (2000) ("[C]ourts must be mindful of the precedential, and consequential, future effects of their rulings, and limit the legal consequences of wrongs to a controllable degree.").

### B.   Plaintiffs Fail to Plausibly Allege the Breach of Any Purported Duty of Care, or Causation.

The Complaint also lacks sufficient factual allegations to plausibly establish two other required elements: breach and causation.  On the issue of breach, Plaintiffs rely on vague and conclusory statements, such as that Defendants "failed to follow the applicable standard of medical care," and failed "to act reasonably and use due care with respect to her medical care and treatment."  (Compl., ¶¶ 21, 66.)  But such conclusions are not entitled to an assumption of truth, and "do not satisfy the need for plausible factual allegations," under the *Twombly* and *Iqbal* pleading standard.  *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 191 (2d Cir. 2010); *see*

*Farash v. Cont'l Airlines, Inc.*, 337 Fed. App'x 7, 9 (2d Cir. 2009) ("[T]he plaintiff is required to allege in what manner he was injured and how the defendant was negligent.").

For instance, Plaintiffs do not delineate what standards eviCore should have satisfied, or how it failed to do so. While Plaintiffs include a boilerplate reference to "applicable laws and regulations governing the 'utilization review' process" (Compl. ¶ 42), they do not cite any law or regulation, let alone one that was violated. In any event, the New York Insurance Law, which regulates utilization review, does not create a tort law duty of care, nor does it provide for a private cause of action. *See New York Univ.*, 87 N.Y.2d 318.

Likewise, Plaintiffs' allegations of causation are conclusory. Plaintiffs suggest that *if* ▮ had been "conducted in a timely manner," ▮▮▮ (Compl. ¶ 63.) But there are no *facts* that plausibly suggest how an earlier pre-authorization, during the weeks that the request was pending, *would have* prevented the ▮ ▮. Notably, ▮▮▮ The Complaint also fails to address "obvious alternative explanation[s]," such as the ▮ ▮ *See Iqbal*, 556 U.S. at 582. Nor does the Complaint suggest how the timing of the pre-authorization impacted the timing of ▮ or diagnosis, relative to the alleged ▮. Indeed, neither the pre-authorization nor the appeal were requested on an expedited basis. And, even after pre-authorization was approved on March 7, 2019, ▮ was not completed until eight days later. (Compl. ¶ 9.)

The only factual allegation that addresses causation is the suggestion that Plaintiff was told by a physician, ▮▮▮ (Compl. ¶ 12.) Yet, there is no further description of the date, or context, of that supposed comment. In any circumstance, this vague characterization of a treating physician's



16

alleged hearsay statement is insufficient to "nudge[]" Plaintiffs' negligence claim "over the line from possible to plausible." *Jiminez v. United States*, No. 11 Civ. 4593, 2013 WL 1455267, at *6 (S.D.N.Y. Mar. 25, 2013) (bald allegations of pain and suffering "as a result of . . . delay in treating injuries" were insufficient to not support plausible inference of causation in malpractice case).

For all of the foregoing reasons, Plaintiffs' negligence claim should be dismissed.

## II.     PLAINTIFFS' MALPRACTICE CLAIM SHOULD BE DISMISSED (COUNT 2).

Medical malpractice is a type of professional negligence claim, involving the same basic elements of (1) duty, (2) breach, (3) causation, and (4) damages.  As such, Plaintiffs' malpractice claim should fail for the same reasons as their claim for ordinary negligence.  Moreover, the Complaint lacks several other requirements that are specific to a medical malpractice claim.  First, there are no plausible allegations of a physician-patient relationship; and second, eviCore's utilization review does not constitute the practice of medicine.

Under New York law, a claim for medical malpractice may only be based on conduct that "constitute[s] medical treatment or bear[s] a substantial relationship to the rendition of medical treatment." *Karasek v. LaJoie*, 92 N.Y.2d 171, 175 (1998).  Therefore, to state a viable cause of action, the duty owed to the plaintiff must arise from a physician-patient relationship or be substantially related to medical treatment by a licensed physician.  *Mejia v. Davis*, No. 1:16-cv-9706, 2018 WL 333829, at *10 (S.D.N.Y. Jan. 8, 2018); *see also Jones v. Beth Isr. Hosp.*, 2018 WL 1779344, at *9 (S.D.N.Y. Apr. 12, 2018) ("the critical question is the nature of the duty to the plaintiff which the defendant is alleged to have breached.").

### A.     Plaintiffs Fail to Plausibly Allege a Physician-Patient Relationship.

A claim for medical malpractice depends on the existence of a physician-patient relationship.  *See Mejia*, 2018 WL 333829, at *10.  "In the absence of such a relationship, there is

2868764.1 106782-103821

no legal duty and hence no basis for liability for medical malpractice." *Gedon v. Bryn-Lin Hosps., Inc.*, 730 N.Y.S.2d 641, 643 (App. Div. 2001).

Here, Plaintiffs' malpractice claim must fail, because there are no plausible allegations of an express or implied physician-patient relationship between Plaintiff and eviCore.  While the Complaint includes conclusory labels, such as "the medical care of eviCore," and "the practice of medicine" (Compl. ¶¶ 73, 80), there are no facts pled to support such an inference.  *See Jiminez*, 2013 WL 1455267, at *3 (plaintiff "must assert specific allegations that amount to more than mere labels or conclusions or formulaic recitation of the elements of a cause of action").

As discussed in regards to the negligence claim, eviCore's review of a pre-authorization request, at the sole request of GHI, does not create a physician-patient relationship under New York law.  No one from eviCore or GHI ever examined or treated Plaintiff.  The Complaint contains no instance of eviCore providing "medical advice" to Plaintiff nor any instance of Plaintiff relying on anything eviCore said.  *See, e.g.*, *LoDico v. Caputi*, 517 N.Y.S.2d at 641 (examination at request of insurer did not create physician-patient relationship); *Violandi*, 584 N.Y.S.2d at 843-44 (no physician-patient relationship where plaintiff did not rely on recommendation by employer-retained physician); *Mejia*, 2018 WL 333829, at *10 (no physician-patient relationship where medical services "were not *accepted* by Plaintiff").

**B.    eviCore's Utilization Review Did Not Constitute the Practice of Medicine.**

Plaintiffs' malpractice claim should also fail, because eviCore's utilization review did not "bear a substantial relationship to the rendition of medical treatment," nor did it constitute the practice of medicine.  *Karasek*, 92 N.Y.2d at 175.  New York law defines the "practice of medicine" as "diagnosing, treating, operating or prescribing for any human disease, pain, injury, deformity or physical condition."  N.Y. Educ Law § 6521.  By its plain terms, this definition contemplates the direct diagnosis of medical conditions, or rendering direct medical treatment to

a patient.  eviCore did neither.  *See Scozzaro v. Matarasso*, No. 800125/10, 2013 WL 7018187, at

\*5 (N.Y. Sup. Ct. Nov. 8, 2013) ("Claiming that someone is a good candidate for a treatment and

referring the individual to a doctor is not the same as diagnosis or treatment" under Section 6521.).

New York also defines "utilization review" as "review to determine whether health care

services . . . are medically necessary."  N.Y. CLS Insurance Law § 4900(h).  It is regulated under

Article 49 of the New York Insurance Law, *id.* §§ 4900-4908, and involves the application of pre-

established criteria to determine if a requested treatment is medically necessary, and therefore,

covered by health insurance, *see, e.g.*, *id.* § 4900(j) (defining "utilization review plan"); § 4902

(defining "utilization review program standards").  The law makes clear that determinations of

medical necessity constitute *coverage* determinations, and not the practice of medicine.  *See id.* §

4900(h)(4) (utilization review does not include "[a]ny determination of any *coverage issues other*

*than* whether health care services are or were medically necessary").

Here, there are no plausible factual allegations to support an inference that eviCore engaged

in the practice of medicine, or any other conduct that could support a malpractice claim.  While

the Complaint uses conclusory labels such as "overrul[ing] the judgment" of Plaintiff's physician

(Compl. ¶ 67), both the Complaint and the New York Insurance Law make clear that eviCore was

only engaged in Utilization Review.  (*See, e.g.*, *id.* ¶¶ 30, 32, 80.)  Moreover, the limited

correspondence from eviCore to Plaintiff and her doctor, as referenced in the Complaint,

conclusively demonstrates that eviCore made coverage determinations only.  (Wohlforth Cert.,

Exs. B, D, and F.)  Indeed, contrary to Plaintiffs' characterization, the "Initial Adverse

Determination" letter from eviCore did not *recommend* a course of medical treatment, but rather,

it set forth the reasons for its denial as required by law.  (Wohlforth Cert., Ex. D; Compl. ¶¶ 32-

33.)  *See* N.Y. CLS Insurance Law § 4903(e) (written adverse determination notices must include

19

"reasons for the determination including the clinical rational"); *cf. Aetna Health, Inc. v. Davila*, 542 U.S. 200, 205, 219-20 (2004) (under ERISA, denial of coverage is "benefits determination," regardless of medical judgments involved).

In any event, the New York Court of Appeals has held that the scope of conduct that can give rise to a malpractice claim is *narrower* than the definition of "practice of medicine." *Karasek*, 92 N.Y.2d at 175. More specifically, the conduct must constitute an "integral part of the process of rendering medical *treatment* to a patient." *Scott v. Uljanov*, 74 N.Y.2d 673, 675 (1989). Plaintiffs' factual allegations plainly fail to satisfy this standard. Accordingly, for the foregoing reasons, Plaintiffs' claim for medical malpractice (Count 2) should be dismissed.

## III. PLAINTIFFS' CLAIM FOR *PRIMA FACIE* TORT SHOULD BE DISMISSED (COUNT 3).

"*Prima facie* tort is a 'cause of action that is highly disfavored in New York.'" *Daniels v. Provident Life Ins. & Cas. Ins. Co.*, No. 00-CV-0668, 2001 WL 877329, at *5 (W.D.N.Y. July 25, 2001) (citation omitted). It is "designed to provide a remedy for intentional and malicious actions that cause harm and for which no traditional tort provides a remedy," but it "may not be used as a catch-all alternative for every cause of action which cannot stand on its own legs." *Id.* at *19 (quoting *Curiano v. Suozzi*, 63 N.Y.2d 113 (1984)).

The required elements for a claim of *prima facie* tort are: "(1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful." *Id.* The plaintiff must also "allege that the defendant's actions were motivated solely by 'disinterested malevolence'; if the defendant has 'other motives, such as profit, self-interest, or business advantage, then plaintiff's claim will fail." *Daniels*, 2001 WL 877329, at *5 (internal citations omitted).

20

Here, Plaintiffs' claim fails because the Complaint merely sets forth a conclusory and "formulaic recitation of the elements." *Twombly*, 550 U.S. at 555.  No factual allegations support a plausible inference of an "intentional infliction of harm" to Plaintiff, or that Defendants acted "with 'disinterested malevolence.'"  *See, e.g.*, *Bear, Stearns Funding, Inc. v. Interface Grp.*, 361 F. Supp. 2d 283, 307 (S.D.N.Y. 2005) (any economic motive defeats cause of action).  Likewise, Plaintiffs fail to allege special damages "with sufficient particularity," as the Complaint only makes a general demand for unspecified damages "to be determined at trial, but not less than $1,000,000 plus interest."  (Compl. ¶ 122.)  *See Daniels*, 2001 WL 877329, at *6 (demand for "unitemized round sum" fails to sufficiently allege special damages).  Accordingly, Plaintiffs' *prima facie* tort claim should be dismissed.

## IV.   PLAINTIFFS' FRAUD CLAIMS SHOULD BE DISMISSED (COUNTS 9 & 10).

In Counts 9 and 10, Plaintiffs assert claims for fraud, and conspiracy to commit fraud.  Both claims should be dismissed for failure to state a claim, and for failure to satisfy the particularity requirements of Fed. R. Civ. P. 9(b).

Under Rule 9(b), Plaintiffs' fraud-based claims must be pled "with particularity."  To satisfy this standard, allegations of fraud must: "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996).  "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."  *State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d 221, 228 (E.D.N.Y. 2008).  Speculative and conclusory allegations of fraud must be dismissed under Rule 9(b).  *See id.*; *Inn Chu Trading Co. v. Sara Lee Corp.*, 810 F. Supp. 501, 507 (S.D.N.Y. 1992) ("Mere suspicions that a fraud may have occurred are not sufficient.").

21

### A.      Plaintiffs Fail to State a Claim for Common Law Fraud.

To state a claim for common law fraud under New York law, a plaintiff must allege: "(1) a misrepresentation or a material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon is, (3) justifiable reliance of the other party on the misrepresentation or material omission, and (4) injury." *Employees' Ret. Sys. v. Morgan Stanley & Co.*, 814 F. Supp. 2d 344, 351 (S.D.N.Y. 2011).  Here, Plaintiffs fail to adequately allege fraudulent conduct, intent, or reliance.

As a threshold matter, Plaintiffs' fraud allegations are vague and conclusory, lacking the "who, what, when and where" that Rule 9(b) requires.  (*See, e.g.*, Compl. ¶ 58 (alleging, "[u]pon information and belief," a "deliberate and calculated effort to . . . deny[] necessary medical treatment"); ¶ 136 (alleging that "false statements were a willful, purposeful attempt to induce [Plaintiff's] reliance").)  Plaintiffs fail to identify any statement by eviCore that was false, let alone fraudulent; if and when it was made to Plaintiff; or how it induced her detrimental reliance.

First, Plaintiffs quote several statements from eviCore's website, describing "utilization management for ▉▉▉▉▉▉▉▉▉▉▉▉."  (Compl. ¶ 52.)  The Complaint does not allege how these statements are false, but merely concludes that they "*appear* designed to mislead patients *such as [Plaintiff]*."  (*Id.* ¶ 53.)  Moreover, the Complaint does not indicate if, or when, Plaintiff actually read such statements, nor whether she took any action in reliance on them.  As such, eviCore's website cannot provide the basis for a fraud cause of action.  *See Employees' Ret. Sys.*, 814 F. Supp. 2d at 353 ("To be liable for fraud under New York law, the defendant must actually make a materially false statement to the plaintiff.").

Second, Plaintiffs make a general claim that Defendants made "misstatements . . . when they stated they would cover diagnostic services such as ▉▉▉▉ and conduct utilization Reviews in

22

a prescribed manner." (Compl. ¶ 131.) Again, however, no allegations identify any specific statement; who made it; how it is false; or if it was even made to Plaintiff.

Third, Plaintiffs cite a letter from the Minnesota Hospital Association, which purportedly describes instances when eviCore denied authorizations for coverage, when performing utilization review for "Blue Cross Blue Shield of Minnesota." (Compl. ¶¶ 55-57.) These allegations have no relevance to Plaintiffs' fraud claim, because (1) they do not identify any false statement, let alone one made to Plaintiff; (2) they concern a different health plan, in a different state; and (3) they provides no support Plaintiffs' conclusory allegation of purported efforts, between "[t]he GHI defendants," to deny covered benefits to members. *See Head v. Emblem Health*, 64 N.Y.S.3d 518 (report of Attorney General investigation, detailing other instances of alleged misconduct, did not establish fraud); *id.* (citing *New York Univ.*, 87 N.Y.2d 308) ("Plaintiff's allegation that defendants entered into the insurance contract with an undisclosed intention not to perform in accordance with the contract's terms is insufficient to establish a misrepresentation or a material omission.").

Finally, the Complaint does not establish how the initial denial of Plaintiff's pre-authorization request reflected a false statement, or that it was made with fraudulent intent. (*See* Compl. ¶¶ 135-137.) The determination letter, itself, demonstrates that eviCore's determination was based on the documentation submitted in support of the initial pre-authorization request. After Plaintiff's physician appealed the determination, and submitted additional records showing details about Plaintiff's prior course of treatment, the denial was reversed. These facts strongly rebut Plaintiffs' conclusory assertions of fraudulent intent. (*See* Wohlforth Cert., Exs. D & F.)

In any event, Plaintiff's theory of the case is fundamentally at odds with any claim of reliance on a supposed misrepresentation of fact. Again, Plaintiff and her physician disputed eviCore's initial professional judgment as to medical necessity; appealed it; and won its reversal.

Plaintiff allegedly lacked insurance coverage pending the appeal, but she neither took nor omitted any act in reliance on a statement by eviCore.  *See Mikaelian v. Liberty Mut. Ins.*, 2016 WL 4702106, at *7 (E.D.N.Y. Sept. 6, 2016) (claim that plaintiff relied on alleged fraudulent investigation of insurance claim was "belie[d]" by fact that plaintiff believed it was inaccurate and demanded second inspection); *Ross v. Gidwani*, 850 N.Y.S.2d 567, 568 (App. Div. 2008) (finding no reliance on alleged misrepresentation about content of autopsy authorization where plaintiff made further inquiry and autopsy was conducted as requested).

### B.   Conspiracy to Commit Fraud is Not a Viable Cause of Action.

"New York does not recognize civil conspiracy to commit a tort as an independent cause of action."  *McSpedon v. Levine*, 72 N.Y.S.3d 97, 101 (App. Div. 2018).  While a plaintiff "may plead the existence of a conspiracy to connect the actions of the individual defendants with an actionable, underlying tort,"[9] such a claim is dependent on the underlying tort cause of action.  *Id.*  Here, since Plaintiffs fail to state a viable claim for fraud, the claim alleging a "civil conspiracy to commit fraud" must also fail as a matter of law.  *See id.* (conspiracy claim "stands or falls with the underlying tort").  In any event, Plaintiffs fail to allege any facts that plausibly suggest a corrupt "scheme" or agreement, between the defendants, to engage in fraudulent conduct.  *See Egerique*, 2020 WL 1974228, at *24 (conclusory allegation that defendant "knew or should have known" of another's fraud is insufficient to plead "a corrupt agreement").  Accordingly, for all of the foregoing reasons, Plaintiffs' fraud-based claims (Counts 9 and 10) should be dismissed.

---

[9]To plead a viable conspiracy, in addition to the underlying tort, a plaintiff must allege (1) an agreement among two or more parties, (2) a common objective, (3) acts in furtherance of the objective, and (4) knowledge.  *Egerique v. Chowaiki*, No. 19 CIV. 3110, 2020 WL 1974228, at *24 (S.D.N.Y. Apr. 24, 2020).

2868764.1 106782-103821

## V.   PLAINTIFFS' CLAIM FOR "BAD FAITH" AND PUNITIVE DAMAGES SHOULD BE DISMISSED (COUNT 5).

New York law does not recognize an independent cause of action for punitive damages. Rather, a "punitive damages claim is derivative," with "no viability absent its attachment to a substantive cause of action." *Dunham v. Vodidien, LP*, 2020 WL 5995102, at \*11 (S.D.N.Y. Oct. 9, 2020).  Because all of Plaintiffs' other claims against eviCore are insufficiently pled, then their punitive damages claim must also fail as a matter of law.

If Plaintiffs purport to assert a "bad faith" claim against eviCore, it fails for several reasons. First, "there is no separate cause of action in tort for an insurer's bad faith failure to perform its obligations under an insurance contract." *Zawahir v. Berkshire Life Ins. Co.*, 804 N.Y.S.2d 405, 406 (App. Div. 2005).  Second, Plaintiffs lack contractual privity with eviCore, and cannot maintain a contract-based cause of action.  *See Hamlet at Willow Cr. Dev. Co., LLC v. Northeast Land Dev. Corp.*, 878 N.Y.S.2d 97, 111 (App. Div. 2009).  Third, because Count 5 asserts no new factual allegations or theories, it is duplicative of Plaintiffs' other tort claims, all of which fail.

## VI.   PLAINTIFFS' REMAINING DERIVATIVE CLAIMS SHOULD BE DISMISSED (COUNTS 7 & 8).

Plaintiffs' claims for loss of services (Count 7), and loss of guidance to a minor child (Count 8), are both derivative claims that cannot exist independent of the related primary causes of action.  Accordingly, because all of Plaintiff's substantive claims fail, then the family members' derivative claims for loss of service and loss of guidance must also be dismissed as a matter of law.  *See Nealy v. U.S. Surgical Corp.*, 587 F. Supp. 2d 579, 585 (S.D.N.Y. 2008).

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs have failed to allege any viable cause of action against eviCore.  Accordingly, eviCore respectfully requests that this Court dismiss the Complaint, in its entirety, with prejudice.

Dated: December 16, 2020

By: _E. Evans Wohlforth, Jr._
E. Evans Wohlforth, Jr.
Charlotte M. Howells
Gibbons P.C.
One Gateway Center
Newark, NJ 07102
Tel: (973) 596-4500
Fax: (973) 596-4545

Benjamin A. Post*
Joshua T. Calo**
Post & Post LLC
200 Berwyn Park, Suite 102
920 Cassatt Rd.
Berwyn, PA 19312
Telephone: (610) 240-9180
Fax: (610) 240-9185
*admitted pro hac vice
** admission for pro hac vice pending

*Attorneys for Defendant CareCore National
LLC d/b/a eviCore*

2868764.1 106782-103821