

E. Evans Wohlforth
Director

Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
Direct: 973-596-4879 Fax: 973-639-6486
ewohlforth@gibbonslaw.com

February 19, 2021

**VIA ECF & E-MAIL (CronanNYSDChambers@nysd.uscourts.gov)**
Hon. John P. Cronan, U.S.D.J.
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   **Valentini v. Group Health Incorporated, et al., No. 1:20-cv-09526**

Your Honor:

This firm in association with the firm of Post & Post, LLC represents Defendants, CareCore National LLC d/b/a eviCore ("eviCore"), Group Health Incorporated ("GHI") and Emblem Health, Inc. ("Emblem") (collectively, "Defendants"), in the above action.  In accordance with Your Honor's February 10, 2021 Order (ECF No. 51), Defendants submit this Reply in further support of their Letter Motion to stay discovery pending the Court's ruling on Defendants' dispositive motions to dismiss (ECF No. 50), and in response to Plaintiffs' Opposition Letter (ECF No. 55).

Plaintiffs misstate the legal standards applied in this District.  A dispositive motion to dismiss may establish "good cause" to stay discovery if it presents "substantial arguments" for dismissal.  *Al Thani v. Hanke*, 2021 WL 23312, at *1 (S.D.N.Y. Jan. 4, 2021).  Plaintiffs cannot articulate how any precedent supports their novel tort claims, or recoverable contract damages.  Nonetheless, Plaintiffs admit their intention to pursue broad areas of discovery that far exceed "a single individual['s]" insurance claim.  (Pls' Opp. at 2 ("[P]laintiffs will seek discovery concerning other instances where Defendants engaged in similar misconduct.").)  Because Defendants' Motions to Dismiss "may significantly narrow, if not eliminate, the issues remaining in the case," a stay is warranted to avoid burdensome and potentially unnecessary discovery.  *Rivera v. Heyman*, 1997 WL 86394, at *1 (S.D.N.Y. Feb. 27, 1997).

1.  **Plaintiffs' Opposition Letter.**

Unable to rebut the merits of Defendants' request for a stay, Plaintiffs accuse Defendants' counsel of "rushing to court" to "hide" the facts of this case, acting in bad faith with respect to the meet-and-confer process and with respect to filing confidential documents, and mis-using settlement communications.  (Pls' Opp. at 1.)  This is not the first time Plaintiffs have mischaracterized the meet-and-confer process.  Defendants were compelled to file a detailed rebuttal of similar accusations in connection with their motion to seal certain documents.  (ECF 39.)

We decline to engage further with Plaintiffs' tactic.  As with the prior instance, the accusations are simply false.  Defendants have conferred in good faith and the only documents we have sought to seal are Plaintiff Valentini's own medical records.

The supposed settlement communication Plaintiffs reference was in fact a pre-suit demand letter addressed to Emblem's CEO and by no stretch a settlement communication.  Even if it were, F.R.E. 408 expressly permits the use of settlement communications for purposes other than to show "the validity or amount of a disputed claim" or to impeach.  Fed. R. Evid. 408(b).  Here it is

Hon. John P. Cronan, U.S.D.J.
February 19, 2021
Page 2

cited to show Plaintiffs' intended scope of discovery, in connection with a motion to stay discovery. (*See* Defs' Ltr. Mot. at 3.) In any event, Plaintiffs' Opposition merely confirms the point for which it was cited—Plaintiffs' intention to pursue broad areas of discovery based on hollow claims of a purported "fraudulent scheme." (Pls' Opp., at 3.)

### 2. Plaintiffs Fail to Rebut Defendants' Showing of Good Cause.

Defendants have established that all three relevant factors heavily favor a stay of discovery. Plaintiffs' responses are unavailing, and inconsistent with the standards applied in this District.

*First*, regarding the strength of Defendants' Motions to Dismiss, Plaintiffs maintain that "[t]here is nothing 'novel'" about their negligence causes of action. However, Plaintiffs have yet to articulate how any precedent supports the creation of a tort law duty in this context. Plaintiffs continue to tout language from *Cicio v. Does*, 321 F.3d 83 (2d Cir. 2003), notwithstanding that it does not address state tort law and was subsequently overturned.[1] Indeed, the Second Circuit specifically disclaimed any holding on whether the facts alleged there implicated the medical malpractice tort. *Id*. at 92 ("We do not, however, draw any conclusion about the availability of a malpractice claim in these circumstances under New York law . . ."). Likewise, Plaintiffs cite cases addressing a doctor's duties to patients, but ignore the lack of a physician-patient relationship here. On their contract claims, Plaintiffs dismiss Defendants' argument that "plaintiffs cannot establish recoverable contract damages" as a "throw-away statement." Yet, while Plaintiffs now claim they are seeking restitution for premiums paid (ECF No. 43, at 39), such a remedy has only been permitted for *nonreceipt* (not merely delay) of promised healthcare--an essential element that is lacking here. *Batas v. Prudential Ins. Co. of Am.*, 281 A.D.2d 260, 261 (N.Y. App. Div. 2001).

Plaintiffs' purported high bar for the merits of a motion to dismiss has no support in the law. Courts in this District focus their analysis on whether a motion appears "well-founded in the law," "is not frivolous," and has sufficient potential to dispose of or "significantly narrow" the issues in a case. *Orlando v. Nxt-ID Inc.*, 2020 U.S. Dist. LEXIS 191353, at *4 (S.D.N.Y. Oct. 15, 2020). Similarly, numerous Courts have articulated the applicable standard, as follows: "a stay of discovery is appropriate pending resolution of a *potentially* dispositive motion where the motion *appears* to have substantial grounds or, stated another way, *does not appear to be without foundation in law*." *In re Currency Conversion Fee Antitrust Litig.*, 2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002) (emphasis added).

In a case actually cited by Plaintiffs (Pls' Opp. at 3), Judge Leisure granted a stay pending a 12(b)(6) motion, noting that the motion raised "substantial arguments." *Spencer Trask Software & Sys., LLC v. RPost Int'l, Inc.,* 206 F.R.D. 367, 368 (S.D.N.Y. 2002). In the Motions to Dismiss, Defendants point out that Plaintiffs' novel tort claims and contract damages theories would work a significant expansion of liability in New York, have never been upheld or addressed by a court in New York and find no support in the law of any other jurisdiction. As Judge Leisure found in *Spencer*, this Court need not predict whether the motion would prevail. *Id.* ("Court cannot attempt

---

[1] Plaintiffs continuously imply that *Cicio* remains precedential as to an unidentified, non-ERISA, issue that is relevant to the case—including their incorrect citation to *Cicio* as being "*rev'd on other grounds*." (Pls' Opp., at 2.) It is not. *Cicio*'s only substantive holding was that ERISA would not preempt a state law malpractice claim, *if one exists*, on the facts alleged in that case. *Cicio*, 321 F.3d at 100-105. Plaintiffs rely on language that was merely part of the Court's ERISA analysis, and that holding was vacated by the Supreme Court and then reversed by the Second Circuit.

Hon. John P. Cronan, U.S.D.J.
February 19, 2021
Page 3

to predict the outcome of the motion to dismiss"). Defendants' arguments here are undeniably "substantial" and this prong of the test is easily satisfied.

*Second*, Plaintiffs' position on the burdens and breadth of discovery is circular and contradictory. On the one hand, they claim discovery will not be wide-ranging, complex or expensive because the case only concerns "inappropriate medical advice to *a single individual* over a 42 day period," while they admit their intention to "seek discovery concerning *other instances* where Defendants engaged in similar misconduct"—*i.e.*, a fishing expedition for discovery concerning non-party plan members. This discovery would not only implicate an unbridled scope of data, it would require onerous procedures to safeguard non-parties' protected health information. Significantly, Plaintiffs' Opposition makes no effort to defend the merits of their fraud or conspiracy claims, which provide the only justification for such complex and burdensome areas of discovery.[2]

*Third*, Plaintiffs' opposition confirms that no cognizable prejudice would result from a brief stay of discovery. Plaintiffs do not suggest that a stay would impact their substantive rights, or the ability to obtain evidence relevant to any claims that survive. As such, Defendants' interest in avoiding potentially unnecessary and burdensome discovery far outweighs Plaintiffs' desire for a prompt investigation. *See Al Thani*, 2021 WL 23312, at *2; *Rivera*, 1997 WL 86394, at *1.

Finally, during the Initial Pre-Trial Conference, suggestions were raised about the possibility of bifurcating discovery, to allow it to proceed in relation to the narrower medical malpractice and negligence claims. Defendants respectfully maintain their position that a full stay of discovery is warranted. As Plaintiffs' Counsel acknowledged, this case involves issues of first impression under New York law, and the viability of Plaintiffs' tort claims is far from certain. Proceeding with discovery now would be truly premature, – any such discovery would be irrelevant to the Court's resolution of the purely legal questions raised by the Motions to Dismiss. Indeed, the core premise underlying the Supreme Court's holdings in *Twombly* and *Iqbal* is that the purpose of a 12(b)(6) motion is to prevent tenuous claims from "unlock[ing] the doors of discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also id.* at 684-85 ("[T]he question presented by a motion to dismiss a complaint for insufficient pleadings does not turn on the controls placed upon the discovery process.").

Respectfully,

*s/ E. Evans Wohlforth, Jr.*

E. Evans Wohlforth, Jr.

cc: Steve Cohen, Esq. (via e-mail)
    Jordan K. Merson, Esq. (via e-mail)

---

[2] The argument that out-of-state witnesses can be deposed remotely is also misplaced. The difficulty of coordinating depositions of non-party medical witnesses is exacerbated by the global pandemic, regardless of *where* it occurs. Such discovery also imposes significant burdens on the medical witnesses, which may ultimately be unnecessary if Defendants' Motions to Dismiss are granted. *Cf. DeVine v. XPO Logistics Freight*, 446 F. Supp. 3d 332 (N.D. Ill. 2020) (imposing protocols restricting medical provider subpoenas and depositions during COVID-19 pandemic).