UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHLEEN VALENTINI, VALERIO VALENTINI, and VALERIO VALENTINI on behalf of his minor son M.V.,<br><br>                    Plaintiff.<br>    -against-<br><br>GROUP HEALTH INCORPORATED, EMBLEM HEALTH, INC., CARECORE NATIONAL LLC d/b/a EVICORE, and JOHN DOES 1 AND 2,<br><br>                    Defendants. | Civil Action No. 20-9526 (JPC)<br><br>ORAL ARGUMENT REQUESTED<br><br>Document Electronically Filed |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>DEFENDANT EMBLEM HEALTH, INC.'S MOTION TO DISMISS THE COMPLAINT</u>**

E. Evans Wohlforth, Jr.
Charlotte M. Howells
Gibbons P.C.
One Gateway Center
Newark, NJ 07102
Tel: (973) 596-4500
Fax: (973) 596-4545

Benjamin A. Post*
Joshua T. Calo*
Post & Post LLC
200 Berwyn Park, Suite 102
920 Cassatt Rd.
Berwyn, PA 19312
Telephone: (610) 240-9180
Fax: (610) 240-9185
*admitted pro hac vice*

*Attorneys for Defendants Group Health
Incorporated, Emblem Health, Inc., and
CareCore National LLC d/b/a eviCore*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT ..................................................................................................................................... 2

I. NEW YORK LAW DOES NOT SUPPORT THE RECOGNITION OF TORT LAW DUTIES OF CARE. ................................................................................................... 2

    A.    Plaintiffs' Cases Confirm That A Duty Must Be Predicated On A Doctor-Patient Relationship, Which Is Absent Here. ........................................................... 2

    B.    Defendants Owed No Duty Independent Of Contractual Obligations. .................... 5

    C.    Plaintiffs Fail to Distinguish or Discredit *Skelcy v. UnitedHealth Group*. ............. 8

II. PRE-AUTHORIZATION REVIEW IS SPECIFICALLY ADDRESSED BY THE INSURANCE POLICY. ............................................................................................. 9

III. PLAINTIFFS FAIL TO ALLEGE ANY VIABLE CAUSE OF ACTION AGAINST EMBLEM. ........................................................................................................ 9

CONCLUSION .................................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Batas v. Prudential Ins. Co. of Am.*,
    281 A.D.2d 260 (N.Y. App. Div. 2001) ................................................................................2, 6

*Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*,
    692 F.3d 42 (2d Cir. 2012)........................................................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................................10

*Cicio v. Does*,
    321 F.3d 83 (2d Cir. 2003), *vacated sub nom.*, *Vytra Healthcare v. Cicio*,
    542U.S. 933 (2004), *aff'd in part and rev'd in part on remand*, *Cicio v. Does
    1-8*, 385 F.3d 156 (2d Cir. 2004 (per curium) .........................................................................1

*Davis v. S. Nassau Cmtys. Hosp.*,
    26 N.Y.3d 563 (2015) ...............................................................................................1, 2, 4, 5

*Dormitory Auth. of State of N.Y. v. Samson Constr. Co.*,
    30 N.Y.3d 704 (2018) ...............................................................................................................7

*Eisman v. State*,
    70 N.Y.2d 175 (1987) ...........................................................................................................2, 3

*Hydro Investors, Inc. v. Trafalgar Power, Inc.*,
    227 F.3d 8 (2d Cir. 2000)..........................................................................................................7

*Klein v. Empire Blue Cross & Blue Shield*,
    173 A.D.2d 1006 (N.Y. App. Div. 1991) .................................................................................6

*Leon's Bakery, Inc. v. Grinnell Corp.*,
    990 F.2d 44 (2d Cir. 1993)........................................................................................................8

*Logan v. Empire Blue Cross & Blue Shield*,
    275 A.D.2d 187 (N.Y. App. Div. 2000) ................................................................................6, 7

*McNulty v. City of New York*,
    100 N.Y.2d 227 (2003) ....................................................................................................2, 3, 4

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
    379 F. Supp. 2d 348 (S.D.N.Y. 2005)........................................................................................8

*New York University v. Continental Insurance Company*,
    87 N.Y.2d 308 (1995) ...............................................................................................................6

*Purdy v. Public Adm'r of Cty. of Westchester*,
   72 N.Y.2d 1 (1988) .................................................................................................................4

*Skelcy v. UnitedHealth Group, Inc.*,
   620 Fed. App'x 136 (3d Cir. 2015) ....................................................................................8, 9

*Sommer v. Federal Signal Corporation*,
   79 N.Y.2d 540 (1992) ....................................................................................................5, 6, 7

*Tenuto v. Lederle Lab.*,
   90 N.Y.2d 606 (1997) .............................................................................................................3

*Violandi v. New York*,
   184 A.D.2d 364 (N.Y. App. Div. 1992) ................................................................................4

**Statutes**

N.Y. CLS Insurance Law § 4903(b)(1) .........................................................................................7

Defendant, Emblem Health, Inc. ("Emblem"), respectfully submits this Reply Memorandum of Law in further support of its Motion to Dismiss the Complaint (ECF Nos. 60-62), and in response to Plaintiffs' Memorandum of Law in Opposition to Emblem's Motion to Dismiss (ECF No. 65) (hereinafter "Plaintiffs' Opposition").

## PRELIMINARY STATEMENT

Recognizing the flaws in their earlier arguments, Plaintiffs now attempt to change course. In no less than three prior filings, Plaintiffs extensively touted *Cicio v. Does*[1] as directly supporting the recognition of a duty of care in the context of insurance utilization review. (ECF No. 11 at 1-2; ECF No. 43 at 11, 13, 20, 23, 26-27, 32; ECF No. 55 at 2.) But, confronted with this Court's most recent Opinion,[2] Plaintiffs finally acknowledge that the Second Circuit, in *Cicio*, "never ruled on the question of whether there was medical malpractice" (Pls' Opp., at 14); and that the issues presented in the present case involve "an area of first impression" (*id.* at 6).

In their Opposition to Emblem's Motion to Dismiss, Plaintiffs advance new—but equally flawed—arguments. Now, for instance, Plaintiffs rely on inapposite precedent addressing the circumstances when a treating physician's duty of care may extend to foreseeable third-parties (*id.* at 6-9), while ignoring the fact that any such duty must be predicated on a doctor-patient relationship. *See Davis v. S. Nassau Cmtys. Hosp.*, 26 N.Y.3d 563, 575 (2015). Likewise, while Plaintiffs try to analogize cases that found a "legal duty *independent of contractual obligations*" (Pls' Opp., at 9-14), New York courts have repeatedly *rejected* tort claims arising from the

---

[1] 321 F.3d 83 (2d Cir. 2003), *vacated sub nom.*, *Vytra Healthcare v. Cicio*, 542 U.S. 933 (2004), *aff'd in part and rev'd in part on remand*, *Cicio v. Does 1-8*, 385 F.3d 156 (2d Cir. 2004 (per curiam).

[2] *See* ECF No. 59, Order Granting Letter Motion to Stay Discovery, at 2 ("[A]s even Plaintiffs recognize, Plaintiffs' tort claims concern unsettled areas of New York law."); *id.* at 2-3 ("And while Plaintiffs make much of the Second Circuit's decision in *Cicio v. Does* in opposing both the Motions to Dismiss and the letter-motion seeking a stay, that case is by no means conclusive.").

performance of obligations under an insurance contract.  *See, e.g.*, *Batas v. Prudential Ins. Co. of Am.*, 281 A.D.2d 260, 264 (N.Y. App. Div. 2001).

What remains clear is that Plaintiffs' negligence and medical malpractice claims are novel. As it exists now, New York law does not support the recognition of a tort law duty of care in the context of insurance utilization review.  To impose such a duty here, as Plaintiffs urge, would substantially expand the scope of tort liability in New York, while eviscerating the existing lines between contract law and tort law.  This is not the role of a federal court sitting in diversity.

## ARGUMENT

### I. NEW YORK LAW DOES NOT SUPPORT THE RECOGNITION OF TORT LAW DUTIES OF CARE.

#### A. Plaintiffs' Cases Confirm That A Duty Must Be Predicated On A Doctor-Patient Relationship, Which Is Absent Here.

In response to Emblem's Motion to Dismiss, Plaintiffs first argue that their tort claims are supported by "[r]ecent decisions from the New York Court of Appeals."  (Pls' Opp., at 7.)  To that end, Plaintiffs rely on *Davis v. South Nassau Communities Hospital*, 26 N.Y.3d 563 (2015), and *Eisman v. State*, 70 N.Y.2d 175 (1987), both of which address a discrete issue concerning the scope of a physician's potential duties to prevent foreseeable harm to nonpatients.  These decisions undermine rather than support Plaintiffs' position.

*First*, *Davis* and *Eisman* conclusively establish that, in the case of physicians, a doctor-patient relationship is required to establish a legal duty of care.  Although the New York Court of Appeals has recognized limited circumstances when a physician's duty of care *to a patient* may be "*expanded* . . . to include a third party," any such duty must arise from a doctor's treatment relationship with his or her patient.  *Davis*, 26 N.Y.3d at 575 (emphasis added) (citing *McNulty v. City of New York*, 100 N.Y.2d 227, 233 (2003)).

2

*Eisman* was the first in this line of cases.  It involved an ex-felon who was released from prison and accepted into a special State college program for the disadvantaged, based in part on a physical exam and health report completed by a prison physician.  *See Eisman*, 70 N.Y.2d at 180-81.  After his acceptance to the college, the ex-felon raped and murdered a fellow student.  The student's estate sought recovery on grounds that the prison physician negligently failed to ascertain and disclose the ex-felon's psychiatric history, which "misled the College regarding [his] stability." *Id.* at 185.  Under those circumstances, the New York Court of Appeals held that the physician's duty of care did *not* extend to individual students of the college, stating:

> In completing this particular report, the physician plainly owed a duty of care to his patient and to persons he knew or reasonably should have known were relying on him for this service to his patient. . . . Any duty the physician might have had to inform the College of [the ex-felon's] medical history, in connection with offering him health care, thus did not extend to members of the College community individually.

*Id.* at 188.

After *Eisman*, the Court of Appeals recognized narrow circumstances when a doctor's duty of care can "encompass nonpatients who have a special relationship with either the physician or the patient." *McNulty*, 100 N.Y.2d at 233; *see, e.g.*, *Tenuto v. Lederle Lab.*, 90 N.Y.2d 606 (1997) (pediatrician who vaccinated infant may owe duty to warn parents of their risk of contracting polio while tending to the child's basic needs).  However, in *McNulty v. City of New York*, 100 N.Y.2d 227 (2003), the Court expressly held that such a duty can only arise from a doctor's *treatment relationship with a patient*, regardless of any nonpatient's special relationship or reliance interest:

> Generally a doctor only owes a duty of care to his or her patient.  We have been reluctant to expand a doctor's duty of care to a patient to encompass nonpatients. . . . We have not, contrary to plaintiff's contention, found a duty where the doctor's performance of the medical service to the patient did not result in the harm complained of by the third person.  **In other words, since the duty that plaintiff seeks to extend is based on a doctor-patient relationship, the injury must have arisen from the doctor's treatment of the patient.**

3

*McNulty*, 100 N.Y.2d at 166 (emphasis added) (physician who treated patient for meningitis did not owe duty of care when asked if patient's friend may have been infected through close contact with the patient); *see also Purdy v. Public Adm'r of Cty. of Westchester*, 72 N.Y.2d 1, 9 (1988) (because nursing home doctor did not have "treating physician's relationship" with resident, he owed no duty to warn the resident that her medical condition impaired her ability to drive safely off premises).

*Davis* did not alter the requirement of an underlying doctor-patient relationship. Rather, in that case, the Court of Appeals concluded that a doctor who administers intoxicating medications may owe a duty of care to the general public—in addition to the patient—to warn the patient "that the drugs administered to her impair[] her ability to safely operate an automobile." *Davis*, 26 N.Y.3d at 577. In so holding, the Court emphasized that because "[i]t is already the function of a physician to advise the patient of the risks and possible side effects of prescribed medication[,] . . . we merely extend the scope of persons to whom the physician may be responsible for failing to fulfill that responsibility." *Id.* at 579.

Here, as previously explained, eviCore's utilization review did not involve any type of express or implied physician-patient relationship.[3] Plaintiffs cannot overcome the unbroken line of New York precedent, which holds that an examination conducted at the request of a third-party does not create a physician-patient relationship. Nor can Plaintiff establish the type of actual and detrimental reliance that is required to establish an implied physician-patient relationship. *See, e.g.*, *Violandi v. New York*, 184 A.D.2d 364 (N.Y. App. Div. 1992). Consequently, *Davis* and

---

[3] *See* ECF No. 18, Mem. of Law in Supp. of eviCore's Mot. to Dismiss (hereinafter "eviCore's Mem. of Law"), at 11-14, 17-18; ECF No. 49, Joint Reply Mem. of Law in Supp. of eviCore's and GHI's Mot. to Dismiss (hereinafter "eviCore's and GHI's Reply Mem. of Law"), at 6-7, 12-13.

*Eisman* merely confirm that, in the absence of a physician-patient relationship, New York law does not recognize a duty of care in these circumstances.

*Second*, Plaintiffs' reliance on *Davis* to extrapolate a generally applicable "test," for recognizing new duties of care, is misleading. In the quoted section of *Davis*, the Court—citing an excerpt from Prosser & Keeton on Torts—merely described certain "factors . . . [that] have been given conscious or unconscious weight" when courts impose new duties. *Davis*, 26 N.Y.3d at 576. Contrary to Plaintiffs' suggestion, the Court did not set forth a specific "framework" to be applied in future cases (Pls' Opp., at 6), nor has the referenced language been cited in any subsequent decision. The *Davis* Court's actual duty analysis focused on the unique justifications for expanding a particular duty to encompass the general public, while emphasizing that "our decision . . . should not be construed as an erosion of the prevailing principle that courts should proceed cautiously and carefully in recognizing a duty of care." *Id.* at 580.

### B. Defendants Owed No Duty Independent Of Contractual Obligations.

Defendants previously explained how Plaintiffs' claims arise from the performance of contractual obligations under an insurance contract, which does not give rise to an independent duty of care in tort.[4] Plaintiffs now acknowledge that tort liability must be premised on a legal duty that is "distinct from . . . contractual obligation[s]." (Pls' Opp., at 9.) Nevertheless, Plaintiffs argue that their claims satisfy the "test for tort liability," pursuant to *Sommer v. Federal Signal Corporation*, 79 N.Y.2d 540 (1992). (Pls' Opp., at 9-10.) As in their prior briefing, Plaintiffs' continued reliance on *Sommer* is misplaced, and inconsistent with subsequent New York precedent.

---

[4] eviCore's Mem. of Law, at 14-15; ECF No. 17, Mem. of Law in Supp. of GHI's Mot. to Dismiss (hereinafter "GHI's Mem. of Law"), at 12-15; eviCore's and GHI's Reply Mem. of Law, at 2-6.

5

*First*, New York appellate courts have uniformly refused to extend the reasoning of *Sommer* to insurance contracts. Plaintiffs insist that the payment of health insurance benefits is indistinguishable from the fire alarm services in *Sommer*, saying that both are "service[s] affected with a significant public interest." (Pls' Opp., at 10 (quoting *Sommer*, 79 N.Y.2d at 553).) But this reasoning was expressly rejected, by the New York Court of Appeals, in *New York University v. Continental Insurance Company*:

> To be sure, the provisions of the Insurance Law reflect State Policy that insurers must deal fairly with their insureds and the public at large. But governing the conduct of insurers and protecting the financial interests of insureds is simply not in the same league as the protection of the personal safety of citizens. **As compared to the fire-safety regulations cited in *Sommer*, the provisions of the Insurance Law are properly viewed as measures regulating the insurer's performance of its contractual obligations, as an adjunct to the contract, not as a legislative imposition of a separate duty of reasonable care.**

87 N.Y.2d 308, 317 (1995) (emphasis added) (internal citations omitted).

On this point, *New York University* is controlling. Plaintiffs cannot cite any precedent to support their position that *New York University* applies only to commercial insurance policies. To the contrary, the Appellate Division has reached the same conclusion in multiple cases involving a health insurer's determinations of "medical necessity." *Logan v. Empire Blue Cross & Blue Shield*, 275 A.D.2d 187, 192-93 (N.Y. App. Div. 2000) ("Empire did not owe the appellants a duty to perform its contractual obligations with reasonable care." (quoting *Klein v. Empire Blue Cross & Blue Shield*, 173 A.D.2d 1006, 1008 (N.Y. App. Div. 1991)); *Batas v. Prudential Ins. Co. of Am.*, 281 A.D.2d 260, 264 (N.Y. App. Div. 2001) (finding "no reason to depart from the general rule that the relationship between the parties to a contract of insurance is strictly contractual in nature"). Moreover, Plaintiffs' suggestion that determinations of "medical necessity" (*i.e.*, utilization review) go beyond the administration of contractual benefits is inconsistent with the insurance plan itself, as well as the New York Insurance Law. *See* ECF No. 19, Wohlforth Cert.,

6

Ex. A at 51 (defining terms for "preauthorization reviews"); N.Y. CLS Insurance Law § 4903(b)(1) (governing "utilization review determination involving health care services which require pre-authorization").

*Second*, Plaintiffs do not dispute the absence of an "abrupt, cataclysmic occurrence," analogous to the catastrophic fire in *Sommer*. (Pls' Opp., at 13.) While this one factor may not alone be dispositive, the timing and manner of Plaintiff's physical injuries further undermines the existence of a tort law cause of action. *See Logan*, 275 A.D.2d at 193 (holding that denial of health insurance benefits involved injuries "not typical of those arising from tort"); *Dormitory Auth. of State of N.Y. v. Samson Constr. Co.*, 30 N.Y.3d 704, 713 (2018) (noting that "even if any 'abrupt' or 'catastrophic' consequences either could have or did result from [defendant's] alleged negligence," plaintiff's negligence claim was properly dismissed as duplicative of the breach of contract action).

Plaintiffs' other citations address circumstances that are fundamentally different from a contract of insurance. For instance, professional malpractice claims, arising from the performance of service contracts, represent a quintessential example of professional duties that exist "irrespective of . . . contractual duties." *See Dormitory Auth. of State of N.Y.*, 30 N.Y.3d at 711 (citing *Sommer*, 79 N.Y.2d at 551). In other cases that Plaintiffs cite, the claims arose from conduct that was beyond the scope of the parties' contractual relationship. *See, e.g.*, *Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 17 (2d Cir. 2000) ("Although the parties may have entered into contracts governing some aspects of their relationship, the damages awarded below were for a harm distinct from those contracts[.]"); *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 59 (2d Cir. 2012) (finding duty arose from "independent characteristics of the relationship between [the parties]," extraneous to their contract).

Here, by contrast, the administration and payment of health insurance benefits, including determinations of medical necessity, is solely a function of contractual obligations.

### C. Plaintiffs Fail to Distinguish or Discredit *Skelcy v. UnitedHealth Group*.

Plaintiffs' efforts to discredit *Skelcy v. UnitedHealth Group, Inc.*, 620 Fed. App'x 136 (3d Cir. 2015) are unavailing. (Pls' Opp., at 15-16.) While *Skelcy* was decided under New Jersey law, its reasoning and outcome are fully compatible with New York precedent, as detailed throughout the Defendants' prior briefing.[5] Furthermore, Plaintiffs' comment, that the New York Court of Appeals would be unlikely to "defer[]" to a Third Circuit decision applying New Jersey law (Pls' Opp., at 15), is not relevant to the persuasive value of that decision. In resolving novel issue of state law, "a federal court is free to consider all of the resources to which the highest court of the state could look, including decisions in other jurisdictions on the same or analogous issues." *Leon's Bakery, Inc. v. Grinnell Corp.*, 990 F.2d 44, 48 (2d Cir. 1993). Given the factual similarities, and the reasoning that is consistent with New York precedent, *Skelcy* should be considered highly persuasive to the case at bar. *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp. 2d 348, 370 (S.D.N.Y. 2005) ("When considering judicial decisions, those with facts most analogous to the issues presented to the court have the most persuasive authority.").

Any factual distinctions, between this case and *Skelcy*, are immaterial. For example, Plaintiffs emphasize that the patient, in *Skelcy*, had "no interaction of *any kind* with [the reviewing doctor]." (Pls' Opp., at 15 (quoting *Skelcy*, 620 Fed. App'x at 144) (emphasis added).) But here, eviCore's only contact with Plaintiff was through letters sent to both Plaintiff and her doctor, concerning the doctor's request for pre-authorization of a radiology study. Under the Third

---

[5] *See* eviCore's Mem. of Law, at 10-15; GHI's Mem. of Law, at 14-15; eviCore's and GHI's Reply Mem. of Law, at 12-13.

Circuit's reasoning, these written communications are wholly insufficient to establish the type of "relationship of 'trust or reliance,'" that exists between a doctor and patient, that could give rise to a legal duty of care.  620 Fed. App'x at 144.

## II. PRE-AUTHORIZATION REVIEW IS SPECIFICALLY ADDRESSED BY THE INSURANCE POLICY.

Next, Plaintiffs advance an unfounded argument that "Defendants had no contractual or legal basis to require pre authorization."  (Pls' Opp., at 16-17.)  This assertion is simply wrong, and it is contradicted by Plaintiffs' own Complaint.  (ECF No. 1 at Ex. A, Compl. ¶ 46 ("The Certificate of Insurance also delineates the process that GHI would follow in conducting a 'Utilization Review' for pre-authorization of diagnostic procedures[.]").)

In their Opposition, Plaintiffs allege that the insurance policy "contains absolutely no reference to 'pre-authorization' or 'prior authorization' that might be required prior to an MRI."  (Pls' Opp., at 17.)  Yet, as just one example, the insurance policy states plainly that "GHI does not cover services unless they are medically necessary."  (ECF No. 19, Wohlforth Cert., Ex. A at 7.)  And, as the Complaint confirms, the policy also contains a detailed section addressing "Utilization Review & Appeals," including the process for pre-authorization reviews and appeals.  (Id. at 50-53.)

In any event, it is unclear what Plaintiffs are attempting to argue.  Plaintiffs cite no legal authority, nor do they reference any particular cause of action or any allegation in the Complaint.  Accordingly, this aspect of Plaintiffs' opposition should be disregarded.

## III. PLAINTIFFS FAIL TO ALLEGE ANY VIABLE CAUSE OF ACTION AGAINST EMBLEM.

Finally, as set forth in Emblem's opening Memorandum of Law, Plaintiffs fail to allege any independent conduct by Emblem, nor do they allege that Emblem had any direct contractual

9

relationship with Plaintiffs or eviCore. Thus, the claims against Emblem should be dismissed, even if any claims against eviCore or GHI survive.

In response, Plaintiffs fail to cite any paragraphs of the Complaint, or any legal authority. Rather, Plaintiffs simply claim that discovery will enable them to "sort out if there is any distinction between [GHI and Emblem]." (Pls' Opp., at 18.) This is not a viable basis to overcome a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560 (2007) ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process[.]").

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Emblem's opening Memorandum of Law, the Complaint should be dismissed in its entirety with prejudice.

Dated: May 6, 2021

By: *E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr.
Charlotte M. Howells
Gibbons P.C.
One Gateway Center
Newark, NJ 07102
Tel: (973) 596-4500
Fax: (973) 596-4545


Benjamin A. Post*
Joshua T. Calo*
Post & Post LLC
200 Berwyn Park, Suite 102
920 Cassatt Rd.
Berwyn, PA 19312
Telephone: (610) 240-9180
Fax: (610) 240-9185
*admitted pro hac vice

*Attorneys for Defendants CareCore National LLC d/b/a eviCore, and Group Health Incorporated*

10