**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KATHLEEN VALENTINI, VALERIO
VALENTINI, and VALERIO VALENTINI
on behalf of his minor son M.V.,

                    Plaintiff.

    -against-

GROUP HEALTH
INCORPORATED, EMBLEM
HEALTH, INC., CARECORE
NATIONAL LLC d/b/a EVICORE,
and JOHN DOES 1 AND 2,

                    Defendants.

Civil Action No. 20-9526 (JPC)

ORAL ARGUMENT REQUESTED

Document Electronically Filed

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

E. Evans Wohlforth, Jr.
Charlotte M. Howells
Gibbons P.C.
One Gateway Center
Newark, NJ 07102
Tel: (973) 596-4500
Fax: (973) 596-4545

Benjamin A. Post*
Joshua T. Calo*
Post & Post LLC
200 Berwyn Park, Suite 102
920 Cassatt Rd.
Berwyn, PA 19312
Telephone: (610) 240-9180
Fax: (610) 240-9185
*admitted pro hac vice*

*Attorneys for Defendants Group Health
Incorporated, Emblem Health, Inc., and
CareCore National LLC d/b/a eviCore*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND ................................................................................................................... 2

I.      DOCUMENTS OUTSIDE THE COMPLAINT ......................................................... 2

II.     STATEMENT OF FACTS. ........................................................................................ 3

      A.     The Insurance Policy ...................................................................................... 3

      B.     Plan Summary Materials and Plaintiffs' Enrollment. ................................... 7

      C.     Facts Giving Rise To This Case .................................................................. 11

III.    PROCEDURAL HISTORY AND REMAINING CAUSES OF ACTION. ................... 13

LEGAL STANDARD ......................................................................................................... 14

ARGUMENT ...................................................................................................................... 15

I.      COUNT 9 SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A
      CLAIM FOR FRAUD, NOR DOES IT SATISFY THE PARTICULARITY
      REQUIREMENTS OF RULE 9(b). ......................................................................... 15

      A.     Plaintiffs' Fraud Claims Duplicate Their Breach of Contract Claims. ............... 16

      B.     Plaintiffs' New Allegations Are Otherwise Legally Insufficient, and Fail to
              Satisfy Rule 9(b). ........................................................................................ 18

           1.     Plaintiffs fail to allege a materially false representation or a duty to
                  disclose ............................................................................................. 18

           2.     Plaintiffs fail to sufficiently allege fraudulent intent. .............................. 21

           3.     Plaintiffs cannot establish reasonable or detrimental reliance. ................. 22

           4.     *Plavin* is inapposite to Plaintiffs' common law fraud claims. ................. 23

II.     PLAINTIFFS' CONSPIRACY TO COMMIT FRAUD CLAIM MUST BE
     DISMISSED. ........................................................................................................... 24

III.    PLAINTIFFS' REMAINING DERIVATIVE AND PUNITIVE DAMAGES
     CLAIMS MUST BE DISMISSED (COUNTS 5, 7 & 8). ............................................. 25

CONCLUSION ................................................................................................................... 25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abu Dhabi Commer. Bank v. Morgan Stanley & Co.*,
    888 F. Supp. 2d 431 (S.D.N.Y. 2012) .......................................................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................14

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)............................................................................................2

*Batas v. Prudential Ins. Co. of Am.*,
    724 N.Y.S.2d 3 (App. Div. 2001) ..............................................................................19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................14

*Bridgestone/Firestone, Inc. v. Recovery Credit Serv., Inc.*,
    98 F.3d 13 (2d Cir. 1996)......................................................................................16, 18

*Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Inc. Plan*,
    2009 WL 928718 ..................................................................................................20, 21

*Brown v. Daikin Am. Inc.*,
    756 F.3d 219 (2d Cir. 2014)........................................................................................14

*Christine Asia Co. v. Alibaba Grp. Holding Ltd.*,
    192 F. Supp. 3d 456 (S.D.N.Y. 2016)..........................................................................2

*Cobalt Partners, L.P. v. GSC Capital Corp.*,
    944 N.Y.2d 30 (App. Div. 2012) ...............................................................................18

*Cohen v. Koenig*,
    25 F.3d 1168 (2d Cir. 1994)........................................................................................17

*Egerique v. Chowaiki*,
    2020 WL 1974228 (S.D.N.Y. Apr. 24, 2020)......................................................24, 25

*Ellington Credit Fund, LTD v. Select Portfolio Svg., Inc.*,
    837 F. Supp. 2d 162 (S.D.N.Y. 2011)........................................................................18

*Eurycleia Partners LP v. Seward & Kissel, LLP*,
    12 N.Y.3d 553 (2009) .................................................................................................21

*Freeman v. MBL Life Assur. Corp.*,
  60 F. Supp. 2d 259 (S.D.N.Y. 1999) ........................................................................19

*Gaidon v. Guardian Life Ins. Co. of Am.*,
  679 N.Y.S. 2d 611 (App. Div. 1998) ........................................................................19

*Guilbert v. Gardner*,
  480 F.3d 140 (2d Cir. 2007) ....................................................................................16

*Harsco Corp. v. Segui*,
  91 F.3d 337 (2d Cir. 1996) ......................................................................................14

*Heinert v. Bank of Am. N.A.*,
  835 Fed. Appx. 627 (2d Cir. 2020) ..........................................................................14

*Inn Chu Trading Co. v. Sara Lee Corp.*,
  810 F. Supp. 501 (S.D.N.Y. 1992) ...........................................................................15

*Karmilowicz v. Hartford Fin. Servs. Grp.*,
  494 Fed. App'x 153 (2d Cir. 2012) ............................................................................2

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015) ....................................................................................15

*Mandarin Trading Ltd. v. Wildenstein*,
  16 N.Y.3d 173 (2011) .............................................................................................18

*McSpedon v. Levine*,
  72 N.Y.S.3d 97 (App. Div. 2018) .............................................................................24

*Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*,
  500 F.3d 171 (2d Cir. 2007) ....................................................................................16

*Murray v. Xerox Corp.*,
  811 F.2d 118 (2d Cir. 1987) ....................................................................................22

*Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*,
  261 F.R.D. 13 (S.D.N.Y. 2009) ...............................................................................22

*Nat'l Union Fire Ins. Co. v. Robert Christopher Assocs.*,
  691 N.Y.S. 2d 35 (App. Div. 1999) ..........................................................................23

*New York Univ. v. Cont'l Ins. Co.*,
  87 N.Y.2d 308 (1995) ................................................................................16, 18, 20

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85
  N.Y.2d 20 (1995) ....................................................................................................24

*Ox v. Union Cent. Life Ins. Co.*,
   No. 94 Civ. 4754, 1995 WL 634991 (S.D.N.Y. Oct. 27, 1995) ..............................................21

*Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am.*,
   51 F. Supp. 3d 379 (S.D.N.Y. 2014)........................................................................................22

*Plavin v. Group Health Inc.*,
   35 N.Y.3d 1 (2020) ...........................................................................................................2, 23

*Plavin v. Grp. Health Inc.*,
   2021 WL 2026868 (3d Cir. May 21, 2021) ..............................................................................23

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000)........................................................................................................2

*Salzmann v. Prudential-Bach Securities*,
   No. 91 Civ. 4253 (KTD), 1993 WL 77374 (S.D.N.Y. Mar. 12, 1993)....................................21

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
   75 F.3d 801 (2d Cir. 1996)........................................................................................................2

*Sher v. Allstate Ins. Co.*,
   947 F. Supp. 2d 370 (S.D.N.Y. 2013).....................................................................................19

*Silvercreek Mgmt. v. Citigroup, Inc.*,
   248 F. Supp. 3d 428 (S.D.N.Y. 2017).....................................................................................25

*Spinelli v. Nat'l Football League*,
   903 F.3d 185 (2d Cir. 2018)...............................................................................................15, 18

*State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*,
   589 F. Supp. 2d 221 (E.D.N.Y. 2008) ...............................................................................15, 20

*Stillwater Liquidating LLC v. Net Five Palm Pointe, LLC*
   2018 WL 1610416 (S.D.N.Y. Mar. 30, 2018) ........................................................................19

*TN Metro Holdings I, LLC v. Commonwealth Ins. Co.*,
   51 F. Supp. 3d 405 (S.D.N.Y. 2014)........................................................................................17

*Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016)......................................................................................................2

*Wiener v. Fireman's Fund Insurance Company*,
   2015 WL 13742025 (E.D.N.Y. June 15, 2015) .......................................................................17

*Woodhams v. Allstate Fire & Cas. Co.*,
   748 F. Supp. 2d 211 (S.D.N.Y. 2010)................................................................................19, 20

*In re Yukos Oil Co. Dec. Litig.*,
   No. 04 Civ. 5243, 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006) ............................................14

**Other Authorities**

https://web.archive.org/web/20150921182753/https://www1.nyc.gov/assets/olr/do
   wnloads/pdf/health/health-full-spd.pdf ......................................................................................3

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 2, 14

Defendants, CareCore National LLC d/b/a eviCore ("eviCore"), Group Health Incorporated ("GHI"), and Emblem Health, Inc. ("Emblem") (collectively "Defendants"), respectfully submit this Memorandum of Law in support of their Motion to Dismiss the First Amended Complaint (ECF No. 68 ("FAC")) pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  For the reasons set forth below, Defendants respectfully request that this Court dismiss the FAC, in its entirety, with prejudice.

## PRELIMINARY STATEMENT

Like their initial Complaint, Plaintiffs' First Amended Complaint fails to allege any viable claim for relief against Defendants.  On June 15, 2021, this Court granted the entirety of Defendants' Motions to Dismiss, and the claims for negligence, medical malpractice, breach of contract, breach of the implied covenant of good faith and fair dealing, and *prima facie* tort were all dismissed with prejudice.  ECF No. 67.  Furthermore, in dismissing Plaintiffs' fraud causes of action, the Court rejected each theory that was pled in the original Complaint.  However, Plaintiffs were granted leave to file a narrow amended complaint, as to the fraud causes of action only, to allege a new theory that was first raised in Plaintiffs' opposition briefing—that GHI's "marketing materials and basic plan information did not inform potential customers that they would need to seek pre-authorization for services."  *Id.* at 30.

The First Amended Complaint fails to overcome the significant hurdles that were identified in this Court's opinion.  *See id.* at 31.  Plaintiffs' new fraud allegations are legally deficient on numerous grounds, and fail to satisfy the stringent pleading standard under Fed. R. Civ. P. 9(b).  First, Plaintiffs' fraud allegations remain duplicative of their invalid claims for breach of contract, and fail to establish an independent non-contractual duty as needed to state a claim for fraud.  Second, Plaintiffs fail to sufficiently allege any actionable false statement of fact, as Plaintiffs have only alleged that Defendants made purportedly misleading *omissions* in plan summary materials

1

which cannot, as a matter of law, constitute fraud in the absence of a fiduciary relationship.  In this regard, Plaintiffs' reliance on *Plavin v. Group Health Inc.*, 35 N.Y.3d 1 (2020)—which addressed statutory claims under New York's General Business law—has no application here.  Plaintiffs also fail to sufficiently allege the elements of fraudulent intent or reliance; and Plaintiffs' arguments are significantly undermined by the actual documents on which they rely. Accordingly, for all of the reasons set forth herein, this Court should dismiss the First Amended Complaint with prejudice.

## **BACKGROUND**

### I.    **DOCUMENTS OUTSIDE THE COMPLAINT**

In ruling on a 12(b)(6) motion to dismiss, courts may consider not only the facts alleged in the complaint, but also "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff upon which it relied in bringing the suit." *Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). Moreover, "a court may consider the full text of documents that are quoted in or attached to the complaint." *Christine Asia Co. v. Alibaba Grp. Holding Ltd.*, 192 F. Supp. 3d 456, 469 (S.D.N.Y. 2016) (citing *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir. 1996)); *see also Karmilowicz v. Hartford Fin. Servs. Grp.*, 494 Fed. App'x 153, 156 (2d Cir. 2012) ("We have cautioned that a plaintiff cannot 'evade a properly argued motion to dismiss simply because [the] plaintiff has chosen not to attach [a document on which he relies in bringing suit] to the complaint or to incorporate it by reference." (alteration in original) (citation omitted)).

In support of this Motion, Defendants submit and attach a true and correct copy of the "Summary Program Description" for the New York City Health Benefits Program.  Exhibit A to Wohlforth Declaration.  Page 22 of this document is attached as Exhibit B to Plaintiffs' FAC, and

it is extensively referenced and quoted therein.  *See, e.g.*, FAC ¶¶ 145-152, 170, 174.  Additionally, footnote 13 of the FAC includes a citation and hyperlink to access the full version of that document online.  *See id.* ¶ 175 n.2.[1]  Accordingly, this Court may properly consider the full text of this document, as it is integral, was relied upon by Plaintiff, and is properly deemed to be incorporated by reference in the FAC.

Second, Defendants submit and attach the Initial Adverse Determination letter sent from eviCore to Kathleen Valentini and Dr. Barry Oliver, dated February 16, 2019.  Exhibit B to Wohlforth Declaration.  This document was previously attached as Exhibit D to eviCore's Motion to Dismiss the Complaint, and the Court determined that it was "both incorporated into and integral to the Complaint."  ECF No. 67, Op. at 6.

## II.   STATEMENT OF FACTS.

### A.   The Insurance Policy.

At all relevant times, Ms. Valentini was a member of a health insurance benefits plan provided by GHI, known as the GHI Comprehensive Benefits Plan ("CBP").[2]  FAC ¶¶ 3, 18, 114, 134 & Ex. A.  In this regard, GHI contracts with the City of New York to provide health insurance benefits to persons enrolled in the New York City Employee Benefits Program, which is made available to eligible New York City employees and retirees.  *See id.* ¶ 16, 23, 11 & Ex. A, CBP at 5.  Plaintiff was eligible to enroll in this Plan because her husband, Plaintiff Valerio Valentini, is a retired New York City police officer.  FAC ¶ 16, 113 & Ex. A, CBP at 5; Wohlforth Decl. Ex. A, SPD at 3.  The FAC does not allege when Plaintiffs first enrolled in the GHI CBP.  However, the City's Health Benefits Program did provide for "annual or bi-annual selection of benefits,"

---

[1] https://web.archive.org/web/20150921182753/https://www1.nyc.gov/assets/olr/downloads/pdf/health/health-full-spd.pdf
[2] This document is attached as Exhibit A to Plaintiffs' FAC.

FAC ¶ 174, at which times participants could make changes to their enrollment status and transfer "from their current health plan to any other plan for which they are eligible," Wohlforth Decl., Ex. A, SPD at 8 ("Changes in Enrollment Status").[3]

The scope and terms of coverage, under the CBP, are set forth in the Certificate of Insurance and the Riders attached thereto (collectively hereinafter "Policy"). FAC ¶ 135 & Ex A, CBP at 5, 1-43 (Certificate of Insurance), 45-121 (Riders to Certificate of Insurance).[4] In defining the "Criteria for Coverage," the Policy specifies that "GHI will provide benefits only for the services that are listed as covered in this Contract or Certificate," and that the insured is "covered only for the services listed in this Contract." *Id.* at 7. The Policy further states, specifically, that "GHI does not cover services unless they are medically necessary." *Id.* "Medically necessary services" is then defined as:

> [H]ealth care services that are rendered by a Hospital or a licensed Provider ***and are determined by GHI*** to meet all of the criteria listed below:
>
> - They are provided for the diagnosis, or direct care or treatment of the condition, illness, disease, injury or ailment;
>
> - They are consistent with the symptoms or proper diagnosis and treatment of the medical condition, disease, injury or ailment;

---

[3] The Summary Program Description states that "Health Benefits Transfer Periods are usually scheduled once each year," but "[r]etirees may only participate in Transfer Periods that occur in even-numbered years." Wohlforth Decl., Ex. A, SPD at 8 (emphasis added).

[4] The "Introduction" section describes the Certificate of Insurance as follows:

> **1. Your Coverage Under GHI/CBP.** The City of New York has entered into a Group Contract with Group Health Incorporated (GHI) to provide health insurance benefits. Under this Group Contract, GHI will provide the benefits described in this booklet to persons enrolled in the New York City Employee Benefits Program. These benefits are known as the GHI Comprehensive Benefits Plan (GHI/CBP) and will be referred to in this booklet as GHI/CBP or "this Plan." This booklet is your Certificate of Insurance. It is evidence of your coverage under the Group Contract between GHI and the City of New York. It is not a contract between you and GHI. You should keep this booklet with your other important papers so that it is available for your future reference.

Wohlforth Decl., Ex. A. CBP at 5.

- They are in accordance with accepted standards of good medical practice in the community;

- They are furnished in a setting commensurate with the patient's medical needs and condition;

- They cannot be omitted under the standards referenced above;

- They are not in excess of the care indicated by generally accepted standards of good medical practice in the community;

- They are not furnished primarily for the convenience of the patient, the patient's family or the Provider; and

- In the case of a hospitalization, the services cannot be rendered safely or adequately on an outpatient basis and, therefore, require that the patient receive acute care as a bed patient.

*Id.* (emphasis added).

The process of determining whether health services "are or were medically necessary" is called "utilization review." *Id.* at 50. Under the Policy terms, GHI is specifically authorized to conduct utilization review of health services for which coverage is sought, including pre-authorization reviews that "take place prior to the service being performed." *Id.* All covered medical services are subject to review for medical necessity. *See id.* at 11 ("All visits are subject to utilization review. As with all covered services, the service that is rendered to you must be medically necessary."). As indicated above, eviCore is contracted by GHI to conduct pre-authorization utilization reviews, including the pre-authorization at issue in this case. FAC ¶ 32.

Specific sections of the Policy outline the procedures applicable to pre-authorization review and appeals of adverse coverage determinations. *See* FAC at Ex. A, CBP at 50-56 ("Utilization Review & Appeals"). In pertinent part, the Policy states that "[a]ll determinations that services are not Medically Necessary will be made by: 1) licensed physicians; or 2) licensed, certified, registered or credentialed health care professionals who are in the same profession and

same or similar specialty as the Provider who typically manages your medical condition or disease or provides the health care services under review." *Id.* at 51. The Policy further provides that "GHI may require that a current Provider's statement, acceptable to GHI, be furnished detailing the medical necessity of any service." *Id.* at 11. It also specifies, "the fact that your doctor prescribed or provided the care does not automatically mean that the care qualifies for payment under this Plan." *Id.* at 7.

Relevant to Plaintiff's claims, the provision addressing the timeline for pre-authorization review states that:

> If we have all the information necessary to make a determination regarding a Preauthorization review, we will make a determination and provide notice to you (or your designees) and your Provider, by telephone and in writing, within three days of receipt of the request.
>
> If we need additional information, we will request it within three (3) business days. You or your Provider will then have forty-five (45) calendar days to submit the information. If we receive the requested information within forty-five (45) days, we will make a determination and provide notice to you (or your designee) and your Provider, by telephone and in writing, within three (3) business days of our receipt of the information.

*Id.* at 51; *see* FAC ¶ 48. Consistent with state law, the Policy provides the right to appeal an adverse determination within one hundred and eighty (180) days after receipt of the notice of the adverse determination. FAC, Ex. A, CBP at 52. If the appeal relates to a preauthorization request, the Policy states that GHI "will decide the appeal within thirty (30) calendar days of receipt of the appeal request." *Id.* at 53. The Policy also permits an insured's provider to request an "expedited appeal" that "will be determined within the earlier of seventy-two (72) hours of receipt of the appeal or two (2) business days of receipt of the information necessary to conduct the appeal." *Id.*

B.      **Plan Summary Materials and Plaintiffs' Enrollment.**

Plaintiffs' FAC incorporates new allegations relating to Ms. Valentini's enrollment in the GHI-CPB, as well as plan summary materials that were made available to the individuals enrolled in the City's Employee Benefits Program.  *See* FAC ¶¶ 134-175.  As alleged, "City employees and retirees like the Valentinis are provided with health insurance as part of their employment/retirement package, and have the option to choose from among eleven health insurance plans," including the CHI-CPB.  *Id.* ¶ 138.  Although the FAC does not suggest when the Valentinis enrolled in the GHI-CPB, Plaintiffs claim that they "were never provided with a copy of the Plan when making a decision about their health insurance."  *Id.* ¶ 136.  Rather, when selecting a health insurance plan, City employees and retirees are provided with "summary materials," "prepared solely by the insurance companies," that describe the plan.  *Id.* ¶¶ 137-138.  In this regard, Plaintiffs' new theory is that GHI's summary materials were "false and misleading," *id.* ¶ 137, because they do not discuss the Policy's utilization review procedures or pre-authorization requirements relative to MRIs, *see, e.g.*, *id.* ¶¶ 144, 146-151.  Plaintiffs focus on two documents, excerpts of which are appended to the FAC.  FAC at Ex. B & Ex. C.

The first document is the "**Summary Program Description**" ("SPD"), which was distributed by the City Office of Labor Relations "to City employees and retirees for their annual or bi-annual selection of benefits."  *Id.* ¶¶ 174.  Plaintiffs assert that the SPD was "the only Plan description sent to all prospective members," *id.* ¶ 145, and that "[u]pon information and belief it was "sent to Plaintiff some time in 2017 or 2018 – prior to Plaintiff's bi-annual election of benefits," *Id.* ¶ 174.  The FAC references a single page containing a portion the GHI-CPB summary.  The FAC characterizes this document as failing to "include a single word" about "Defendants' 'utilization review' practice or procedures"; "the need for 'pre-authorization' for any

medical procedure"; or "any requirement for prior authorization before filling a doctor's prescription for an MRI or any other diagnostic test or procedure."  *Id.* ¶¶ 146-148.

When read in context, the SPD is a 54-page booklet that is presented as being "developed" by "The City of New York Office of Labor Relations" for members of "the City's Health Benefits Program."  Wohlforth Decl. Ex. A, SPD, at 1.  The introduction describes the purpose of the booklet as follows:

> This Summary Program Description provides you with a summary of your benefits under the New York City Health Benefits Program.  Health insurance and the health care system can be complicated and confusing. This booklet was developed to help you to understand your benefits and responsibilities under the New York City Health Benefits Program.

*Id.* at 1.  Twelve pages of the booklet are comprised of 1-2 page summaries of the eleven health insurance plans that are offered to members, which are "prepared solely by the insurance companies."  FAC ¶ 138; *see* Wohlforth Decl., Ex. A., SPD at 21-26, 28-35.  Regarding the selection of a health plan, the SPD focuses on describing the difference in benefits between the different *types* of health plans—*e.g.*, Exclusive Provider Organization (EPO) plans ("no out-of-network coverage"), versus Health Maintenance Organizations ("little or no out-of-pocket cost" but an in-network "PCP manages all medical services").  *Id.* at 20, 27.  For instance, the "Choosing a Health Plan" section of the introduction states:

> To select a health plan that best meets your needs, you should consider at least four factors . . .
>
> **Coverage** . . . The services covered by the plans differ.  For example, some provide preventative services while others do not cover them at all; some plans cover routine podiatric (foot) care, while others do not.
>
> **Choice of Doctor** . . . Some plans provide partial reimbursement when non-participating providers are used.  Other plans only pay for, or allow the use of, participating providers.
>
> **Convenience of Access** . . . Certain plans may have participating providers or centers that are more convenient to your home or workplace.

> You should consider the location of physicians' offices and hospital affiliations.
>
> **Cost** . . . Some plans require payroll and pension deductions for basic coverage. The costs of the Optional Riders also differ. These costs are compared on charts in Section Four of this booklet. Some plans require a copayment for each routing office visit. Some plans require you to pay a yearly deductible and coinsurance before the plans will reimburse you for the use of non-participating providers. If a plan does not cover certain types of services that you expect to use, you must also consider the out-of-pocket cost of these services.

*Id.* at 1 (ellipsis in original). The introductory section also outlines the process for enrolling in a plan, and for members to "transfer from their current health plan to any other plan for which they are eligible" during "Health Benefits Transfer Periods" that occur every one to two years. *Id.* at 8. The introduction further notes that "[t]he plan [the member] ha[s] chosen will send [him or her] an in-depth description of its benefits when [the member] enroll[s]"; and that "For More Information" the member may "[c]all the plans [he or she] [is] interested in for benefits packages and provider directories." *Id.* at 1.

The GHI-CBP summary, that Plaintiffs reference, is two pages long—although the FAC only cites and attaches the first page. *See id.* at 22-23. It includes, *inter alia*, brief summaries of the categories of covered services under the plan (*e.g.*, "Non-participating Provider Benefits," "Home Care Services," and an optional prescription drugs Rider), with information about the corresponding co-pays and deductibles. *See id.* at 22. The second page contains additional descriptions regarding "out-of-pocket costs" for "out-of-network providers," and lists an address and telephone number to contact EmblemHealth for more information. *See id.* at 23. The primary language that is referenced in the FAC states, in context, that:

> With GHI-CBP, you have the freedom to choose any provider worldwide. You can select a GHI participating provider and not pay deductibles or coinsurance, or go out-of-network and still receive coverage, subject to deductibles and coinsurance. GHI's provider network includes all medical

specialties.  When you need specialty care, you select the specialist and make the appointment.  Payment for services will be made directly to the provider – you will not have to file a claim form when you use a GHI participating provider.

*Id.* at 22.

The second document is GHI's "**Summary of Benefits and Coverage**" ("SBC")[5]. According to the FAC, this document "was never sent directly to prospective members," but "it was available on [Emblem Health's] website."  FAC ¶¶ 156, 175.  This document is eight pages long and contains concise summaries and examples of common medical services that are covered; potential differences in cost between use of a "Participating Provider" versus a "Non-Participating Provider"; and certain "Limitations & Exceptions" to coverage.  *See* FAC, Ex. C, SBC at 1-4.  The document includes a contact number and website for questions,[6] *id.* at 5, and instructions to access an online "Glossary" "[i]f you aren't clear about any of the underlined terms used in this form." *Id.* at 1-8.  The FAC does not specify when, if at all, Ms. Valentini viewed the SBC.  Rather, Plaintiffs make only a general and conclusory allegation that "*[o]nce they became GHI-CBP members*, the Valentinis relied on the Summary of Benefits and Coverage to help them understand, navigate and access their benefits."  FAC ¶ 171 (emphasis added).

Plaintiff alleges similar complaints about the SBC, including that it "makes absolutely no reference to any 'utilization review' procedure"; and "does not state that prior authorization is required for an MRI."  *Id.* ¶¶ 157, 160.  In this respect, Plaintiffs' characterizations of the document

---

[5] This document is attached as Exhibit C to the FAC.

[6] Regarding the website referenced in the SBC document, the FAC alleges that "going to that link takes a member to a totally irrelevant page: one that is entitled 'GHI Senior Care' and does not include a link to the GHI-CPB plan." FAC ¶ 166.  But Plaintiff does not allege that the referenced URL ("www.emblemhealth.com/sbc") linked to the same information when the SBC document was published as it does today.  Indeed, the version of the SBC that is attached to the FAC indicates that it is applicable to "Coverage Period: 7/01/2016 – 6/30/2017."  FAC, Ex. C, SBC at 1-8.

are grossly misleading.  Page 2 of the SBC does, in fact, state specifically that "[p]re-certification"

is required for MRIs," in the following format:

| Common Medical Event | Services You May Need | Your Cost If You Use a Participating Provider | Your Cost If You Use a Non-Participating Provider | Limitations & Exceptions |
|---|---|---|---|---|
| **If you have a test** | Diagnostic test (x-ray, blood work) | $20 co-pay/visit | 0% co-insurance | -----None----- |
| | Imaging (CT/PET scans, MRIs) | $50 co-pay/visit | 0% co-insurance | Pre-Certification required |

*See* FAC, Ex. C, SBC at 2.  Furthermore, Page 5 of the SBC includes information about

"[g]rievance and [a]ppeal [r]ights," with instructions to submit a grievance or appeal "[i]f you have

a complaint or are dissatisfied with a denial of coverage for claims under your plan."  *Id.* at 5.  This

information pertains directly to the utilization review and appeal provisions of the Policy.  *See*

FAC, Ex. A, CBP at 52-54.

In the FAC, Plaintiffs make conclusory allegations that they "relied" on these documents;

and that the documents were misleading due to the omission of details about utilization review and

pre-authorization requirements.  *See* FAC ¶ 173.  Plaintiffs further claim that "had they been sent

the Plan itself . . . they would have found it inconsistent with the documents that were sent, and

misleading."  *Id.* ¶ 172.  Significantly, however, Plaintiffs concede that the full Policy was "made

available to members on the Defendant's website sometime after . . . 2014."  *Id.* ¶ 154.

### C.    Facts Giving Rise To This Case.[7]

On November 11, 2018, Ms. Valentini presented to her primary care physician, Dr. Steven

Bauer, with complaints of right hip pain, for which Dr. Bauer recommended a conservative course

of physical therapy and over the counter pain medication.  FAC ¶ 26-27.  After completing several

weeks of physical therapy, Ms. Valentini continued to experience pain and returned to Dr. Bauer,

---

[7]The factual background of this case is described in greater detail in eviCore's preceding Memorandum of Law in support of its Motion to Dismiss the Complaint (ECF No. 30), which is incorporated by reference.  Here, Defendants provide a more concise outline of the factual allegations pertinent to Plaintiffs' remaining fraud causes of action.

who referred Ms. Valentini to an orthopedic surgeon.  *Id.* ¶¶ 27-28.  On February 4, 2019, Ms. Valentini was seen and examined by Dr. Barry Oliver, an orthopedic surgeon, who ordered an MRI of the right hip.  *Id.* ¶¶ 30, 81.  Pursuant to the terms of Ms. Valentini's health insurance policy, she was required to obtain pre-authorization for coverage of the MRI.  *Id.* ¶¶ 31.  Dr. Oliver subsequently submitted a request for pre-authorization to GHI.  *Id.* ¶ 31.

Upon receipt, eviCore conducted a pre-authorization review, and denied coverage based on the information that was submitted.  *Id.* ¶¶ 5, 31, 34-35.  On February 16, 2019, Defendants sent an "Initial Adverse Determination" letter to Ms. Valentini and Dr. Oliver, which delineated the following reasons for the denial:

> We look over the clinical and medical information given to us and check the criteria, guidelines and the rules of your health coverage policy to make our decision. . . .  Based on eviCore Musculoskeletal Imaging Guidelines, we cannot approve this request. . . .  Advanced imaging, detailed picture study, is supported for this problem if you failed to improve following a recent (within 3 months) 6 week trial of doctor prescribed treatment, and you had follow up contact with your doctor to look at your progress after 6 weeks. . . .  Your records do not show that you failed to improve following a 6 week trial of treatment.  We have told your doctor about this.  Please talk to your doctor if you have questions.

Wohlforth Decl., Ex. B, 2/16/18 Ltr. at 1-2.  This letter also provided information about the right to appeal, and how to do so.  *Id.* at 2-7; *see also* FAC ¶¶ 5, 34-35.

It is alleged that Dr. Oliver "immediately appealed the . . . denial of the MRI."  FAC ¶ 8.  "[A]fter speaking to Dr. Oliver on the phone," eviCore reversed its denial and approved coverage.  *Id.* ¶ 8.  Ms. Valentini had the MRI performed on March 14, 2019—within twenty-six days of the Initial Adverse Determination.  *Id.* ¶¶ 9, 34.  The MRI revealed a sarcoma in her right hip.  *Id.* ¶ 9.  It is alleged that the cancer "grew and spread" due to a purported delay in preauthorizing coverage for the MRI; and that such delay resulted in the amputation of Ms. Valentini's leg, hip and pelvis.  *Id.* ¶¶ 10-11, 45.  This conclusion is premised solely on a vague allegation that a

subsequent treating physician told Plaintiffs, "in substance," that "had you come to us a month sooner, we could have used chemotherapy.  Now we can't; we have to amputate before we treat with chemo."  *Id.* ¶ 12.  However, the FAC does not allege any further context about the timing of Plaintiffs' treatment, or the date of this supposed statement.

## III.   PROCEDURAL HISTORY AND REMAINING CAUSES OF ACTION.

On October 6, 2020, Plaintiffs commenced this suit in the Supreme Court of New York against GHI, GHI's parent company, asserting ten causes of action: (1) negligence against all Defendants (Count 1); (2) medical malpractice against all Defendants (Count 2); *prima facie* tort against all Defendants (Count 3); fraud against all Defendants (Count 9); conspiracy to commit fraud against all defendants (Count 10); "bad faith/punitive damages" against all defendants (Count 5); loss of services against all Defendants (Count 8); loss of guidance to a minor child against all defendants (Count 9); breach of contract against GHI and Emblem (Count 4); and breach of the implied covenant of good faith and fair dealing against GHI and Emblem (Count 6).  *See* ECF No. 1, Notice of Removal, Ex. A (Compl.).  eviCore removed the case to this Court on November 12, 2020, and all Defendants filed Motions to Dismiss the Complaint.  *See* ECF No. 20 (GHI), No. 30 (eviCore), No. 61 (Emblem).

On June 15, 2021, this Court granted all Defendants' Motions to Dismiss, but permitted leave for Plaintiffs to file a limited Amended Complaint, as to the fraud and derivative causes of action only.  *See* ECF No. 67, Op. at 31-32.  This Court held that Plaintiffs' original Complaint failed to allege any "material misstatements" that could "give[] rise to a fraud claim."  *Id.* at 27-28.  Nevertheless, in their opposition briefing, Plaintiffs attempted to "shift their theory" to argue that "Defendants committed fraud because their marketing materials and basic plan information did not inform potential customers that they would need to seek pre-authorization for services."

*Id.* at 29-30.  While permitting Plaintiffs "leave to amend their allegations of fraud," *id.* at 32, this Court observed "that Plaintiffs face an uphill battle in amending their Complaint."  Plaintiffs filed their First Amended Complaint on June 15, 2021.  As detailed below, the FAC fails to state any viable claim for relief, and the Amended Complaint should be dismissed with prejudice.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This "plausibility standard" requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Twombly*, 550 U.S. at 555.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679.

Although a plaintiff's factual allegations must generally be accepted as true, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 225 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).  For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Heinert v. Bank of Am. N.A.*, 835 Fed. Appx. 627, 629 (2d Cir. 2020) ("Allegations that are 'conclusory' are not entitled to be assumed true.").  Furthermore, the Court need not accept as true "any allegations that are contradicted by documents deemed to be part of the complaint, or materials amenable to judicial notice."  *In re Yukos Oil Co. Dec. Litig.*, No. 04 Civ. 5243, 2006 WL 3026024, at *12 (S.D.N.Y. Oct. 25, 2006).

Where, as here, a claim sounds in fraud, the complaint must satisfy the stringent pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure.  Rule 9(b) request that "a party must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  This means that a complaint must plead the circumstances of the fraud and the defendant's mental state.  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015).  As to the circumstances, allegations of fraud must: "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996).  Moreover, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."  *State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d 221, 228 (E.D.N.Y. 2008).  Speculative and conclusory allegations of fraud must be dismissed under Rule 9(b).  *See id.*; *Inn Chu Trading Co. v. Sara Lee Corp.*, 810 F. Supp. 501, 507 (S.D.N.Y. 1992) ("Mere suspicions that a fraud may have occurred are not sufficient.").

## **ARGUMENT**

**I.    COUNT 9 SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM FOR FRAUD, NOR DOES IT SATISFY THE PARTICULARITY REQUIREMENTS OF RULE 9(B).**

To state a claim for fraud under New York law, a plaintiff must allege that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance."  *Spinelli v. Nat'l Football League*, 903 F.3d 185, 209 (2d Cir. 2018) (internal quotation marks omitted).  Where, as here, "a plaintiff pleads fraud by omission,

'it must prove additionally that the plaintiff had a duty to disclose the concealed fact.'" *Merrill*

*Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007)).  Moreover, when

a fraud claim arises from the same facts giving rise to a breach of contract claim, a plaintiff must

either "(i) demonstrate a legal duty separate from the duty to perform under the contract, or (ii)

demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, or (iii) seek

special damages that are caused by the misrepresentation and unrecoverable as contract damages."

*Guilbert v. Gardner*, 480 F.3d 140, 148 (2d Cir. 2007) (quoting *Bridgestone/Firestone, Inc. v.*

*Recovery Credit Serv., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)); *see* ECF No. 67, Op. at 27.

Here, Plaintiffs' fraud claim must fail for several reasons.  First, Plaintiffs' fraud

allegations are duplicative of their insufficient breach of contract claim.  Second, Plaintiffs' new

allegations are insufficient to establish any of the required elements of fraud.

### A.      Plaintiffs' Fraud Claims Duplicate Their Breach of Contract Claims.

In the FAC, Plaintiffs seek to allege a theory that Defendants made "material

misrepresentations" in marketing materials "to induce Plaintiffs to choose their health insurance

plan."  FAC ¶ 144, 194.  Notwithstanding these conclusory statements, the FAC establishes

nothing more than "dissatisfaction with [D]efendants' performance of . . . contractual obligations."

*New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 319 (1995).  For instance, Plaintiffs go on to

allege that "Defendants' behavior with respect to its utilization review/prior authorization policies

exhibits all the negative characteristics and impacts chronicled by [an American Medical

Association survey on "utilization review/prior authorization practices"]," due to alleged failures

to "have a qualified physician or health professional review Kathleen's condition," and a purported

delay in "reversing their own error-filled denial."  FAC ¶ 183, 192.  These are the same complaints

that were advanced in support of Plaintiffs' negligence and contract claims, and they relate directly

to the performance of contractual allegations.  *See, e.g.*, *id.* ¶¶ 6, 39, 42, 44.

16

The Court's reasoning in *Wiener v. Fireman's Fund Insurance Company* is instructive. No. 14-CV-3699 (CBA) (JO), 2015 WL 13742025 (E.D.N.Y. June 15, 2015).  There, the plaintiff alleged that he chose the defendant-insurer's hazard insurance policy because the defendant "advertised that 'its size, financial strength, staffing and claims response were faster, more reliable, more accurate and more dependable in a crisis than that of its competitors."  *Id.* at *2.  After the defendant denied coverage for water damage to the plaintiff's basement, the plaintiff asserted claims for fraudulent inducement and misrepresentation, based on alleged misrepresentations (1) intended to "induce plaintiffs to buy a more expensive plan," and (2) concerning the insurer's "intentions with respect to [the plaintiffs' insurance claim]."  *Id.* at *13-14.  The Court dismissed the fraud causes of action as "duplicative of plaintiffs' breach of contract claim," finding that the defendants did not owe a non-contractual legal duty to the plaintiff, nor were the alleged misrepresentations "collateral or extraneous to the contract."  *Id.* at *12.

Likewise, here, Plaintiffs fail to state a viable fraud claim.  *First*, this Court has already held that Defendants did not owe a separate, non-contractual, legal duty of care.  *See* ECF No. 67, Op. at 21.

*Second*, Plaintiffs do not allege any misrepresentations that were "collateral or extraneous to" the parties' contractual relationship.  As indicated above, Plaintiffs' "misrepresentation" theory has merely "'dress[ed] up' a breach-of-contract claim as a fraud claim because they allege 'non-performance of the [Policy] itself.'"  *Wiener*, 2015 WL 13742025, at *5 (quoting *Cohen v. Koenig*, 25 F.3d 1168, 1172-73 (2d Cir. 1994)).  "Indeed, Plaintiffs have not alleged that they would have any claim against Defendant[s] in the absence of the insurance policy."  *Id.* at *12 (quoting *TN Metro Holdings I, LLC v. Commonwealth Ins. Co.*, 51 F. Supp. 3d 405 (S.D.N.Y. 2014)).

*Third*, because Defendants did not owe any non-contractual duty of care to Plaintiffs, extracontractual damages are not recoverable as a matter of law.  *See* ECF No. 67, Op. at 25-26; *see also New York Univ.*, 87 N.Y.2d at 315-16; *Ellington Credit Fund, LTD v. Select Portfolio Svg., Inc.*, 837 F. Supp. 2d 162, 198 (S.D.N.Y. 2011) (finding third prong of *Bridgestone/Firestone* standard inapplicable where defendant did not owe "extra-contractual duties" and exemplary damages were "unavailable as a matter of law").

### B.   Plaintiffs' New Allegations Are Otherwise Legally Insufficient, and Fail to Satisfy Rule 9(b).

Plaintiffs' fraud claim is fatally deficient for several other reasons.  Plaintiffs fail to adequately allege a false statement, fraudulent intent, justifiable reliance, or damages that were proximately caused by any alleged misrepresentation.  Plaintiffs also fail to satisfy the particularity requirement of Rule 9(b).

#### 1.   Plaintiffs fail to allege a materially false representation or a duty to disclose.

The first element for common law fraud requires Plaintiffs to show that "the defendant made a material *false* representation."  *Spinelli*, 903 F.3d at 209.  Here, Plaintiffs do not allege any false statement by Defendants, let alone a materially false one that is pled with particularity.

*First*, the crux of Plaintiff's fraud theory is that Defendants' Plan summary materials *failed to disclose* to potential members that preauthorization may be required for certain covered services, such as the MRI that was ordered by Ms. Valentini's physician.  *See, e.g.*, FAC ¶¶ 146-147.  However, "under New York law, it is well-settled that 'an omission does not constitute fraud unless there is a fiduciary relationship between the parties.'"  *Abu Dhabi Commer. Bank v. Morgan Stanley & Co.*, 888 F. Supp. 2d 431, 451 n.96 (S.D.N.Y. 2012) (quoting *Cobalt Partners, L.P. v. GSC Capital Corp.*, 944 N.Y.2d 30, 35 (App. Div. 2012)); *see also Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 179 (2011).  It is equally established that "the relationship between

18

an insurance company and a policyholder is a contractual relationship, not fiduciary one." *Freeman v. MBL Life Assur. Corp.*, 60 F. Supp. 2d 259, 266 (S.D.N.Y. 1999) (citing *Gaidon v. Guardian Life Ins. Co. of Am.*, 679 N.Y.S. 2d 611 (App. Div. 1998)); *see Batas v. Prudential Ins. Co. of Am.*, 724 N.Y.S.2d 3, 9 (App. Div. 2001) ("No special relationship of trust or confidence arises out of an insurance contract between the insured and the insurer[.]").

Here, Plaintiffs have not alleged any facts to suggest that Defendants had a unique or special relationship with Ms. Valentini that could establish a fiduciary duty.  Indeed, Plaintiff's fraud theory is based upon Ms. Valentini's decision as to which plan to choose.  At this point, she was not even in contractual privity, let alone a fiduciary relationship.  Rather, per Plaintiffs' own allegations, Ms. Valentini was merely a *prospective* insured at that moment, one who was provided with written materials that were disseminated by a third party—the New York City Office of Labor Relations—to all eligible New York City employees and retirees.  FAC ¶ 174.  Thus, because no plausible claim exists that Defendants had an affirmative duty to disclose the exact terms of its Policy, Plaintiffs' allegations of fraud by omission are insufficient as a matter of law.  *See Woodhams v. Allstate Fire & Cas. Co.*, 748 F. Supp. 2d 211, (S.D.N.Y. 2010) (holding that insurer had no duty to "disclose the exact terms of [its] policies" in online insurance offering); *Sher v. Allstate Ins. Co.*, 947 F. Supp. 2d 370, 386 (S.D.N.Y. 2013) (same).

*Second*, and in any event, Plaintiff has not plausibly alleged that any statement within the Plan summary materials was false, or even misleading.  Plaintiffs' allegations that the SBC document is misleading is conclusively refuted by the document itself, which does in fact state that preauthorization is required for MRIs under the Policy.  *See* FAC, Ex. C, SBC at 3.  Any allegations to the contrary must be disregarded.  *See Stillwater Liquidating LLC v. Net Five Palm Pointe, LLC* 2018 WL 1610416 (S.D.N.Y. Mar. 30, 2018).  The two-page summary within the SPD cannot be

reasonably read to suggest that it intends to describe all terms of the Policy, or all services that are subject to pre-authorization.  On the contrary, the first page of the introduction states that "[t]he plan you have chosen will send you an in-depth description of its benefits when you enroll." Wohlforth Decl., Ex. A, SPD at 1.  In that regard, Plaintiffs' allegation that Ms. Valentini was not provided with a copy of the full Plan "when making a decision about their health insurance" is plainly wrong.  The representation on which Plaintiff allegedly relied when deciding on which plan to choose, actually promised that a fuller statement of the benefits was forthcoming.  It can provide no basis for a fraud claim, therefore.  *See Woodhams*, 748 F. Supp. 2d at 222.

*Third*, to the extent that the FAC includes new allegations relating to eviCore's preauthorization review and initial denial of coverage, *see* FAC ¶ 193, those allegations also fail to state a viable fraud claim.  Again, such allegations "merely evidence plaintiff's dissatisfaction with Defendants' performance of . . . contract[ual] obligations," and not fraud.  *New York Univ.*, 87 N.Y.2d at 319; *see also Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Inc. Plan*, 07-CV-1471 (RRM)(LB), 2009 WL 928718, at *6 (holding that complaint alleging numerous examples of purportedly "groundless denials of insurance claims" established "at best, particular instances of breach of contract . . ., not fraud").

*Fourth*, the FAC otherwise fails to satisfy the heightened pleading requirements of Rule 9(b).  The FAC wholly fails to articulate how any specific statement, by any Defendant, is false let alone fraudulent.  Further, all of Plaintiffs' new allegations refer collectively to the "Defendants." In that respect, Plaintiffs fail to identify any specific statements attributable to Emblem or eviCore, or how each defendant was purportedly involved with creating the Plan summary materials in question.  This is impermissible under Rule 9(b).  *See State Farm Mut. Auto. Ins. Co. v. James M.*

*Liguori, M.D., P.C.*, 589 F. Supp. 2d 221, 228 (E.D.N.Y. 2008); *Ox v. Union Cent. Life Ins. Co.*, No. 94 Civ. 4754, 1995 WL 634991 (S.D.N.Y. Oct. 27, 1995).

Finally, the FAC does not allege, with particularity, when the Plan summary materials were distributed to Plaintiffs, if they were actually read by Ms. Valentini, or *how* they might have impacted Plaintiffs' health benefits plan decisions.  Rather, Plaintiffs merely allege, "[u]pon information and believe," that "*this distribution* of the [SPD] was sent to Plaintiff some time in *2017 or 2018*"; and that "*[o]nce they became GHI-CBP members*" Plaintiffs accessed the online SBC to "help them understand, navigate and access their benefits." FAC ¶¶ 171, 174 (emphasis added).

### 2.    Plaintiffs fail to sufficiently allege fraudulent intent.

Plaintiffs' fraud claim must also be dismissed because Plaintiffs fail to allege facts giving rise to any plausible inference of fraudulent intent.  "Under New York law, Plaintiffs must ultimately prove that Defendants possessed 'knowledge of their misstatements, falsity' and 'an intent to induce reliance.'"  *Lorely Fin.*, 797 F.3d at 176 (quoting *Eurycleia Partners LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553 (2009)). "While Rule 9(b) allows mental states to be 'alleged generally,' this relaxation of the heightened pleading requirement is not to be mistaken 'for a license to base claims of fraud on speculation and conclusory allegations.'"  *Id.*  The FAC is devoid of any relevant allegations, beyond conclusory assertions of a "generalized profit motive that could be imputed to any company." Courts have "consistently rejected [this] as a basis for inferring fraudulent intent."  *Brookdale*, 2009 WL 928718, at *6; *see also Salzmann v. Prudential-Bach Securities*, No. 91 Civ. 4253 (KTD), 1993 WL 77374, at *3 (S.D.N.Y. Mar. 12, 1993) (plaintiff's "assertion that the defendants were motivated by large profits is also insufficient to infer a motive and opportunity for fraud, or conscious behavior by defendants in furtherance of such fraud").

### 3. Plaintiffs cannot establish reasonable or detrimental reliance.

For several reasons, Plaintiffs cannot plead that they reasonably relied on any purportedly false or misleading statements within the Plan summary materials.

*First*, Plaintiffs do not allege that Ms. Valentini was actually misled or deceived by any purported misstatements or omissions in the Plan documents. Nor does the FAC plausibly suggest that Plaintiffs would have enrolled in a different plan, or disenrolled from the GHI-CBP, had they been aware of the full Policy terms. *See Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 19 (S.D.N.Y. 2009) ("[A] plaintiff must have relied on the fraudulent statement 'in ignorance of its falsity' to state a fraud claim." (quoting *Murray v. Xerox Corp.*, 811 F.2d 118, 121 (2d Cir. 1987)).

*Second*, "[u]nder New York law, a 'party cannot claim reliance on a misrepresentation when he or she could have discovered the truth with due diligence." *Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am.*, 51 F. Supp. 3d 379 (S.D.N.Y. 2014). Here, Plaintiffs allege that, since they were not sent the full Policy, they were unaware of purported inconsistencies within the Plan summary documents. FAC ¶ 172. But both summary documents include contact information to obtain further information about the terms of coverage. And the FAC specifically concedes that the full Policy was "made available to members on the Defendant's website sometime after . . . 2014." *Id.* ¶ 154.

*Third*, Plaintiffs do not allege any facts comparing the GHI Policy, with the preauthorization requirements or utilization review procedures of any of the other ten health benefits plans that were available to New York City employees and retirees. This undermines any plausible suggestion that Ms. Valentini *detrimentally* relied on any purported misrepresentation when selecting the GHI CBP. In any event, the SPD document makes clear that individuals have

the ability to "transfer from their current health plan to any other plan for which they are eligible" during the transfer periods that occur every one to two years.  FAC, Ex. A, CBP at 8.

*Finally*, for the reasons set forth in Defendants' prior Motion to Dismiss briefing, Plaintiffs' factual theory of the case is fundamentally at odds with any claim that Ms. Valentini relied on any supposed misstatements of fact connected to eviCore's initial denial of coverage.  Rather, Ms. Valentini and her physician appealed the denial of coverage, and won its reversal.  Thus, relative to Plaintiffs' new fraud theory, it is clear that Ms. Valentini did not *rely* on any alleged misstatements or omissions within Plan summary materials, when making medical treatment decisions in February or March of 2019.  In fact, such allegations of fraud are so remote and attenuated, that any statement or omission in GHI's plan summary materials cannot be the proximate cause of any physical injuries alleged in this case.  *See, e.g.*, *Nat'l Union Fire Ins. Co. v. Robert Christopher Assocs.*, 691 N.Y.S. 2d 35, 41 (App. Div. 1999) ("[T]he fraudulent conduct must be related to the resultant damages in order to satisfy the requirement of proximate causation.").

### 4.    *Plavin* is inapposite to Plaintiffs' common law fraud claims.

Plaintiffs' FAC makes much of the New York Court of Appeals' decision in *Plavin v. Group Health Incorporated*, 35 N.Y.3d 1 (2020).  However, as this Court indicated, the legal standards addressed in *Plavin* are quite different from a common law fraud cause of action.  *See* ECF No. 67, at 31.  Due to the vast factual and legal differences, *Plavin* has little if any persuasive value here.

Specifically, in *Plavin*, the Court of Appeals addressed a narrow statutory question certified by the Third Circuit Court of Appeals, of whether the dissemination of summary plan information to members constitutes "consumer-oriented conduct" as required to state a cause of action under Sections 349 and 350 of the New York General Business Law.  "Consumer-oriented conduct" is

not an element of common law fraud.  On remand, the Third Circuit held that the Plaintiffs had sufficiently alleged the remaining elements of this statutory claim.  *Plavin v. Grp. Health Inc.*, 2021 WL 2026868 (3d Cir. May 21, 2021).

The Third Circuit's decision highlights other crucial distinctions.  Unlike a fraud cause of action, a GBL claim does not require proof of "nefarious intent," a false statement of fact, or actual reliance.  *See id*. at *2; *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995).  Rather, it is only necessary to plead statements that are "materially misleading," in that it is "likely to mislead a reasonable consumer under the circumstances."  *See Plavin*, 2021 WL 2026868, at *2.  Furthermore, as this Court observed, statutory claims under the GBL are not subject to the heightened Rule 9(b) pleading standard.  Accordingly, *Plavin* does not provide support for Plaintiffs' common law fraud claims here.

Accordingly, for all of the foregoing reasons, Plaintiffs' fraud claim (Count 9) should be dismissed with prejudice.

## II.   PLAINTIFFS' CONSPIRACY TO COMMIT FRAUD CLAIM MUST BE DISMISSED.

"New York does not recognize civil conspiracy to commit a tort as an independent cause of action."  *McSpedon v. Levine*, 72 N.Y.S.3d 97, 101 (App. Div. 2018).  While a plaintiff "may plead the existence of a conspiracy to connect the actions of the individual defendants with an actionable, underlying tort,"[8] such a claim is dependent on the underlying tort cause of action.  *Id.* Here, since Plaintiffs fail to state a viable claim for fraud, the claim alleging a "civil conspiracy to commit fraud" must also fail as a matter of law.  *See id.* (conspiracy claim "stands or falls with the underlying tort").  In any event, Plaintiffs fail to allege any facts that plausibly suggest a corrupt

---

[8]To plead a viable conspiracy, in addition to the underlying tort, a plaintiff must allege (1) an agreement among two or more parties, (2) a common objective, (3) acts in furtherance of the objective, and (4) knowledge.  *Egerique v. Chowaiki*, 2020 WL 1974228, at *4 (S.D.N.Y. Apr. 24, 2020).

"scheme" or agreement, between the defendants, to engage in fraudulent conduct.  Rather, in the FAC, Plaintiffs' assertion of a conspiracy is based on nothing more than conjecture and unsupported conclusory allegations.  This is insufficient to overcome a motion to dismiss, and wholly fails to satisfy the heightened requirements of Rule 9(b).  *See Egerique v. Chowaiki*, 2020 WL 1974228 at *4 (conclusory allegation that defendant "knew or should have known" of another's fraud is insufficient to plead "a corrupt agreement"); *Silvercreek Mgmt. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 447 (S.D.N.Y. 2017) ("A claim for conspiracy to commit fraud is also subject to Rule 9(b)'s heightened pleading standard.")  Accordingly, Plaintiffs' conspiracy claim (Count 10) must also be dismissed with prejudice. for all of the foregoing reasons, Plaintiffs' fraud-based claims (Counts 9 and 10) should be dismissed.

## III.   PLAINTIFFS' REMAINING DERIVATIVE AND PUNITIVE DAMAGES CLAIMS MUST BE DISMISSED (COUNTS 5, 7 & 8).

Since Plaintiffs were granted leave to amend their fraud and conspiracy claims, the Court also permitted Plaintiffs to replead their derivative claims for "bad/faith/punitive damages," loss of services, and loss of guidance to a minor child.  Each of these claims is derivative and cannot exist independent of a viable primary cause of action.  Here, because Plaintiffs' remaining fraud and conspiracy claims fail, then the derivative claims must also be dismissed as a matter of law.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' First Amended Complaint should be dismissed in its entirety with prejudice.

Respectfully submitted,

Dated: August 12, 2021

By: _s/ E. Evans Wohlforth, Jr._
E. Evans Wohlforth, Jr.
Charlotte M. Howells
Gibbons P.C.
One Gateway Center
Newark, NJ 07102
Tel: (973) 596-4500
Fax: (973) 596-4545

Benjamin A. Post*
Joshua T. Calo*
Post & Post LLC
200 Berwyn Park, Suite 102
920 Cassatt Rd.
Berwyn, PA 19312
Telephone: (610) 240-9180
Fax: (610) 240-9185
*admitted pro hac vice

_Attorneys for Defendants CareCore National_
_LLC d/b/a eviCore, and Group Health_
_Incorporated_

26