UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                                        :

KATHLEEN VALENTINI *et al.*,                  :
                                        :

                     Plaintiffs,           :             20 Civ. 9526 (JPC)
                                        :

        -v-                                 :           <u>OPINION AND ORDER</u>
                                        :

GROUP HEALTH INCORPORATED *et al.*,    :
                                        :

                    Defendants.         :
                                        :
---------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

       Plaintiffs Valerio Valentini, Valerio Valentini on behalf of his minor son M.V., and Estate

of Kathleen Valentini, with Valerio Valentini as Administrator, bring this suit against GHI,

Emblem, eviCore, and John Does 1 and 2 in connection with Defendants' delayed pre-

authorization of an MRI for Kathleen Valentini ("Kathleen") that her doctor had prescribed.  On

June 15, 2021, the Court granted Defendants' motion to dismiss the Complaint for failure to state

a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissing with prejudice Plaintiffs'

claims for negligence, medical malpractice, prima facie tort, breach of contract, and breach of the

implied covenant of good faith and fair dealing.  *See Valentini v. Grp. Health Inc.*, No. 20 Civ.

9526 (JPC), 2021 WL 2444649 (S.D.N.Y. June 15, 2021) ("*Valentini I*").  The Court, however,

dismissed without prejudice Plaintiffs' fraud, conspiracy, and derivative claims for bad

faith/punitive damages, loss of services, and loss of guidance to a minor child, and granted them

leave to amend the Complaint to re-plead those claims.  The Court permitted amendment after

Plaintiffs' opposition to dismissal shifted their theory to one based on fraud "because

[Defendants'] marketing materials and basic plan information did not inform potential customers

that they would need to seek pre-authorization for services." *Id.* at *14.

Plaintiffs filed their Amended Complaint on June 29, 2021. Dkt. 68 ("Amended Complaint" or "Am. Compl.").[1]  Defendants have moved to dismiss the Amended Complaint, Dkt. 72 ("Motion"), and Plaintiffs have opposed, Dkt. 75 ("Opposition").  For the following reasons, Defendants' motion to dismiss is granted.

## I.      Background

The Court assumes familiarity with the facts and procedural history of this case, which are detailed in *Valentini I*.  As relevant here,[2] the Amended Complaint alleges that Kathleen was a member of a health insurance benefits plan provided by Defendant GHI, known as the GHI Comprehensive Benefits Plan ("GHI-CBP").  Am. Compl. ¶¶ 18, 114, 134.  GHI and Emblem contract with the City of New York to provide medical insurance to City employees and retirees, including Plaintiffs.  *Id.* ¶¶ 134, 138.  Kathleen was eligible to enroll in GHI-CBP because her husband is a retired New York City police officer.  *Id.* ¶ 18.  GHI-CBP's terms and benefits provide, among other things, that GHI engages in "utilization review" of "health services to determine whether the services are or were medically necessary or experimental or investigational." *Id.*, Exh. A ("Plan") at 50.  It further provides that "[u]tilization review includes all review activities, whether they take place prior to the service being performed

---

[1] In addition to alleging fraud, conspiracy, and derivative claims, the Amended Complaint re-alleges the causes of action that were dismissed with prejudice in *Valentini I*, in order "to preserve [those claims] for appeal."  *E.g.*, Am. Compl. at 13 n.5.

[2] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Amended Complaint and from the documents attached thereto and incorporated therein by reference.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (noting that at the motion to dismiss stage, a court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" as well as any documents "integral" to the complaint, *i.e.*, "where the complaint 'relies heavily upon [the document's] terms and effect'" (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995))).

(Preauthorization); when the service is being performed (concurrent); or after the service is performed (retrospective)." *Id.*

While the Amended Complaint does not allege when Kathleen first enrolled in GHI-CBP, Plaintiffs contend that, at the time of enrollment, they were not provided a copy of the Plan.[3]  Am. Compl. ¶ 136.  Instead, they allege that they were sent a one-page summary of the Plan "some time in 2017 or 2018," prior to their bi-annual election of benefits.  *Id.* ¶ 174, Exh. B. ("Summary Program Description" or "SPD").  Plaintiffs contend that they "relied solely on the Summary Program Description in choosing the GHI-CBP plan." *Id.* ¶ 170.  The SPD, which appeared to be prepared by GHI and Emblem, represents to potential enrollees that:

> With GHI-CBP, you have the freedom to choose any provider worldwide. . . . GHI's provider network includes all medical specialties.  When you need specialty care, you select the specialist and make the appointment.  Payment for services will be made directly to the provider - you will not have to file a claim form when you use a GHI participating provider.

SPD.  Plaintiffs contend that the SPD is misleading because (1) it "does not include a single word about the Defendants' 'utilization review' practice or procedures"; (2) it "does not include a single word about the need for 'pre-authorization' for any medical procedure"; (3) it "does not refer to any requirement for prior authorization before filling a doctor's prescription for an MRI or any other diagnostic test or procedure"; and (4) it "does not refer to any assessment by GHI of a test or procedure being 'medically necessary.'" Am. Compl. ¶¶ 146-48, 151.  The SPD does, however, include a reference to "Prior Authorization" for "certain brand name medications" and "precertification" in the context of "Home Care Services," which include "intermittent home care services, home infusion therapy, private duty nursing and durable medical equipment." *Id.*  ¶¶

---

[3] The Amended Complaint alleges that the Plan "itself was never sent to the Plaintiff" and "was only made available to members on the Defendant's website sometime after the [New York] Attorney General's 2014 [Assurance of Discontinuance]."  Am. Compl. ¶ 154.

148-49.  The SPD does not affirmatively state that pre-authorization is not required for an MRI, but the Amended Complaint alleges that Kathleen understood, based on the information provided in the SPD, that "she would receive basic diagnostic tests prescribed by her doctor without Defendants imposing additional roadblocks never mentioned in the Summary [Program] Description."  *Id.* ¶ 152.

In addition to the SPD, GHI and/or Emblem provides on its website a summary of benefits and coverage for GHI-CBP.  *Id.* ¶ 140, Exh. C ("Summary of Benefits and Coverage" or "SBC").  The SBC provides information regarding the costs associated with common medical events and services under the Plan, as well as explanations of "What this Plan Covers & What it Costs."  SBC.  As with the SPD, the SBC makes no reference to any "utilization review" procedure.  Am. Compl. ¶ 157; *see* SBC.  But contrary to Plaintiffs' allegation in the Amended Complaint that "[t]he Summary of Benefits and Coverage does not state that prior authorization or approval is required for an MRI," Am. Compl. ¶ 160, the SBC does provide that "[p]re-certification [is] required" for imaging, including CT/PET scans and MRIs, SBC at 2.

Plaintiffs contend that the SBC is misleading because it contradicts certain information provided in the SPD, including by failing to mention the pre-authorization requirement for certain brand name medications (as mentioned in the SPD), while including new procedures that require pre-authorization, such as bariatric surgery and infertility treatments (which are not mentioned in the SPD).  Am. Compl. ¶ 164.   Although Plaintiffs do not specify when they reviewed the SBC, they purportedly "relied on the Summary of Benefits and Coverage to help them understand, navigate and access their benefits."  *Id.* ¶ 171.   According to Plaintiffs, "Defendants falsely represent that there is no prior authorization required in their marketing materials" because "if it were known to consumers, many would not choose the plan and Defendant would be deprived of

4

millions of dollars." *Id.* ¶ 176. Plaintiffs contend that had they known about "Defendants' false representations," they would not have enrolled in GHI-CBP. *Id.* ¶ 173.

The Amended Complaint also alleges prior findings by the Third Circuit in *Plavin v. Grp. Health Inc.*, 857 F. App'x 83 (3d Cir. May 21, 2021) (unpublished opinion), and the New York Attorney General in a 2014 Assurance of Discontinuance that the SPD and the SBC—the same documents at issue in this case—are misleading under the New York General Business Law.[4] *Id.* ¶¶ 142-43, 153, Exh. D ("Assurance of Discontinuance" or "AOD").

## II.        Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), courts assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In making such determination, the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015), but need not accept "legal conclusions" as true, *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Where a claim sounds in fraud, a complaint must meet the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent,

---

[4] The Amended Complaint also refers to a study by the American Medical Association regarding the impact of insurance companies' utilization review and prior authorization procedures. Am. Compl. ¶¶ 182-91.

knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  In other words, Rule 9(b) requires pleading the circumstances of the fraud and the defendant's mental state. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015).  To satisfy this heightened burden, the complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Id.* (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)).  In terms of a defendant's mental state, the complaint must allege facts "that give rise to a strong inference of fraudulent intent." *Id.* (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006)).  Courts view the alleged facts "in their totality, not in isolation." *Id.* (citation omitted).

### III.    Discussion

#### A.  Fraud Claim

Although the original Complaint asserted a claim for "fraud," the Amended Complaint appears to assert a claim for fraudulent inducement.  Regardless, the required showing under a claim for fraud and a claim for fraudulent inducement is the same: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 209 (2d Cir. 2018) (internal quotation marks omitted); *accord Levy v. Maggiore*, 48 F. Supp. 3d 428, 462 (E.D.N.Y. 2014) ("A fraud in the inducement claim has the same elements as a fraud claim."); *Friar v. Wyndham Vacation Resorts, Inc.*, No. 20 Civ. 2627 (JPO), 2021 WL 1062615, at *4 (S.D.N.Y. Mar. 19,

2021) ("[T]he elements for fraud and fraudulent inducement are effectively the same.").

### 1. Rule 9(b)'s Heightened Pleading Standard

As a threshold matter, Plaintiffs' fraud claim fails to satisfy the heightened pleading standard under Rule 9(b).  Plaintiffs allege a claim for fraud against the "GHI Defendants," which the Amended Complaint defines as "Defendants GHI, Emblem Health, eviCore and eviCore employees John Does 1 and 2"—*i.e.*, all Defendants.  Am. Compl. ¶ 3.  Notwithstanding Rule 9(b)'s requirement that fraud be pled with particularity, including by identifying the speaker, the Amended Complaint's allegations of fraud are replete with references to "Defendant" and "Defendants" without identifying the specific Defendant or Defendants responsible:

- "Defendant made material misrepresentations, with an intention to defraud the Plaintiff. Kathleen reasonably relied on these misrepresentations, and as a result suffered incalculable damages." *Id.* ¶ 133.

- "Defendants presented Plaintiffs with summary materials that purported to describe the Plan.  These materials were false and misleading." *Id.* ¶ 137.

- "This 'Summary Program Description' [was] prepared by Defendants and relied on by Plaintiffs[.]" *Id.* ¶ 139.

- "These are the same documents Defendants used to induce Plaintiffs to choose their health insurance plan." *Id.* ¶ 144

- "Defendants continued to mislead prospective members, telling them that 'With GHI-CBP, you have the freedom to choose any provider worldwide,' and: 'GHI's provider network includes all medical specialties.  When you need specialty care, you select the specialist and make the appointment.  Payment for services will be made directly to the provider - you will not have to file a claim form when you use a GHI participating provider.'" *Id.* ¶ 161.

- "Defendants further mislead members by publishing on their website their Summary of Benefits and Coverage which is inconsistent with the Summary [Program] Description. . . . Defendants engaged in a classic bait-and-switch scheme: promise a Mercedes and deliver a Yugo." *Id.* ¶ 162.

- "Had the Valentinis known about Defendants' false representations described above, they would not have relied upon these documents or chosen the GHI-CBP plan for their health insurance." *Id.* ¶ 173.

- "It is little wonder that Defendants falsely represent that there is no prior authorization required in their marketing materials;[] if it were known to consumers, many would not choose the plan and Defendant would be deprived of millions of dollars." *Id.* ¶ 176.

- "Defendants' behavior constitutes fraud: they made material misrepresentations to Kathleen through the Summary Program Description. She reasonably relied upon that document in choosing the GHI-CBP plan. And ultimately, the misrepresentations caused Kathleen's delayed diagnosis and catastrophic damages." *Id.* ¶ 194.

This is insufficient to satisfy the heightened pleading standard under Rule 9(b). *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'").

Furthermore, even where Plaintiffs' fraud allegations do mention GHI and Emblem, they do not identify the specific speaker or actor with respect to each purported misrepresentation and, instead, confusingly refer to GHI and Emblem interchangeably without defining the role of each Defendant in the alleged fraud.[5] *See, e.g.*, Am. Compl. ¶ 140 (noting that "'GHI created its own online summary of benefits and coverage, which was available on its website'"); *id.* ¶ 156 (noting that the SBC, which was "a second piece of marketing material prepared by the Defendant to entice prospective members to choose the GHI plan," "was never sent directly to prospective members, [but] it was available on Defendants' website"); *id.* ¶ 162 ("Defendants further mislead members by publishing on their website their Summary of Benefits and Coverage which is inconsistent with the Summary [Program] Description."); *id.* ¶ 175 ("The second set of materially misleading statements were made by Defendant upon the publication of the Summary of Benefits and

---

[5] Plaintiffs argue in their Opposition that they cannot list all fraudulent statements for each Defendant because "the Defendants use their names and logos interchangeably in their communications with Plaintiffs." Opposition at 24. In support, Plaintiffs cite to paragraph 199 of the Amended Complaint. But paragraph 199, which alleges that "Defendants jointly sent the letter to Kathleen and her doctor denying the MRI," does not support Plaintiffs' contention. Am. Compl. ¶ 199. Nor is the Court able to identify any allegation in the Amended Complaint that supports Plaintiffs' contention. Accordingly, the Court declines to consider this new argument raised for the first time in opposition to the motion to dismiss.

Coverage on the Emblem Health website.").

This failure is compounded by the absence of specific allegations as to when the purportedly misleading statements were conveyed to Plaintiffs.  The Amended Complaint alleges that "[u]pon information and belief this distribution of the Emblem Health-prepared Summary Program Description was sent to Plaintiff some time in 2017 or 2018 - prior to Plaintiff's bi-annual election of benefits."  *Id.* ¶ 174.  As a general matter, fraud allegations may be made based on information and belief only "when facts are peculiarly within the opposing party's knowledge." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990).  This information, however, is not peculiarly within Defendants' knowledge because Plaintiffs should be able to allege with specificity when they received the SPD.  Plaintiffs have not done so.  *See Ohanian v. Apple Inc.*, No. 20 Civ. 5162 (LGS), 2021 WL 5331753, at *3 (S.D.N.Y. Nov. 16, 2021) (finding that "[t]he Complaint's allegations of fraud do not satisfy Rule 9(b) because the Complaint does not specify when and where the allegedly fraudulent statements were made," including "where [the defendant]'s statements were made and in what context [the plaintiff] was exposed to the statements" as well as when plaintiff purchased the product and "when he discovered the alleged fraud").  To the extent Plaintiffs allege that they received the SPD "some time in 2017 or 2018," this too is insufficient to satisfy the pleading requirements under Rule 9(b).  *See Zucker v. Katz*, 708 F. Supp. 525, 530 (S.D.N.Y. 1989) (finding the complaint deficient under Rule 9(b) because "it merely specifies the approximate year in all but one instance, in which it specifies the approximate month"); *Hyland v. Navient Corp.*, No. 18 Civ. 9031 (DLC), 2019 WL 2918238, at *12 (S.D.N.Y. July 8, 2019) (concluding that the amended complaint failed to meet the heightened pleading standards of Rule 9(b) because it "simply identifies the approximate year in which these conversations took place" and "[s]uch general allegations are insufficient to afford [the defendant]

'fair notice' of the factual basis for the plaintiffs' claims sounding in fraud"). With respect to the SBC, the Amended Complaint states that Plaintiffs are unable to allege when the SBC was updated, Am. Compl. ¶ 175, but, as with the SPD, the Amended Complaint does not even allege when Plaintiffs reviewed and purportedly "relied on the Summary of Benefits and Coverage to help them understand, navigate and access their benefits," *id.* ¶ 171. Accordingly, Plaintiffs' fraud claim fails to satisfy Rule 9(b).

### 2. A Materially False Representation

Plaintiffs' fraud claim further fails because Plaintiffs have not sufficiently pled a materially false representation. The crux of Plaintiffs' fraud claim is that the marketing materials—*i.e.*, the SPD and the SBC—fail to disclose to potential members that pre-authorization may be required for certain covered services, including the MRI that Kathleen's doctor ordered. This is a theory of fraud based on omission. The Amended Complaint does not allege, for instance, that the SPD or the SBC affirmatively assured potential enrollees that pre-authorization would not be required for MRIs. And in fact, there is no statement in either the SPD or the SBC making such an assurance. Thus, according to the Amended Complaint, what makes Defendants' statements in the marketing materials misleading is what they *do not* say: that pre-authorization is required for MRIs.

As this Court previously stated in *Valentini I*, under New York law, "an omission does not constitute fraud unless there is a fiduciary relationship between the parties." *Abu Dhabi Com. Bank v. Morgan Stanley & Co.*, 888 F. Supp. 2d 431, 451 n.96 (S.D.N.Y. 2012) (internal quotation marks omitted); *Rosenblatt v. Christie, Manson & Woods Ltd.*, No. 04 Civ. 4205 (PKC), 2005 WL 2649027, at *10 (S.D.N.Y. Oct. 14, 2005) ("This lack of a fiduciary relationship dooms a fraud claim based on omission, rather than affirmative misstatements."); *Amend v. Hurley*, 293 N.Y. 587, 596 (1944) ("It is not fraud for one party to say nothing on the subject where no confidential

or fiduciary relation exists and where no false statements or acts to mislead the other are made."). As with the original Complaint, the Amended Complaint does not allege any facts suggesting that Defendants owed a fiduciary duty to Kathleen nor are Plaintiffs able to assert such duty under New York law. *See Fiala v. Met. Life Ins. Co.*, 776 N.Y.S.2d 29, 32 (App. Div. 2004) ("[A]n insurance company does not owe its policyholder a common-law fiduciary duty except when it is called upon to defend its insured."); *Batas v. Prudential Ins. Co. of Am.*, 724 N.Y.S.2d 3, 7 (App. Div. 2001) (declining to find that an insurance company could be liable for a breach of fiduciary duty because there was "no showing that [the insured's] relationship with defendants is unique or differs from that of a reasonable consumer and offer no reason to depart from the general rule that the relationship between the parties to a contract of insurance is strictly contractual in nature").

In their Opposition, Plaintiffs urge the Court to reject what they describe as "Defendants' improper attempts to reframe Plaintiffs' claims as involving omissions" because "the marketing summary prepared by Defendants contained affirmative misstatements." Opposition at 14. As an initial matter, Plaintiffs' attempt to characterize Defendants' alleged omissions as affirmative misstatements is belied by the allegations in the Amended Complaint itself, which point to purported misrepresentations in the marketing materials arising from Defendants' failure to include information (*i.e.*, an omission) regarding the need for pre-authorization for MRIs. *See, e.g.*, Am. Compl. ¶ 146 ("The Summary Program Description *does not include* a single word about the Defendants' 'utilization review' practice or procedures." (emphasis added)); *id.* ¶ 147 ("The Summary Program Description *does not include* a single word about the need for 'pre-authorization' for any medical procedure." (emphasis added)); *id.* ¶ 148 ("The Summary Program Description *does not refer* to any requirement for prior authorization before filling a doctor's prescription for an MRI or any other diagnostic test or procedure." (emphasis added)); *id.* ¶ 150

("*There is no reference* to any other procedures or tests requiring precertification - including an MRI." (emphasis added)).  But even construing the Amended Complaint as alleging affirmative misstatements in the marketing materials, Plaintiffs have not alleged any facts to support the conclusion that Defendants' representations are untrue or fraudulent.

Plaintiffs primarily rely on Defendants' representations in the SPD that "[w]ith GHI-CBP, you have the freedom to choose any provider worldwide" and that "[w]hen you need specialty care, you select the specialist and make the appointment.  Payment for services will be made directly to the provider - you will not have to file a claim form when you use a GHI participating provider."  SPD; *see also* Opposition at 14; Am. Compl. ¶ 145.  Plaintiffs contend that this language was "intended to and did represent to Kathleen that she would receive basic diagnostic tests prescribed by her doctor without Defendants imposing additional roadblocks never mentioned in the Summary Plan Description," and that she relied on this language when selecting the Plan. *Id.* ¶ 152.  But the Amended Complaint does not allege anything untrue about these statements, let alone that they contain any assurance that a participant would not need to secure pre-authorization for an MRI.  Contrary to Plaintiffs' argument that "Kathleen was unable to select the specialist or make the appointment," Opposition at 1, the Amended Complaint alleges that Kathleen's primary care physician, Dr. Steven Bauer, recommended that she see a specialist and referred her to Dr. Barry Oliver, an orthopedic surgeon, Am. Comp. ¶¶ 26, 29-30.  Kathleen was examined by Dr. Oliver on February 4, 2019.  *Id.* ¶ 30.  Plaintiffs' only issue with Defendants' representations is that Dr. Oliver was required to seek pre-authorization for Kathleen's MRI despite the absence of such requirement in the SPD.  But, again, nowhere does the SPD represent that MRIs would not be subject to pre-authorization; at most, Defendants' failure to include such requirement constitutes an omission.  Moreover, the SBC specifically provides that pre-certification is required

for imaging, including CT/PET scans and MRIs.  SBC at 2.  The fact that one of the summary documents that Plaintiffs maintain contained material misrepresentations expressly made clear the requirement of pre-certification for MRIs is devastating to their fraud claim.

Nor is the Court persuaded by Plaintiffs' argument that, in light of the SPD's references to pre-authorization for brand name drugs and home care, the "most reasonable" reading of that document is that "precertification or prior authorization . . . applied only to brand name drugs and home health care – and not to specialist care or diagnostic testing."  Opposition at 14-15.  The SPD does not provide that pre-authorization is required *only* as to brand name drugs and home health care and to the exclusion of any other category of treatment options or diagnostic tests.  Moreover, nowhere does the SPD (or the SBC) suggest that it includes every detail of the Plan.  That should not come as a surprise.  The Plan is approximately 150 pages long.  The SPD is only one page.  And the SBC—which again, *does* mention that MRIs require pre-certification—is only eight pages long.  No reasonable person would conclude that the SPD's one-page summary would incapsulate every possible term of the Plan or, for that matter, every category of pre-authorization required under the Plan.  Indeed, the first page of the booklet containing the Summary Program Description confirms what the document's title makes plain: it is a summary of terms more clearly set forth in the Plan.  *See* Dkt. 73, Exh. A at 3 ("The Summary Program Description provides you with a summary of your benefits . . . .  The plan you have chosen will send you an in-depth description of its benefits when you enroll.").[6]

---

[6] Plaintiffs do not seem to dispute that the Plan itself required pre-authorization of procedures like MRIs.  And clearly it did.  The Plan explains: "We review health services to determine whether the services are or were medically necessary or experimental or investigational ('Medically Necessary').  This process is called utilization review."  Plan at 50.  And it specifically states that "GHI does not cover services unless they are medically necessary," which it defines as "health care services that are rendered by a Hospital or a licensed Provider and are determined by GHI to meet" certain enumerated criteria.  *Id.* at 7.

Plaintiffs also argue that Defendants' statements in the SPD are misleading when compared to the summary program description for a different policy, the GHI DC-37 Med-Team plan, because that summary "contains a clear statement that 'diagnostic x-rays and certain other medical services require precertification.'"  Opposition at 14.  The Amended Complaint does not make any reference to the GHI DC-37 Med-Team plan, let alone assert that the SPD was misleading in light of GHI's representations with respect to another benefits plan.  Accordingly, the Court does not consider this argument and Plaintiffs' new theory of fraud presented for the first time in their Opposition.  *See MacCartney v. O'Dell*, No. 14 Civ. 3925 (NSR), 2016 WL 815279, at *3 (S.D.N.Y. Feb. 29, 2016) ("[F]actual assertions raised for the first time in a plaintiff's opposition papers, including supporting affidavits and exhibits, are not properly considered by the Court on a motion to dismiss as that would constitute improper reliance on matters outside the pleadings." (internal quotation marks and brackets omitted)).  But even on the merits, this theory is flawed. Merely because GHI and/or Emblem may have provided more details in a summary for another plan does not mean that its summary for the Plan that Kathleen chose was misleading.  This is particularly the case where, as discussed, there were no affirmatively false statements in the SPD, but rather, at most, an omission of pre-authorization requirements for certain services that otherwise were plainly disclosed in the Plan itself as well as in the SBC.

Also unpersuasive is Plaintiffs' argument that the SBC is misleading because it states that prior approval is not required for mental health, behavioral health, or substance abuse needs whereas the Plan provides that "[m]ental health benefits continue to be subject to precertification." Opposition at 16.  Notwithstanding the fact that Plaintiffs also raise this argument for the first time in opposition to the motion to dismiss, they have not alleged any facts to support the conclusion that they were harmed in any way by Defendants' purported misrepresentation as to whether

mental health treatment is subject to pre-authorization, or why this fact is relevant to whether Defendants defrauded Plaintiffs by failing to include in the SPD that MRIs would be subject to pre-authorization.    Furthermore, the Court is not convinced at this stage that the Plan "unequivocally contradicts" the SBC.  *Id.*  The portion of the Plan to which Plaintiffs cite is a June 27, 2007 letter from GHI to GHI-CBP members regarding changes to hospital and medical benefits for certain mental health conditions in conformity with then recently enacted New York State legislation.  Plan at 137-38.  On the other hand, the SBC applies for the coverage period from July 1, 2016 through June 30, 2017—approximately 10 years after the letter Plaintiffs reference in the Plan.  *See* SBC.

Notwithstanding these deficiencies, Plaintiffs urge the Court to look to the Third Circuit's decision in *Plavin* and the Attorney General's 2014 Assurance of Discontinuance against GHI to find "substantial support for Plaintiffs' fraud claims."  Opposition at 13.  But as the Court previously noted, the New York General Business Law claims at issue in *Plavin* are subject to a lower pleading standard than Plaintiffs' fraud claim, which is subject to Rule 9(b).  *See Valentini I* at *15.  Likewise, there is no reason to think—and Plaintiffs do not contend—that the former New York Attorney General applied any standard analogous to the heightened standard under Rule 9(b) in arriving at his findings in the Assurance of Discontinuance that GHI violated New York General Business Law and Executive Law.    Moreover, both *Plavin* and the Assurance of Discontinuance concerned different provisions of GHI's marketing materials than the ones relied upon by Plaintiffs here.[7]  While it may be possible that Plaintiffs may be able to plead a claim

---

[7] The alleged misrepresentations at issue in *Plavin* and the Assurance of Discontinuance involved GHI's statements in its marketing materials, among other things, regarding the Plan's out-of-network benefits.  *Plavin*, 857 F. App'x at 85; AOD at 3.  Thus, nothing in the AOD obligated GHI to modify the SPD or the SBC to include information regarding pre-authorization for MRIs.  *See* AOD at 9-10 (providing that GHI "will modify all GHI Plan consumer-facing

against Defendants for violation of New York General Business Law, that is not before this Court.

Accordingly, because Plaintiffs' fraud claim fails to satisfy Rule 9(b) and because Plaintiffs have not pleaded facts sufficient to support a materially false representation, Plaintiffs' fraud claim is dismissed.[8]

## B. Conspiracy and Derivative Claims

As the Court noted in *Valentini I*, "New York does not recognize civil conspiracy to commit a tort as an independent cause of action." *McSpedon v. Levi*ne, 72 N.Y.S.3d 97, 101 (App. Div. 2018). Because the Amended Complaint fails to state a claim for fraud, the Court dismisses Plaintiffs' conspiracy claim. For the same reason, the Court also dismisses Plaintiff's derivative claims for bad faith/punitive damages, loss of services, and loss of guidance to a minor child. *See N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 316 (1995) (holding that to state a claim for punitive damages from a breach of contract, "the threshold task for a court considering defendant's motion to dismiss a cause of action for punitive damages is to identify a tort independent of the contract"); *Dunham v. Vodidien, LP*, 498 F. Supp. 3d 549, 566 (S.D.N.Y. 2020) (explaining that a "punitive damages claim is derivative," with "no viability absent its attachment to a substantive cause of action"); *Nealy v. U.S. Surgical Corp.*, 587 F. Supp. 2d 579, 585 (S.D.N.Y. 2008) ("Under New York law, a claim for loss of companionship, society, services, or support is derivative of the

---

materials . . . so as to ensure that NYC employees and retirees are presented with clear information" regarding GHI's out-of-network coverage, including: (a) "how to obtain out-of-network reimbursement rates from GHI for identified procedures"; (b) "that GHI Plan members are likely to incur substantial out-of-pocket expenses when out-of-network providers are used"; (c) "that during a hospital admission . . . services may be provided by out-of-network providers . . . which is likely to result in substantial out-of-pocket expenses"; and (d) "that the Schedule is based on 1983 procedure rates that have not been increased since that time").

[8] Because the Court dismisses Plaintiffs' fraud claim under Rule 9(b) and for failure to allege a materially false representation, the Court does not reach Defendants' other grounds for dismissal.

related primary causes of action; dismissal of the primary claims requires the Court to dismiss any dependent derivative claims."); *Zawahir v. Berkshire Life Ins. Co.*, 804 N.Y.S.2d 405, 406 (App. Div. 2005) ("'[T]here is no separate cause of action in tort for an insurer's bad faith failure to perform its obligations' under an insurance contract." (quoting *Cont'l Cas. Co. v. Nationwide Indem. Co.*, 792 N.Y.S.2d 434, 435 (App. Div. 2005)).

## IV.    Conclusion

In light of the foregoing, Defendants' motion to dismiss is granted and the Amended Complaint is dismissed with prejudice.  The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 71 and to close this case.

SO ORDERED.

Dated: December 27, 2021
       New York, New York

_____
JOHN P. CRONAN
United States District Judge